No. 22-10630-BB

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

### CHALMER DETLING, II,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 18-cr-309-LMM-LTW-1

**Response to Defendant's Second Motion to
For Release Pending Appeal**

RYAN K. BUCHANAN
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

No. 22-10630-BB
*United States v. Chalmer Detling, II*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to the individuals identified in Appellant's Certificate of

Interested Persons, counsel hereby certifies that the following people

and entities may have an interest in the outcome of this appeal:


Capital Financing

Buchanan, Ryan, United States Attorney

Erskine, Kurt, Former United States Attorney

Golden, Howard

Parmer, Molly, Former Federal Public Defender, Atlanta

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

No publicly traded company or corporation has an interest in the
outcome of the case or appeal.

No. 22-10630-BB

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHALMER DETLING, II,

*Defendant-Appellant.*

## Response to Defendant's Second Motion to
## For Release Pending Appeal

Following a nearly two-week trial, a federal jury convicted Chalmer Detling, a disbarred attorney, of four counts of wire fraud and five counts of aggravated identity theft after a little more than an hour of deliberations. (Doc. 154 (Ex. A)).[1] Detling subsequently moved for a new trial based on the district court's purportedly improper jury instructions. (Doc. 170 (Ex. B)). The government filed an opposition (Doc. 177 (Ex. C)), and the district court denied his motion for a new trial in a written order, in which it noted the jury's verdicts were

---

[1] The docket entries are attached to this motion as an exhibit as indicated in the parenthetical. Exhibit designations appear once.

supported by "copious evidence," including overwhelming evidence of Detling's actual knowledge of the fraud. (Doc. 181-10-12, 17 (Ex.  D)).

On February 10, 2022, the district court sentenced Detling to a within-Guidelines sentence of 70 months' imprisonment. (Docs. 182 (Ex. E), 183 (Ex. F)). Detling filed a timely notice of appeal. (Doc. 186 (Ex. G)). The district court permitted Detling to remain on bond until the Bureau of Prisons designated him to report. (Doc. 155 (Ex. H)). While waiting, Detling filed a motion for an appellate bond with the district court, claiming that the district court's alleged errors in instructing the jury on deliberate ignorance and aiding and abetting raised "substantial questions of law" that were likely to result in reversal and thus merited a bond. (Doc. 194 (Ex. I)). The government filed a response in opposition (Doc. 204 (Ex. J), and the district court denied his motion in a detailed written order on April 25, 2022. (Doc. 210 (Ex. K)).

On August 9, 2022—before any merits briefing—Detling filed his first motion requesting a bond pending appeal with this Court claiming that his appeal will raise multiple substantial questions of law likely to result in in his convictions being vacated. (Ex. L ("First App. Mot.")). Detling offered that there were *five* substantial questions that merit his release on bond: (i) whether the district court allegedly violated the Speedy Trial Act; (ii) whether his motion to strike

surplusage complied with Rule 47; (iii); whether the filing of a superseding indictment mooted his motion to strike; (iv) whether the magistrate judge had authority to defer the motion to strike to the district court; and (v) whether the district court erred in holding a hearing on the motion to strike. (Ex. L, First App. Mot. at 4-13). On August 19, 2022, the government filed a timely response in opposition. (Ex. M).[2] On September 9, 2022, Circuit Judge Kevin Newsom denied Detling's motion in a one-sentence order. (Ex. N). Five days later, Detling filed a motion pursuant to Federal Rule of Appellate Procedure 27(c) seeking that a three-judge panel review his bond motion. (Ex. O). On October 4, 2022, construing Detling's Rule 27(c) motion as a motion to reconsider the September 9th order, Circuit Judges Jordan and Newsom issued another one-sentence order denying his motion. (Ex. P).

On October 11, 2022, Detling filed his opening brief. The government's response is due December 12, 2022. On Veterans Day, Detling filed the present motion—his second request for bond pending appeal (and third request overall having filed one in the district court as well). Detling argues that every issue he raises on appeal—an alleged speedy trial violation, a challenge to the sufficiency

---

[2] The government's opposition included hundreds of pages of exhibits, which are not re-attached here.

of evidence, and an improper deliberate ignorance instruction—raises a "substantial question of law" likely to result in reversal thus warranting his release. (Second App. Mot. at 3-4, 6, 10).

Because Detling's motion is simply a retread of arguments that this Court and the district court have previously rejected when he has previously sought release pending appeal, it should be denied. In support of its opposition, the government incorporates by reference its arguments made in its earlier filings made before this Court and the district court. (Ex. C – Doc. 177 (government's opposition to motion for new trial); Ex. J –Doc. 204 (government's opposition to Rule 9 motion); Ex. M (government's opposition to First Motion for Release Pending Appeal)). In particular, the district court and this Court have previously rejected Detling's arguments that any alleged speedy trial violation or any error with respect to the deliberate ignorance instruction raises a "substantial question of law." (Ex. K – Doc. 210 (district court order), Ex. N (Sept. 9, 2022 Eleventh Circuit order), Ex. P (Oct. 4, 2022 Eleventh Circuit order)). And as for whether there was sufficient evidence to support the jury's verdict, the district court's order denying Detling's motion for a new trial makes plain that the evidence of Detling's guilt was overwhelming. (Ex. D – Doc. 181-10-12, 17). Accordingly, this Court should reject Detling's latest request for release pending appeal.

Respectfully submitted,

RYAN K. BUCHANAN
  *United States Attorney*

ALEX R. SISTLA
  *Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a) (5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Goudy Old Style, a proportionally spaced typeface, using Microsoft Word 2016 word processing software.

This response complies with the 5,200-word type-volume limitation of Fed. R. App. P. 27(d)(2) because, according to the word processing software, it contains 801 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f), and excluding the title page, certificates, caption, and signature block.

Today, this motion was filed and served using the Court's CM/ECF system, which automatically sends notification to the parties and counsel of record.

November 22, 2022

_____

/s/ALEX R. SISTLA
    *Assistant United States Attorney*

6

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA          :
                                   :          CASE NO.
        v.                         :
                                   :          1:18-CR-00309-LMM-LTW
CHALMER DETLING, II A/K/A          :
CHUCK DETLING                      :

FILED IN OPEN COURT
U.S.D.C. - Atlanta

NOV 0 1 2021

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

**VERDICT FORM**

1. As to Count Four of the Indictment, we, the jury, unanimously find
   Defendant Chalmer Detling, II a/k/a Chuck Detling:

   Guilty ___✓___                    Not Guilty _____


2. As to Count Five of the Indictment, we, the jury, unanimously find
   Defendant Chalmer Detling, II a/k/a Chuck Detling:

   Guilty ___✓___                    Not Guilty _____


3. As to Count Six of the Indictment, we, the jury, unanimously find
   Defendant Chalmer Detling, II a/k/a Chuck Detling:

   Guilty ___✓___                    Not Guilty _____


4. As to Count Seven of the Indictment, we, the jury, unanimously find
   Defendant Chalmer Detling, II a/k/a Chuck Detling:

   Guilty ___✓___                    Not Guilty _____

5. As to Count Eleven of the Indictment, we, the jury, unanimously find Defendant Chalmer Detling, II a/k/a Chuck Detling:

Guilty ___✓___                    Not Guilty _____

6. As to Count Twelve of the Indictment, we, the jury, unanimously find Defendant Chalmer Detling, II a/k/a Chuck Detling:

Guilty ___✓___                    Not Guilty _____

7. As to Count Thirteen of the Indictment, we, the jury, unanimously find Defendant Chalmer Detling, II a/k/a Chuck Detling:

Guilty ___✓___                    Not Guilty _____

8. As to Count Fourteen of the Indictment, we, the jury, unanimously find Defendant Chalmer Detling, II a/k/a Chuck Detling:

Guilty ___✓___                    Not Guilty _____

9. As to Count Fifteen of the Indictment, we, the jury, unanimously find Defendant Chalmer Detling, II a/k/a Chuck Detling:

Guilty ___✓___                    Not Guilty _____

**SO SAY WE ALL.**

Signed and dated at the United States Courthouse, Atlanta, Georgia, this _1st_ day of _November_, 2021.

Foreperson's Signature: _Mannie Maddox_

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*versus*

CHALMER DETLING, II

Criminal Action No.:
1:18-CR-00309-LMM-LTW-1

## MOTION FOR NEW TRIAL

COMES NOW, the Defendant, Chalmer Detling, II, and hereby moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure and shows the Court the following:

## STATEMENT OF FACTS

Mr. Detling is charged by indictment with multiple counts of wire fraud and aggravated identity theft. Specifically, the indictment alleges that he, and he alone, committed four counts of wire fraud, in violation of 18 U.S.C. §1343 and five counts of aggravated identity theft, in violation of 18 U.S.C. §1028(a)(1). Doc. 35. The indictment does not allege either aiding and abetting or any facts suggesting additional participants in the alleged criminal conduct.

At trial, counsel for the government made an opening statement wherein he accused the defendant of committing all of the acts comprising the offenses charged in the indictment and made no reference to any other alleged participants. Doc. 164. In the first sentence of his opening, counsel for the government pointed to Mr.

Detling as solely responsible, "Ladies and gentlemen of the jury, this case is about a lawyer who betrayed the trust of his clients and his business partners to steal hundreds of thousands of dollars". Doc. 164-3. The government further explained to the jury, "...Chuck Detling, used his law firm's clients' personal identifying information to get litigation advances". Doc. 164-3. The government alleged that Mr. Detling "stole the money to prop up his financially strapped law firm". Doc. 164-3. According to the government, Mr. Detling "used his law firm's clients' information without their knowledge to enter into numerous litigation advance contracts" and he "used those litigation advances as a personal piggy bank that he tapped into whenever he needed funds". Doc. 164-6.

The government alleged that Mr. Detling "was in charge of the law firm". Doc. 164-9. In reference to other employees at the firm, the government suggested that they were naive and relied on Mr. Detling as to "how a law firm should be operated". Doc. 164-9. Specifically, the government referenced Aimie Ingram, the office manager, as someone who didn't know about the litigation advances. Doc. 164-10. While acknowledging that Mackenzie Cole was a partner at the firm, the government diminished her role as being "a partner in name only". Doc. 164-12.

The government further argued that the finance companies which were providing the litigation advances relied on Mr. Detling as the point of contact regarding the advances and his name was on all of these advances. Doc. 164-13, 14.

2

According to the government, Mr. Detling was in charge of the firm's bank accounts where the proceeds of the fraud were deposited. Doc. 164-14. Additionally, the government alleged he picked up the advance checks and provided the wire information for the funds to be sent. Doc. 164-13, 14. In reference to the firm's clients, the government claimed Mr. Detling was the only one "with authority to talk to clients about financing options". Doc.164-15. Manifest in all of these claims by the government, Mr. Detling acted alone and with actual knowledge of the fraud being perpetrated.

During the course of the government's case, no witness was presented as having assisted or helped Mr. Detling commit the offenses charged in the indictment. Indeed, the government's presentation of its case exclusively focused on Mr. Detling as the only participant in the fraud and identity theft. Moreover, the government did not present any evidence that Mr. Detling consciously avoided knowing about fraudulent advances. Rather, the government presented evidence that he alone possessed the knowledge and access needed to commit the fraud. Throughout the trial, the defense alleged that other employees, notably Ms. Ingram and Ms. Cole had motive, access, and opportunity to commit the wire fraud and identity theft.

Both the government and the defense submitted numerous requests to charge the jury. The government submitted its requested charges prior to the beginning of trial on October 18, 2021. Doc. 136. In its initial request to charge, the government

did not seek to have the jury instructed on either deliberate ignorance or aiding and abetting. *Id.* Similarly, the defense filed its requested charges on the same date, October 18, 2021. Doc. 137. Included in the defense request to charge was a good faith defense charge. Doc. 137-12. An initial charge conference was held on October 28, 2021. Doc. 156. On October 29, the Court held a subsequent charge conference to discuss additional requested jury charges including a proposed theory of the defense charge. Doc. 157. The Court specifically declined to give the proposed instruction on the theory of the defense but provided Mr. Detling with an opportunity to submit a brief on the following day to submit legal authority for its request. Doc. 157. At the close of the evidence, the Court heard arguments on a motion for a judgment of acquittal pursuant to Rule 29, Federal Rules of Criminal Procedure, and denied the motion. Doc. 157. Thereafter, the Court recessed trial and gave the parties the weekend to prepare for closing arguments. Doc. 157.

The following day, Saturday, October 30, 2021, Mr. Detling submitted a brief in support of his theory of the defense charge. Doc. 150. The defense sought the following jury charge:

> The indictment charges Mr. Detling acted alone in committing wire fraud and aggravated identity theft. You cannot convict him for conduct engaged in by either Mackenzie Cole or Aimie Ingram because he is not charged with being in a conspiracy with them or aiding or abetting them. You must decide whether the government has met its burden of proving beyond a reasonable doubt that he acted alone in committing these offenses regardless of whether you believe he engaged in other wrongdoing that is not charged in the indictment. The indictment upon

which you must base your decision does not charge Mr. Detling for engaging in a conspiracy or that he aided or abetted others in the commission of the charged offenses. Consequently, you must acquit if you believe there is a reasonable doubt that he acted alone.

After Mr. Detling submitted his brief, the Court suggested giving the following language, "[t]he Court has previously instructed you on the elements that the government must prove beyond a reasonable doubt for you to find Mr. Detling guilty of the crimes charged in the indictment. You must find that Mr. Detling personally engaged in all of the requested elements of the charged offenses for him to be guilty of those charges". Doc. 152-3, 4. On Sunday, October 31, Mr. Detling replied to the Court's newly suggested language in an email which stated, "We believe the 'requested' in the second sentence should be 'required'. Additionally, we would request that the Court add this last sentence, 'if you believe that there is reasonable doubt that anyone else committed an element of the charged offenses instead of Mr. Detling, then you must acquit.' We believe it is a correct statement of the law and is based on the evidence that was admitted at trial".[1] The government objected to the Court's suggested charge. Doc. 152-4.

In the government's response to Mr. Detling's brief and for the first time, the government requested that the Court instruct the jury on deliberate ignorance, if the good faith defense charge was given. Doc. 152-6.  The government also requested

---

[1] A copy of the email chain between the Court and the defense as well as the government is attached hereto as Attachment A.

that the jury be instructed on aiding and abetting. Doc. 152-8. Specifically, the

government requested a modified version of Eleventh Circuit Pattern Jury

Instructions (Criminal Cases) (2020), Special Instruction No. 8:

> If a Defendant's knowledge of a fact is an essential element of a crime,
> it's enough that the Defendant was aware of a high probability that the
> fact existed-unless the Defendant actually believed the fact didn't exist.
> "Deliberate avoidance of positive knowledge"- which is the equivalent
> of knowledge-occurs, for example, if a defendant submits applications
> for or receives funds from litigation advance companies and believes
> those applications or funds are for litigation advances for which the
> plaintiff-clients never asked for the funds but deliberately avoids
> learning that the plaintiff-clients never asked for the funds so he can
> deny knowledge of the fact that the plaintiff-clients never asked for the
> funds. So, in this example, you may find that a defendant knew that the
> litigation advance applications or funds were never asked for by the
> plaintiff-clients if you determine beyond a reasonable doubt that the
> defendant (1) actually knew that the plaintiff-clients had never asked
> for the funds, or (2) had every reason to know but deliberately closed
> his eyes. But I must emphasize that negligence, carelessness, or
> foolishness isn't enough to prove that the Defendant knew that the
> plaintiff-clients had not asked for the applications or funds.

Doc. 152-7. The government also requested The Eleventh Circuit Pattern Jury

Instructions (Criminal Cases), Special Instruction No. 7 with no modifications. Doc.

152-8, 9. On November 1, 2021, the morning of closing arguments, Mr. Detling

objected to the Court giving either the deliberate ignorance charge or the aiding and

abetting charge prior to the charge being given.[2]   Docs. 158, 166-4-5, 9-10, 10-11,

---

[2] Mr. Detling also preserved his objections to the Court's instructions to the jury
after the instructions were given but the transcript containing those objections has
not been created yet.

12, 18. The Court overruled Mr. Detling's objections to the jury charges requested by the government. Doc. 158. Specifically, the Court utilized the Eleventh Circuit Pattern Instruction for aiding and abetting. Doc. 153-7, 8. The Court gave Mr. Detling's requested charge on good faith but did not give the requested theory of defense charge. Docs. 137, 153-10. Finally, the Court rejected the government's request to charge on deliberate ignorance in part and gave a modified version of Eleventh Circuit Pattern Instructions, Instruction S8. Docs. 152, 153-11. During the government's closing argument, no reference was made to either deliberate ignorance or aiding and abetting or any evidence supporting those jury instructions. Doc. 165. The jury returned a verdict of guilty on all counts against Mr. Detling on November 1, 2021. Doc. 154.

## ARGUMENT

### I.     The Court erroneously charged the jury on deliberate ignorance.

On Sunday, October 31, 2021, the day before closing arguments and after the evidence had closed, the government requested a jury instruction on deliberate ignorance. Doc. 152. The following morning, Mr. Detling objected to the instruction as there was no evidence to support it and it was contrary to the government's position throughout the trial that he had actual knowledge. Doc. 167. The Court rejected the government's requested instruction in part and gave only a portion of the deliberate ignorance pattern instruction. Eleventh Circuit Pattern Jury

Instructions (Criminal Cases) (2020), Special instruction S8.  The court instructed the jury:

> If a Defendant's knowledge of a fact is an essential part of the crime, it's enough that the Defendant was aware of a high probability that the fact existed-unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Doc. 153-11.

The Court erred in giving any instruction on deliberate ignorance because there was no evidence of conscious avoidance of facts by Mr. Detling. The court further erred by giving only a portion of the pattern instruction and omitting the portion that explains the evidentiary finding required for the application of the charge.  Specifically, the court failed to give the portion of the pattern charge that instructs the jury:

> "Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents "So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed [his] [her] eyes."

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (2020), Special Instruction No. S8.

The Annotations following Special Instruction S8 specifically provide that the instruction should not be given in the instant case. The Eleventh Circuit cites to *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993), cert denied, 513 U.S. 833 (1994) wherein the Court held a "'deliberate ignorance' instruction appropriate only when evidence in the record shows that the Defendant purposely contrived to avoid learning the truth". The Eleventh Circuit further cites to *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir. 1984) for the proposition that such an instruction is only warranted when the evidence supports a finding that "the Defendant consciously avoided knowledge, not when the Defendant has actual knowledge." *See also United States v. Rivera*, 944 F.2d 1563, 1570-72 (11th Cir. 1991) and *United States v. Perez-Tosta*, 36 F. 3d 1552 (11th Cir. 1994).

The Court's instruction on deliberate ignorance is not harmless. In *Stone*, the Court emphasized the evidentiary foundation for a jury instruction on deliberate ignorance must be established before the jury can rely on it in its determination of whether a defendant acted knowingly. Specifically, the Court found the error in giving the instruction was harmless because the jury was instructed on the evidentiary basis which must be found before it can consider whether the defendant acted with deliberate ignorance. In the absence of such guidance, Mr. Detling was harmed by the instruction on deliberate ignorance. The partial version of the pattern charge was particularly harmful as it immediately followed the Court's instruction

regarding the good faith defense. The deliberate ignorance instruction created the false impression Mr. Detling could not possess the good faith belief necessary for the good faith defense. Consequently, this error requires the Court to grant a new trial.

Additionally, the flawed deliberate ignorance instruction given by the Court resulted in a constructive amendment of the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two. This is contrary to the allegation in the indictment that Mr. Detling had actual knowledge. A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. *United States v. Peel*, 837 F.2d 975, 979 (11th Cir. 1988). A constructive amendment requires a per se reversal. *United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990).

## II.   The Court Erred in Charging the Jury on Aiding and Abetting

The government's theory of prosecution as reflected in the language of the indictment was that Mr. Detling acted alone in defrauding the finance companies and using clients' personal information to obtain advances to which he was not entitled. Doc. 35. The government never varied from this position in its presentation of evidence at trial. Specifically, the government claimed that no one at the firm including Aimie Ingram and Mackenzie Cole participated in the fraud. Indeed, the

government relied heavily on these very witnesses as credible in pointing the finger at Mr. Detling.

Mr. Detling's defense at trial was that he relied in good faith upon the managing partner, Mackenzie Cole, and the office manager, Aimie Ingram, at the firm regarding the desire of clients to obtain litigation advances. The evidence at trial showed that on at least one occasion, Ms. Cole had transferred the funds from a litigation advance out of the firm's IOLTA account into the firm's operating account. The evidence further showed that Ms. Ingram may have forged the signature of Brandi Pajot (counts 4 and 12) on her litigation advance. In addition, Ms. Ingram acknowledged that she could easily forge Mr. Detling's signature. This evidence along with other evidence at trial showed both women could have committed the alleged wire fraud and aggravated identity theft. In response, the government sought the aiding and abetting as a last minute attempt to counter the defense arguments after the close of the evidence. Doc. 152-8-9. The defense objection to this charge was overruled by the Court which gave the instruction on aiding and abetting. Docs. 153-7, 158, 165.

Giving an aiding and abetting instruction in the instant case with its unique factual circumstances presents a novel question of law. The novelty of the issue arises from the fact that neither the government nor the defense could find an Eleventh Circuit case with analogous facts where the use of the aiding and abetting

charge was upheld.  On the morning of November 1, 2021, after the evidence was

closed and closing arguments were about to be held, the Court advised the parties

regarding a case which it had located, *United States v. Thomas*, 631 Fed. Appx. 847

(11th Cir. 2015).[3]  Unfortunately, the opinion provides little about the facts of the

case in the district court. A review of the circumstances leading to the charge being

given in *Thomas* is revealing and demonstrates that it is factually distinguishable

from the instant case. In *Thomas*, the indictment expressly referenced the

defendant's wife, Mary Derheimer (M.D.) along with the defendant having control

over the bank accounts into which the embezzled funds were deposited.[4] Indeed,

M.D. is expressly referenced no less than six times and implicitly referenced no less

than nine times in each count of the indictment. 1:13-241-CAP-LTW, Doc. 1.

Accordingly, the government did not call M.D. as a witness and did not rely upon

her to make its case. Instead, the government argued that if the defendant aided and

abetted his wife, he was still guilty. 1:13-241-CAP-LTW, Doc. 115-33, 40. While

the indictment in *Thomas* does not cite to 18 U.S.C. § 2 (the statute defining

"principals" and referencing "aiding and abetting") it is readily apparent from the

indictment that the government believed that the embezzled funds went to a bank

---

[3] This unpublished opinion does not have precedential authority and it can only be
relied upon as "persuasive authority." See Rule 32.1, Federal Rules of Appellate
Procedure (FRAP) and Rule 36-2, U.S. Ct. Of App. 11th Cir. Rules.

[4] The docket sheet in *United States v. Thomas*, 1:13-CR-241-CAP-LTW, Doc. 1.

account controlled by both the defendant and his wife, thereby potentially identifying her as a participant in the crimes charged in the indictment.

Mr. Detling's circumstances are dramatically different from those in *Thomas*. The indictment in the instant case makes no reference to either Ms. Cole or Ms. Ingram or anyone else participating in the fraud. Doc. 35. In fact, the indictment wrongly suggests that Mr. Detling, unlike the defendant in *Thomas*, controlled the accounts where funds from the advances were deposited. *Id.* The indictment makes no reference to the Detling Cole law firm or to Ms. Cole's access or control of the accounts as the managing partner of the firm. Unlike the prosecutor in *Thomas*, the government in the instant case called Ms. Cole and Ms. Ingram as witnesses and elicited testimony that they were not involved in any of the charged conduct. The defense was not on notice of the government's plan to rely on an aiding and abetting theory which was contrary to the specific allegations contained in in the indictment. This surprise after the close of the evidence was prejudicial. For example, the defense cross examination of Ms. Cole and Ms. Ingram would have been quite different if they had been identified in the indictment or at any point in the trial as co-wrong-doers.

Unlike the prosecutor in *Thomas*, the government did not question the credibility of Ms. Cole or Ms. Ingram and did not argue that they played a role in the fraud. Despite requesting a last minute charge on aiding and abetting, the

government made no reference to the instruction in closing argument. In effect, the government appeared to be relying on the instruction defensively against Mr. Detling or perhaps to confuse the jury regarding the nature of his defense.[5] While Mr. Detling readily agrees that the Eleventh Circuit, as in *Thomas,* has upheld convictions where the indictment does not allege aiding and abetting, the government should not be permitted to change its theory of the defendant's culpability after the evidence is closed and closing arguments are scheduled to begin. The indictment in the instant case alleged that Mr. Detling acted alone in committing the fraud and theft. The defense was entitled to rely on the government's language in its own indictment in presenting the defense given that a defendant cannot aid and abet himself. *United States v. Martin*, 747 F.2d 1404 (11th Cir. 1984).

Mr. Detling contends that it was fundamentally unfair to allow the government to surprise him with a new theory of the prosecution at a point in time when he could no longer challenge the government's witnesses and present evidence to counter this new theory. Indeed, it is incumbent upon the Court to properly limit the basis for prosecution and the failure to do so may amount to an improper

---

[5] Importantly, Mr. Detling never argued that he helped Ms. Cole or Ms. Ingram commit the alleged offenses.  He simply argued that the jury should acquit if they found reasonable doubt as to whether Ms. Cole or Ms. Ingram had committed any material elements of the offense without his knowledge.

amendment of the indictment. *See United States v. Artip*, 942 F.2d 1568 (11th Cir. 1991).

Here, the grand jury returned an indictment which unequivocally stated Mr. Detling acted alone.  His defense was based on the language of the allegations in the indictment.  While the grand jury could have alleged the participation of others, it did not. Consequently, the court erred by giving an aiding and abetting jury charge that constructively amended the indictment.

 "A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried only on charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment." *United States v. Weissman*, 899 F.2d 1111, 1114 (11th Cir. 1990) citing  *Stirone v. United States,* 361 U.S. 212, 217-18, (1960); *Peel*, 837 F.2d at 979; *United States v. Lignarolo*, 770 F.2d 971, 981 n.15 (11th Cir.1985), cert. denied, 476 U.S. 1105, 106 (1986).  Other circuit courts have reached the same conclusion. *See United States v. Sanders*, 966 F.3d 397 (5th Cir. 2020)(wherein the Fifth Circuit found a constructive amendment where the government alleged knowledge in the indictment (when knowledge was not a required element of the statute) but the trial court instructed the jury that it was not required to find knowledge), *United States v. Phea*, 953 F.3d 838 (5th Cir. 2020)(wherein the Court

found a constructive amendment where the indictment alleged actual knowledge, the statute allowed proof of knowledge by another means, and the trial court instructed the jury that it could find knowledge under either theory), and *United States v. Hoover*, 467 F.3d 496 (5th Cir. 2006)(the trial court's jury charge improperly expanded the indictment by offering a theory by which the jury could find that the statements made by the defendant were false in a manner different than the manner set forth in the indictment in reliance on *Sirone v. United States*, 361 U.S. 212 (1960)).

Here the indictment alleged that Mr. Detling acted alone. The aiding and abetting instruction broadened the possible bases for conviction beyond what was contained in the indictment by allowing the jury to convict based on a theory of aiding and abetting.  As such, the instruction resulted in a constructive amendment that requires a per se reversal of his conviction and the granting of a new trial.

## Conclusion

For the foregoing reasons, Mr. Detling asks that the Court grant his motion to vacate his conviction and grant a new trial.

Dated: This 7th day of December, 2021.

Respectfully Submitted,

*s/ Suzanne Hashimi*
Suzanne Hashimi
State Bar No. 335616

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114

Attorneys for Mr. Detling

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:18-cr-00309-LMM-LTW |
| CHALMER DETLING, II A/K/A CHUCK DETLING | |

**Government's Response to Defendant's Motion for New Trial**

The United States of America, by Kurt R. Erskine, United States Attorney, and Alex R. Sistla and Samir Kaushal, Assistant United States Attorneys for the Northern District of Georgia, files this response to Defendant Chalmer Detling's Motion for New Trial (R. 170). For the reasons below, the Court should deny his motion.

## Background

### A. Detling's Trial

On November 1, 2021, after an eight-day trial, a jury convicted Detling of four counts of wire fraud, in violation of 18 U.S.C. § 1343, and five counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (R. 154, Jury Verdict.) At trial, the government presented overwhelming evidence that Detling executed a multi-year scheme in which he defrauded financing companies by falsely claiming his law firm's clients needed a form of litigation financing known as "litigation advances," when, in fact, they did not. Detling executed this scheme, in

part, by using his clients' personal identifying information to obtain the litigation advances. After obtaining the funding from the financing companies, Detling did not use the money for its intended use—to provide to his clients—but rather used the money for himself and his firm. To prove its case, the government presented nearly two dozen witnesses, including individuals from the defrauded financing companies, twelve of Detling's victim-clients, several of Detling's former colleagues, and the deputy general counsel of the State Bar of Georgia, as well as over 400 exhibits.

### 1. The Financing Company Witnesses

Four witnesses from the defrauded financing companies testified. Dr. Howard Golden and Caitlin Wade Caballero testified on behalf of Capital Financing, and Josh Schwadron and Hugh Brammer testified on behalf of the Mighty Financing entities ("Mighty"). Each of these witnesses testified—and were corroborated by voluminous email correspondence and business records—that they dealt exclusively with Detling on the fraudulent litigation advances and had they known that his clients neither authorized the advances nor received the funds, they would never would have approved them.[1] For Capital Financing,

---

[1] For Capital Financing, the relevant exhibits are GX-1 through GX-9, GX-11, GX-12, GX-14 through GX-18, GX-21, GX-23, GX-24 through GX-26, GX-28, GX-31 through GX-35, GX-37 through GX-40, GX-42 through GX-47, GX-49, GX-50, GX-51, GX-54, GX-57, GX-60 through GX-64, GX-67 through GX-72, GX-74 through GX-76, GX-78 through

Detling was the exclusive point of contact—he was listed as the "attorney" on the applications for the fraudulent litigation advances, he executed the contracts,[2] and he picked up and endorsed each of the fraudulently obtained checks.[3] Caballero and Golden testified that Capital Financing communicated exclusively with Detling about the status of repayment.[4] And Detling himself stipulated to many of these facts in proceedings before the Georgia Bar.[5] The evidence showed that Detling was able to conceal his fraud from Capital Financing, in part, by exploiting his friendship with Golden.

As for Mighty, Schwadron's and Brammer's testimony mirrored that of Caballero and Golden. They both detailed communicating exclusively

---

GX-82, GX-83, GX-98 through GX-109, GX-131, GX-136, GX-427, GX-428, GX-429, For Mighty, the relevant exhibits are GX-138GX-288, GX-336GX-339, GX-346, GX-400, GX-406, and GX-441.

[2] *See, e.g.*, GX-43 (Capital Financing contract for S.K.); GX-47 (Capital Financing contract for T.M.); GX-54 (Capital Financing contract for V.M.); GX-57 (Capital Financing contract for B.P.); GX-60 (Capital Financing contract for B.P.); GX-70 (Capital Financing contract for K.P.); GX-76 (Capital Financing contract for A.U.); GX-81 (Capital Financing contract for L.R.W.).

[3] *See* GX-101 through GX-109, GX-131.

[4] *See, e.g.*, GX-14 through GX-18 (email correspondence between C. Wade and C. Detling.)

[5] *See* GX-379 (Consolidated Pretrial Order State Disciplinary Board Docket. No. 6772); GX-386 (Excerpts from June 29, 2016 Proceedings before Special Master (Vol I) in State Disciplinary Board Dockets No. 6640, 6772, 6804).

with Detling about the fraudulent litigation advances. And though Schwadron and Brammer mainly communicated with Detling via email, they both spoke with him on the phone and even met with him in person on a few occasions.[6] Both men testified that they relied on Detling's representations as to why his clients needed litigation advances and in deciding whether and how much funding to provide. The government introduced hundreds of emails between Detling and Schwadron, Brammer, or other Mighty employees in this respect. For example, the government presented evidence that Detling repeatedly made false representations to Mighty ranging from the reasons his clients needed litigation advances, to the nature of their injuries, to even the fact that he had met with them.[7] The government also presented evidence that Detling signed each of the Mighty agreements[8]

_____

[6] *See, e.g.*, GX-231 (Detling visit to New York City); GX-253 (Schwadron visit to Atlanta and meeting Detling and his wife).

[7] *See, e.g.*, GX-254 (May 7, 2015 email from C. Detling to H. Brammer containing false representations regarding victim-client B.C.); GX-257 (May 27, 2015 email from C. Detling to H. Brammer and J. Schwadron containing false representations regarding victim-clients S.L and W.L.); GX-264 (Oct. 30, 2015 email from Detling to Mighty containing false representations regarding victim-client W.G.).

[8] The contracts corresponding to the charged counts in the superseding Indictment are GX 161 (Mighty Financing contract for B.P.), GX-165 (Mighty Financing contract for K.P), GX-172 (Mighty Financing contract for H.M.), GX-178 (Mighty Financing contract for W.G.), and GX-336 (Mighty Financing contract for V.M.). The government also presented evidence and testimony regarding other

and provided the wiring instructions for where to send the fraudulently obtained funds.[9] To stave off detection, Detling provided semi-fictitious case updates to Schwadron,[10] falsely tried to blame one of his former colleagues, Mackenzie Cole, for the fraud,[11] or generally stalled and delayed.[12] The government presented evidence that after Mighty learned of Detling's fraud, he tried for months to make "payoffs," ultimately reaching an agreement with Mighty to "release" his former clients from any liability.[13]

### 2. The Victim-Clients

The jury heard from twelve victim-clients, including the five whose identities underlie the charges in the superseding indictment. Every victim-client uniformly testified that they never signed or authorized

---

fraudulently obtained litigation advances from Mighty for uncharged victim-clients. *See* GX-146–, GX-147, GX-148, GX-150, GX-168, GX-161, GX-338, GX-339 (contracts for uncharged testifying victim-clients B.C., K.J., M.S.K., S.L./W.L, T.M., and L.R.W.).

[9] *See* GX-138 (Affinity wiring information); GX-145 & GX-185 (Georgia Commerce wiring information); GX-186 & GX-187 (SunTrust wiring information).

[10] *See, e.g.*, GX-171, GX-204, GX-266.

[11] *See, e.g.*, GX-272.

[12] *See, e.g.*, GX-271, GX-273-GX-282.

[13] *See* GX-400 (Forbearance and assignment agreement). The evidence at trial showed that this "release" had no practical effect because Mighty never intended to sue any of Detling's clients because they never received any of the funding.

any of the financing contracts. Nor—with one exception—would they have authorized Detling to obtain a litigation advance if he asked.[14] To the contrary, several of the victim-clients (*e.g.¸* M.S.K., D.M. on behalf of T.M.) testified that they expressly told Detling that they did not want a litigation advance. And several of the client-victims (*e.g.*, K.P. and A.U.) testified that they never had any substantive discussions with Detling about their cases, let alone discussions about litigation advances. Each of the victim-clients likewise testified that they never received any of the funds from the financing companies. The government's final witness, FBI Special Agent Antoinette Ferrari, confirmed this was the case by explaining to the jury that she had traced the fraudulently obtained litigation advances and found that none of them went to any of Detling's clients.

### 3. The Bank Accounts

The government presented overwhelming evidence that Detling controlled the bank accounts into which the fraudulent litigation advances were directed. The government introduced bank records showing that Detling was the sole signatory for two of the accounts—the Affinity Bank account ending in x9635[15] and the Georgia

---

[14] Victim-client H.M. testified that she had obtained one legitimate litigation advance from Capital Financing.

[15] *See* GX-331, GX-332 (Affinity signature cards).

Commerce Bank account ending in x4219[16]—that received thirteen fraudulent litigation advances, and one of two signatories on the SunTrust Bank account ending in x0526 account, into which most of the fraudulent litigation advances were wired or deposited.[17] Detling's former colleagues, Aimee Ingram and Mackenzie Cole, testified they did not have access to the Affinity or Georgia Commerce accounts and while they were either a signatory or had access to the SunTrust account, Detling was the one who controlled that account as well. In addition to his former colleagues' testimony, the government further proved Detling controlled the SunTrust x0526 account by introducing: (i) an affidavit Detling filed with the Georgia Bar in which he admitted to controlling the account and stated plainly that Mackenzie Cole did not;[18] (ii) months of correspondence between him and the Georgia Bar about the account being overdrawn;[19] and (iii) admissions he made when deposed by the Georgia Bar.[20] The government also presented an exhibit summarizing the approximately 50 fraudulent litigation advances, totaling more than $400,000, that Detling had obtained between October 9, 2014 and January 1, 2016. Those funds were

---

[16] *See* GX-84, GX-85 (Georgia Commerce signature cards).

[17] *See* GX-93 (SunTrust signature card).

[18] *See* GX-350.

[19] *See* GX-341 through GX-345; GX-434 through GX-439.

[20] *See* GX-386.

directed into the three bank accounts: Affinity x9635 received six fraudulent wires, Georgia Commerce x4219 received seven fraudulent wires, and SunTrust x0526 received thirty fraudulent wires and deposits.[21]

### 4. Detling's Defense

Detling's theory of defense varied over the course of the trial. At different points, Detling offered that: (i) he could not have possibly committed the fraud because he was "absent" from the firm; (ii) his former colleagues—Aimee Ingram and Mackenzie Cole—were to blame because they were motivated to see the firm succeed; (iii) someone hacked his email and was responsible; or (iv) he acted in good faith by supposedly relying on information provided by colleagues or perhaps the clients' implicit authorization to obtain the litigation advances.

### B. The Jury Instructions

The parties filed proposed jury instructions before the trial began. (R. 136, Govt. Proposed Jury Instructions; R. 137, Detling's Proposed Jury Instructions.) The government's proposal did not include the two instructions at issue here—requests to instruct the jury on deliberate ignorance and aiding and abetting. Detling's proposed instructions also did not include either of these instructions but included a proposed

---

[21] *See* GX-445. The evidence at trial showed that Mighty would sometimes combine multiple litigationadvances into a single wire, consequently the number of wires is less than the number of fraudulent litigation advances Detling obtained.

good faith instruction. (R. 137, Detling's Proposed Jury Instructions at 12.)

On October 28, 2021, before the government had concluded its case-in-chief, the Court held its first charge conference. (R. 157, Minute Entry.) During the charge conference, the government objected to Detling's proposed good faith instruction. (R. 166, Oct. 28, 2021 Charge Conference at 9:18–20 ("At this point [we] don't believe there's an evidentiary basis to support a good faith instruction.").)[22] Detling argued that a good faith instruction was appropriate because he claimed a jury could conclude that Detling relied on his colleagues in applying for the litigation advances under the mistaken impression that the clients had authorized him to do so (by allegedly telling his colleagues they wanted litigation advances). (*Id.* at 10:12–11:9; 12:4–9; 13:4–13.) Without pointing to anything in the record, Detling argued:

> Well, if—we say it could be a mistaken belief if [Mackenzie Cole and Aimee Ingram] did and told Mr. Detling falsely that these clients want these advances. And if he operated on that mistaken belief in communicating with the funding companies and to the extent he picked up checks or deposited checks into the IOLTA account for client funds, he could have both addressed Mr. Schwadron and Mr. Golden with the belief these clients wanted that, he had access to this files, he's just describing what he

---

[22] Citations to transcripts list the docket entry, the beginning page and line number and the ending page and line number.

9

> thinks the injuries are and he's being fed a lie
> by Ms. Ingram and Ms. Cole.

(*Id.* at 13:4–13.)

The government responded:

> There's absolutely no evidence of that . . .
> [f]irst, of all, the defense [is] suggesting . . . that
> Mr. Detling is now admitting both that he
> applied for an obtained the loans, sent all those
> e-mails, picked up all the checks. That's not
> their defense. Their defense is somebody else
> did it. There is no evidence that Mr. Detling
> relied on Ms. Cole and Ms. Ingram telling him
> that clients X, Y, and Z wanted these loans,
> then he went ahead and applied for the loans
> and thought that the money would then
> appropriately be disbursed to the clients. . . .
> [W]hat underlies a good faith defense is the
> defendant first admitting they did the act and
> the case is ultimately whether they acted with
> an intent to defraud. . . . The Defendant hasn't
> admitted he's done the underlying act, so a
> good faith defense is just inappropriate . . . as
> the evidence stands now.

(*Id.* at 13:15–14:10.) The Court deferred ruling on the government's

objection, noting that it first wished to hear the rest of the evidence,

especially the cross examination of Cole. (*Id.* at 14:11–17.)

The next day, October 29, 2021, the government rested, and the

Court orally denied Detling's Rule 29 motion for judgment of acquittal.

(R. 157.) The Court then held a second charge conference during which

Detling's "theory of the defense" instruction was discussed. (*Id.*; R. 170,

Mot. for New Trial at 4.) The Court declined to give Detling's requested

"theory of defense" but afforded him an opportunity to brief the issue. (*Id.*) On Saturday, October 30, 2021, Detling filed a brief in support of his "theory of defense" instruction. (R. 150, Theory of Def. Br.) Without citing any authority, Detling wanted the jury instructed that it "must acquit based on acts committed by another person." (*Id.* at 4.) The government filed its response the next day. (R. 151, Govt. Opp. to Theory of Def.)

The government explained that Detling had offered no authority to support his proposed theory (*id.* at 1–3) and requested—if the Court were to provide Detling's proposed good faith instruction—that the jury be instructed on deliberate ignorance as well. (*Id.* at 6–8.) The government further requested the Court to instruct the jury on "aiding and abetting" in anticipation of Detling's closing argument. (*Id.* at 8 (requesting the Court instruct the jury on aiding and abetting using the Eleventh Circuit Pattern Jury Instructions).) The government was concerned, based on Detling's repeated claims that any involvement of another individual would require acquitting Detling, that Detling would argue to the jury—misleadingly and incorrectly—that he should be acquitted merely because *someone else* performed a relevant act, regardless of if he directed it or was otherwise criminally culpable for the act under the law.

On the morning of November 1, 2021, the Court held a third charge conference. (R. 158.). The Court explained that it was providing Detling

an opportunity to respond to the government's objections and additional proposed instructions. (R. 167, Nov. 1, 2021 Charge Conference at 7:13; *id.* at 8:23–25.) Detling argued that the aiding and abetting instruction was improper because the government had not "identified someone in addition to the principal . . . some sort of other wrongdoer." (*Id.* at 9:20–22.) The government explained, in response, that Detling's "own arguments for why they think other folks were involved are the very reasons why aiding and abetting should be included as an instruction[.]" (*Id.* at 13:12–15.) As for the deliberate ignorance instruction, Detling argued it was not appropriate because "it's a perfectly reasonable thing [for Detling] to rely on people, one of which described themselves as a managing partner of the firm or a bookkeeper or other people in the firm." (*Id.* at 12:4–7.)

The Court rejected Detling's arguments. It refused to give his theory of defense because "it was an inaccurate statement of the law" (*id.* at 15:18–19) and concluded that the aiding and abetting instruction was appropriate because "the Eleventh Circuit case law is clear on this." (*Id.* at 16:17–18.) The Court also agreed to instruct the jury on deliberate ignorance but omitted the pattern instruction's example. (*Id.* at 14:24–15:6.) When offered an opportunity to raise any other concerns, Detling asked the Court to reconsider including a portion of the "theory of defense" language that the Court itself had drafted in order to "counterbalance . . . if the government is going to be allowed

12

. . . [to] argue aiding and abetting." (*Id.* at 17:25–18:18.) The Court rejected Detling's request—reiterating that the aiding and abetting instruction was appropriate given "the way the evidence came in"—and offered him another opportunity to raise any issues. (*Id.* at 18:19–19:21.) Detling had no further objections. (*Id.* at 19:22.)

The parties thereafter presented closing arguments, and Detling was convicted on all counts that afternoon. (R. 154, Jury Verdict.)

On December 7, 2021, Detling filed a motion for new trial. (R. 170, Mot. for New Trial.) He argues that the Court erred by instructing the jury on deliberate ignorance and aiding and abetting. (*Id.* at 7–16.) On December 14, 2021, the government obtained a two-week extension to file its response (R. 173), and now files its response in opposition.

## Argument

Federal Rule of Criminal Procedure 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Although "motions for a new trial are disfavored," *United States v. Williams*, 146 F. App'x 425, 434 (11th Cir. 2005), the "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant such a motion. *See, e.g.*, *United States v. Vicaria*, 12 F.3d 195, 198 (11th Cir. 1994) (holding that "interest of justice" standard is broad and "not limited to cases where the district court concludes that its prior ruling, upon which it bases the new trial, was legally erroneous").

13

Because the Court did not err by instructing the jury as to either deliberate ignorance or aiding and abetting, Detling's motion should be denied. But even if one or both instructions were erroneous, any such errors were harmless, and Detling cannot demonstrate that it is in the "interest of justice" to grant a new trial given the overwhelming evidence that supported the jury's verdicts.

## A. The Court correctly instructed the jury on deliberate ignorance.

The Court properly instructed the jury on deliberate ignorance. The "instruction is warranted 'only when . . . the facts . . . support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution.'" *United States v. Santos*, 397 F. App'x 583, 590 (11th Cir. 2010) (quoting *United States v. Rivera*, 944 F.3d 1563, 1571 (11th Cir. 1991)) (internal quotation marks omitted). Although the "district court should not instruct the jury on 'deliberate ignorance' when the relevant evidence points only to actual knowledge, rather than deliberate avoidance[,]" *Rivera*, 944 F.2d at 1571, "if there is evidence in the record to support both actual knowledge and deliberate ignorance, then both instructions may be given." *United States v. Jeri*, 869 F.3d 1247, 1268 (11th Cir. 2017) (citing *United States v. Arias*, 984 F.2d 1139, 1143 (11th Cir. 1993)).

14

At trial, Detling offered various defenses, including that he purportedly relied in good faith on others—especially Cole and Ingram—for information relating to the litigation advances. (R. 165, Closing Arg. Tr. at 54:25-55:7.)[23] He also suggested he could have acted

---

[23] During closing, defense counsel argued that Cole and Ingram were responsible, and not Detling:

Now, the government may try to tell you that even if you think Mackenzie Cole or Aimie Ingram were involved in this, that doesn't mean you have to find Mr. Detling not guilty. But when they stood before you in opening, they never gave you any hint that they thought either of those people were involved and in fact

in good faith because the clients allegedly authorized him to obtain

litigation financing under the terms of his firm's engagement letters.

(*Id.* at 29:24–30:13.) On the other hand, Detling simultaneously argued

that maybe someone had executed the scheme because they could have

potentially accessed his email account. (*Id.* at 45:13–46:8.) Or that Cole

and Ingram actually executed the entire scheme. (*Id.* at 54:18–24.)

---

they called them as their witnesses who they expected you to
believe. But you were here. You saw their case blow up with
those two witnesses. You saw -- you saw it with Aimie Ingram's
lies and you saw it when she admitted that there were
transactions that were not authorized by Mr. Detling that bit
benefited her. And you saw it when Mackenzie Cole was forced to
go through each and every one of the transactions that she would
have been able to see while still pretending that she thought
nothing was wrong. We're not suggesting to you that Mr. Detling
knowingly assisted Ms. Ingram or Ms. Cole in a fraud scheme,
but if you have any reason to believe that Ms. Cole and Ms.
Ingram may have done this together, the same way that they
planned to run the down payment through the firm's accounts
without Mr. Detling's knowledge, then that is a reasonable doubt
that should cause you to acquit. If you have any reason to believe
that the two of them may have fed information that he, Mr.
Detling, in good faith passed on to the funding companies about
the client wanting the advances, then that is a reasonable doubt
that should cause you to acquit. If you have reason to believe that
they may have moved money out of the IOLTA account into the
operating account without his knowledge, then that is a
reasonable doubt that should cause you to acquit.

(R. 165, Closing Arg. Tr. at 54:4–55:7.)

Detling also argued at various points that he could not have committed the fraud because he was supposedly absent from the firm on account of his daughter's illness. (*See id.* at 41:24–42:6.)

Accordingly, the government requested the deliberate ignorance instruction based on Detling's apparent concession that he did apply for and obtain the fraudulent litigation advances, albeit purportedly under the guise of operating in "good faith." The Court correctly provided the instruction because the jury could infer—assuming it was true he relied on others—that Detling purposefully contrived to avoid learning that none of the clients had actually wanted the litigation advances. *See, e.g., United States v. Fernandez*, 553 F. App'x 927, 936–37 (11th Cir. 2014); *United States v. Magallon*, 984 F.3d 1263, 1286 (8th Cir. 2021) ("The '[deliberate ignorance] instruction is particularly appropriate when the defendant denies any knowledge of a criminal scheme despite strong evidence to the contrary.'") (quoting *United States v. Regan*, 940 F.2d 1134, 1136 (8th Cir. 1991)); *United States v. Gowder*, 841 F. App'x 770, 783 (6th Cir. 2020) ("Courts may give a deliberate-ignorance instruction if the defendant claims lack of knowledge and the facts and evidence support an inference of deliberate indifference.") (citation omitted); *see also United States v. Bryant*, 854 F. App'x 572, 574 (5th Cir. 2021) (citation omitted); *United States v. Underwood*, 845 F. App'x 239, 242 (4th Cir. 2021) (citation omitted).

Here, the evidence showed conclusively that Detling knew that litigation advances had been obtained and that he was the leader and primary decision-maker for the law firm. He was responsible for communicating with Capital Financing and Mighty about the advances.[24] And he had access to the bank accounts—several IOLTA accounts—that were used to receive the fraudulent litigation advances, rather than the clients' accounts.[25] But none of these advances were ever transferred from his firm's IOLTA accounts to the clients who supposedly needed them. Detling was also responsible for approving his client-victims' settlement statements, and these litigation advances—if legitimate—should have appeared on those statements. But the

---

[24] *See, e.g.,* GX-256 (May 21, 2015 email from C. Detling to H. Brammer ("And I'm the only one in the office who has the authority to sit down and talk to clients about financing options, so don't read anything into the fact that I haven't sent any apps your way in a few weeks.").

[25] The witnesses from the financing companies testified that it was unusual for the litigation advances to be deposited (or wired) directly into Detling's IOLTA accounts. In particular, Caballero testified that the clients, instead of their attorneys, typically picked up the litigation advance checks themselves from Capital Financing, and she could not recall any other attorney aside from Detling picking up the checks. This evidence thus shows either that Detling had actual knowledge that the advances had been fraudulently obtained or he was intentionally contriving to avoid learning why his clients were obtaining litigation advances but not the proceeds from those advances.

18

evidence showed they did not.[26]  The evidence also showed that while Detling did not personally meet with every client-victim—other lawyers were involved in their representations[27]—several had expressly told him they did not want or need a litigation advance. [28] Taking all this together, along with Detling's argument that he relied in good faith on others at the law firm, gives rise to the inference that, even if Detling did not have actual knowledge that the client-victims were not seeking to obtain litigation advances, he purposefully contrived to avoid learning that fact. *Cf. United States v. Alexander*, 857 F. App'x 592, 597 (11th Cir. 2021) (district court did not err by giving deliberate ignorance instruction where defendant used "stolen identities as the names of senders, rather than using his name or his co-conspirators' names"); *Gowder*, 841 F.3d at 783 (deliberate ignorance instruction appropriate where clinic owner "claimed a lack of knowledge" that it was a pill mill but there was evidence of a health department investigation, patients' abuse of drugs, and his prior involvement with a co-defendant).

---

[26] *See, e.g.*, GX-272 (Mar. 3, 2016 email from C. Detling to J. Schwadron); GX-276 (Mar. 16, 2016 email from C. Detling to J. Schwadron); Testimony of A. Ingram.

[27] *E.g.*, testimony of client-victims K.P. and A.U.

[28] *E.g.*, testimony of client-victims M.S.K. and D.M. (on behalf of client-victim T.M.).

Detling further claims that his "good faith" defense was somehow undercut by the deliberate ignorance instruction, but he does not explain how. (R. 170, Mot. for New Trial at 10.) And he has waived the ability to provide reasons later. *Cf. United States v. Kendricks*, No. 1:15-CR-400, 2016 U.S. Dist. LEXIS 142027, at *17–18 n.5 (N.D. Ga. Aug. 22, 2016) ("Arguments which are first raised in a reply brief are deemed waived.") (citing *United States v. House*, 684 F.3d 1173, 1210 (11th Cir. 2012)). At trial, Detling elicited testimony from witnesses, such as Schwadron and Brammer, who were unaffiliated with Detling's law firm, that they "did not know" how his firm operated or where Detling had purportedly received the information he relayed about clients or litigation advances. (R. 165, Closing Arg. Tr. at 39:19–24.) He extensively cross-examined Ingram and Cole about their access to client and banking information and Detling's need to rely on them because he was not daily at his firm. (*Id.* at 52:19–53:15 (arguing that Detling could have relied on information provided by Cole).) Detling further highlighted the "power of attorney" clauses in his firm's engagement letters to argue that his clients' implicitly authorized him to obtain litigation advances. (*Id.* at 29:24–30:13.) As such, his "good faith" presentation was not harmed by the instruction and the Court did not err in issuing the deliberate ignorance instruction.

Detling next argues, without legal authority, that instructing a jury on deliberate ignorance amounts to a constructive amendment. (R. 170,

Mot. for New Trial at 10.) [29] This argument fails. Instructing a jury how the government may prove that a defendant had the requisite knowledge does not broaden the possible bases of conviction. As shown in the jury instructions, the jury was still required to find each element of wire fraud and aggravated identity theft beyond a reasonable doubt, including that Detling acted knowingly. (R. 153, Detling Final Jury Instructions at 8–9 (wire fraud); 11 (aggravated identity theft)). *Compare United States v. Edwards*, 526 F.3d 747, 761 (11th Cir. 2008) ("As the jury instructions did not alter the *mens rea* element of the wire fraud offense, a constructive amendment did not occur.") *with United States v. Madden*, 733 F.3d 1314, 1317–18 (11th Cir. 2013) (indictment was constructively amended when jury instructed that it could convict a defendant if it found he carried a firearm "*during and in relation* to a drug trafficking offense," when the indictment charged the defendant only with possessing a firearm "*in furtherance of* . . . a drug trafficking crime" and using and carrying a firearm "during and in relation to a crime of violence") (emphasis added). [30]

---

[29] "A constructive 'amendment occurs when the essential elements of the offense are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Edwards*, 526 F.3d 747, 760 (11th Cir. 2008) (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)) (alterations omitted).

[30] *See also, e.g., United States v. Vasquez*, 677 F.3d 685, 696 (5th Cir. 2012) ("The deliberate ignorance instruction does not lessen the government's burden to show, beyond a reasonable doubt, that the

Even if the Court erred—and it did not—by instructing the jury on deliberate ignorance, the Eleventh Circuit has "repeatedly held" that doing so "'is harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge.'" *United States v. Wentt*, 828 F. App'x 526, 528 (11th Cir. 2020) (quoting *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008)). That was the case here. The Court properly instructed the jury as to actual knowledge (R. 153, Final Jury Instructions at 6), and the government introduced "sufficient evidence to support the actual-knowledge theory." *United States v. Ahrens*, 782 F. App'x 845, 849 (11th Cir. 2019) (citing *United States v. Stone*, 9 F.3d 934, 937, 940 (11th Cir. 1993)); *see also, e.g.*, *United States v. Pineda*, 843 F. App'x 174, 181 (11th Cir. 2021) (district court did not err by instructing the jury as to deliberate ignorance even though there was testimony that the defendant acted "with full knowledge of the fraud" and even if the court erred, it was harmless, because "there was sufficient proof that [the defendant] had actual knowledge of the fraud"); *United States v. Fernandez*, 553 F. App'x 927, 937 (11th Cir. 2014) ("But the absence or presence of evidence of deliberate ignorance 'does not matter' when 'the jury could have convicted on an alternative, sufficiently supported

_____

knowledge elements of the crimes have been satisfied.") (quotation marks omitted).

theory of actual knowledge.") (quoting U*nited States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006)).[31]

As detailed above, the government introduced overwhelming evidence from which the jury could have concluded that Detling acted with actual knowledge. The government's evidence proved, among other things, that Detling executed the fraudulent financing contracts, directly and extensively communicated with the financing companies (and was their exclusive contact), controlled the bank accounts in which the fraudulent funds were deposited or wired, and was even told by several clients that they did not need or want a litigation advance.

---

[31] Indeed, Detling's reliance on *Stone* is curious because there the Eleventh Circuit applied a harmless error analysis where the defendant argued that the jury had been improperly instructed on deliberate ignorance. *Stone*, 9 F.3d at 939–42. Detling suggests that *Stone* is distinguishable because in that case "the jury was instructed on the evidentiary basis which must be found before it can consider whether the defendant acted with deliberate ignorance." (R. 170, Mot. for New Trial at 9.) Detling does not cite any language from *Stone* to support this argument. Nor does it make much sense considering what *Stone* actually says. *Stone* explained, first, that it was uncontested that the deliberate ignorance instruction was correct as a matter of law, *Stone* 9 F.3d at 939, and second, because the jury is presumed to follow the law, "if there was insufficient evidence to prove deliberate ignorance beyond a reasonable doubt, there is no reason to believe that the jury convicted [the defendant] on a . . . theory for which there was insufficient evidence." *Id.* at 941–42. Although Detling objected to instructing the jury on deliberate ignorance, he did not argue that the Court's instruction—as given—improperly instructed the jury on the law. (R. 167, Nov. 1, 2021 Jury Charge Conference at 10:22–12:16.)

Finally, Detling argues for the first time in his motion that the

Court erred by not giving a portion of the pattern instruction on

deliberate ignorance. (R. 170, Detling Mot. for New Trial at 8.) Because

Detling failed to object to the Court not providing this portion of the

instruction—as opposed to objecting to the deliberate ignorance

instruction in its entirety—the Court should review the failure to give

this portion of the deliberate ignorance instruction for plain error. *See,*

*e.g.*, *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (noting

that plain error applies to any unpreserved objections to jury

instructions because Federal Rule of Criminal Procedure 30(d) requires

a party to "inform the court of the specific objection and grounds for

objection before the jury retires to deliberate"); *United States v. Puche*,

350 F.3d 1137, 1148 n. 5 (11th Cir. 2003) (noting that because

defendants objected to the deliberate-ignorance instruction on different

grounds on appeal, the plain-error standard of review applied); *United*

*States v. Schlei*, 122 F.3d 944, 974 (11th Cir. 1997) ("Although Schlei

objected to the deliberate ignorance instruction at trial, he did not raise

this specific contention before the district court. 'In order to preserve an

objection to jury instructions for appellate review, a party must object

before the jury retires, stating distinctly the specific grounds for the

objection.'") (quoting *United States v. Starke*, 62 F.3d 1374, 1380-81

(11th Cir.1995)); *United States v. Sirang*, 70 F.3d 588, 594 (11th Cir.

24

1994) (holding the objection must be specific enough to give a court an opportunity to correct errors before the case goes to the jury).[32]

To satisfy plain error, Detling must show "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Xavier*, 735 F. App'x 656, 659 (11th Cir. 2018) (citing *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013)).[33] Although the Court modified the pattern instruction by not providing the jury an example of deliberate ignorance, the instruction, when coupled with the remaining jury instructions, properly instructed the jury as to the elements it had to find with respect to wire fraud and aggravated identity theft. Importantly, the jury was instructed that the government must prove every fact beyond

---

[32] The government could not locate any cases from the Eleventh Circuit discussing the interplay between the standard of review applicable to Rule 33 motions and that to unobjected jury instruction. In other words, while the Court may grant a Rule 33 motion where the "interest of justice" so demands, it is unclear whether a defendant could meet that standard where he could not demonstrate plain error because he must show both that the error affected his substantial rights and seriously affected the fairness, integrity, or public reputation of the proceedings.

[33] As a formal matter, a party must establish the first three elements of plain error, before a court "may . . . exercise its discretion to notice a forfeited error, but only if [ ] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).

a reasonable doubt, and they could not find Detling guilty merely because of "negligence, carelessness, or foolishness." (R. 153, Jury Instructions at 8, 11); *see, e.g.*, *United States v. Jefferies*, 378 F. App'x 961, 963 (11th Cir. 2010) ("We examine jury instructions to determine if, taken as a whole, the jury was sufficiently instructed to understand the issues and was not misled.") (citing *United States v. Fulford*, 267 F.3d 1241, 1245 (11th Cir. 2001)).[34] And it is well-settled that the jury is presumed to follow the instructions. *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005) (citation omitted). But even if there was error here, it was not plain. Detling has identified no authority that the modified instruction—either taken alone or read as part of the jury instructions as a whole—would be obvious error.

Nor can Detling demonstrate that any error with the instruction—assuming there was some error—affected his substantial rights or seriously affected the fairness or integrity of his trial. For example, in *United States v. Watson*, 611 F. App'x 647 (11th Cir. 2015), the court of appeals held that even if the district court plainly erred in providing a deliberate ignorance instruction, the defendant could not "demonstrate

---

[34] Indeed, there could be little doubt that the government's burden was proof beyond a reasonable doubt. Detling stressed that point in his closing argument, mentioning the government's burden or "reasonable doubt" at least a dozen times in his closing argument. (R. 165, Closing Arg. Tr. at 27, 28, 29, 30, 36, 54, 55.) For its part, the government noted its burden prove Detling's guilt beyond a reasonable doubt at least four times. (*Id.* at 2, 3, 27, 56.)

26

that the error affected his 'substantial rights' [because] [i]n the 'ordinary case,' an error impacts a defendant's substantial rights when that error "affected the outcome of the district court proceedings." *Id.* at 662-663 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). In *Watson*, [a]ny error from the [deliberate ignorance] instruction had no effect on the proceedings because the evidence at trial supported a finding that [the defendant] actually knew that his passengers could not legally enter the United States." 611 F. App'x at 663; *see also Starke*, 62 F.3d at 1381. Likewise, here, the evidence at trial demonstrated that Detling knew his victim-clients neither applied for nor authorized Detling to obtain litigation advances on their behalf. As such, whether the Court plainly erred by instructing the jury on deliberate ignorance was inconsequential and had no affect on the outcome of Detling's trial.

Moreover, it is difficult to imagine any scenario where a defendant could show plain error under these circumstances given that the Eleventh Circuit has repeatedly held that even where the deliberate ignorance instruction was improperly given, *i.e.*, where no evidence supports it being given the jury, such an error is harmless where there is "sufficient evidence to support the actual-knowledge theory" *Ahrens*, 782 F. App'x at 849; *Fernandez*, 553 F. App'x at 937. Such is the case here, where the government presented overwhelming evidence from

which the jury could have concluded that Detling had "actual

knowledge" of the fraud scheme.

### B. The aiding and abetting instruction was appropriate.

Detling's arguments against the aiding and abetting instruction fail

because they are based on an incorrect understanding of the law.

First, contrary to Detling's repeated claims, aiding and abetting is a

theory of criminal liability embedded in every count charged in an

indictment and therefore there was no notice or constructive

amendment issue:

> [T]here is no need to refer to aiding and abetting in the
> indictment because "[t]he aiding and abetting theory is not an
> essential element of the offense." *United States v. DePace*, 120
> F.3d 233, 236 n.3 (11th Cir. 1997); *see also United States v.
> Broadwell*, 870 F.2d 594, 607 (11th Cir. 1989) (noting that a
> defendant "can be found guilty as an aider and abettor pursuant
> to 18 U.S.C. § 2 even though the indictment did not specifically
> charge him as an aider and abettor"). Instead, "it is merely a
> theory upon which criminal liability may be based," *United States
> v. Camacho*, 233 F.3d 1308, 1315 (11th Cir. 2000), and "an
> alternative charge in every count, whether explicit or implicit."
> *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980).

*United States v. Philpot*, 773 F. App'x 583, 590 (11th Cir. 2019). "An

individual . . . may be indicted as a principal for the commission of a

substantive crime and convicted upon evidence that he or she aided and

abetted only." *United States v. Walser*, 3 F.3d 380, 388 (11th Cir. 1993).

This is because "Title 18 U.S.C. § 2 . . . does not establish a separate

crime." *Id.* As such, "18 U.S.C. § 2 is an alternative charge in every count, whether explicit or implicit, and the rule is well-established . . . that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) (stating that "18 U.S.C. § 2 does not define a crime[, but] simply makes punishable as a principal one who aids or abets the commission of a substantive crime") (internal quotation marks omitted)[35]; *United States v. Tucker*, 402 F. App'x 499, 502 (11th Cir. 2010) ("[U]nder our law, an individual indicted as a principal may be convicted on evidence showing that he aided and abetted the commission of the offense, regardless of whether the indictment included an aiding-and-abetting charge.").

Second, the evidence at trial supported inclusion of the instruction. At trial, evidence and testimony was presented that: (i) Ingram and Cole had access to the SunTrust Bank x0526 account;[36] (ii) this bank account was used as part of the fraud;[37] (iii) Cole had been given the title of "partner" by Detling; (iv) Detling did not personally interact with every victim-client; and (v) Cole and other lawyers at Detling's law

---

[35] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.

[36] *See* GX-93 (SunTrust signature card).

[37] *See* GX-445 (Summary Chart).

firm were involved in representing some of the victim-clients. The evidence and testimony—including emails between Mighty and Detling and testimony from Golden, Caballero, Schwadron, and Brammer—also showed that Detling was solely responsible for interfacing with the financing companies. Ingram and Cole both testified on direct that they were not involved in the criminal scheme. And on cross-examination, Detling challenged their veracity. (*See* R. 170, Mot. for New Trial at 11.) The jury was left to evaluate the witnesses' veracity, which Detling attacked voraciously in closing. (*E.g.*, R. 165, Closing Arg. Tr. at 42:7–18, 44:2–3, 45:13–14, 46:9–47:2, 48:13–49:2.) Indeed, Detling's own defense (as described in his motion for new trial)—"that he relied in good faith upon the managing partner, Mackenzie Cole, and the office manager, Aimie Ingram, . . . regarding the desire of clients to obtain litigation advances" (R. 170, Mot. for New Trial at 11)—essentially concedes evidence of aiding and abetting liability, leaving only intent unproven. As such, there was some evidence and a view of the facts that the jury could reach—largely pushed by the defense—that Detling possibly worked with others to commit the fraud scheme. Although the government did not ultimately opt to do so, it would have been free to argue to the jury in closing (or on rebuttal) that even if Ingram and Cole were involved in the crimes, Detling could still be found guilty as a principal or under an aiding and abetting theory if the evidence supported that conclusion.

Third, this case is neither unique nor novel. In *United States v. Thomas*, 631 F. App'x 847 (11th Cir. 2015), the Eleventh Circuit found no issue with an aiding and abetting instruction with a similar defense from the defendant. There, the defendant's main defense was that "his wife committed the[] crimes." *Id.* at 851. That defense "coupled with the evidence presented at trial—that [the wife] worked where he did, that it was possible that she could have logged in remotely if she knew [the defendant's] passwords, that she was a signatory on each of the three bank accounts which received the stolen funds, and that she had a total of $17,000 in checks written out to her personally from these accounts—supported the aiding and abetting instruction." *Id.* The same reasoning applies here as similar arguments were made by Detling to blame Ingram and Cole for the charged crimes. And the supposedly distinguishing facts Detling identifies about the *Thomas* indictment do not change the law of the Eleventh Circuit, which does not require the supposed distinguishing facts Detling identifies to be present for aiding and abetting liability to apply. *See, e.g. Philpot*, 773 F. App'x at 590.

Fourth, Detling's claim of prejudice and surprise is unsupported. To start, there is no doubt that both parties knew long before trial that Cole and Ingram would be key witnesses so there was no surprise in terms of witnesses. And Detling provides no specific examples of prejudice regarding any witnesses. He at best vaguely claims that the cross-examinations of Cole and Ingram "would have been quite

31

different" (R. 170, Def. Mot. for New Trial at 13), but he does not provide a single theoretical, practical, or legal reason why his tactics would have changed. Regardless, Detling offers no reason why his strategy would be different; he would have still attacked Cole and Ingram to make it appear as if Detling was not involved, just as he did during trial. Now, having provided no specific reasons for prejudice in his opening brief, Detling has waived the ability to provide additional reasons later. *Cf. Kendricks*, 2016 U.S. Dist. LEXIS 142027, at *17–18 n.5. Moreover, the black letter law regarding aiding and abetting liability being implicit in any charged count provides all the notice needed. *See Walker*, 621 F.2d at 166.

Fifth, Detling's complaint that the "government made no reference to the instruction in closing argument" is of no moment. (R. 170, Def. Mot. for New Trial at 14.) The instruction was proper based on Eleventh Circuit law and the evidence and seemingly necessary because Detling, even now, insists on a contrived, incorrect interpretation of criminal law for which there is no legal support—that the government must exclude Cole, Ingram, and everyone else in the world from being involved in the charged scheme for the jury to convict Detling.[38] Because the jury instructions were read before closing arguments, it was important for the jury to hear the true and correct

---

[38] The actual law, of course, only requires that the elements of the offenses be proven beyond a reasonable doubt against Detling.

law to prevent defense counsel from poisoning the jury with their incorrect assertions during closing.[39]

Finally, even if the Court erred in giving the aiding and abetting instruction, any error was harmless because, as explained above, the evidence of Detling's guilty was overwhelming. *United States v. Hornaday*, 392 F.3d 1306, 1316 (11th Cir. 2004) (applying harmless error review when jury is improperly instructed on aiding and abetting theory of liability); *United States v. Grimsley*, 808 F. App'x 865, 870 (11th Cir. 2020).

\* \* \* \* \*

---

[39] The government's fears regarding Detling's closing were well-founded. During closing, the government had to take the unusual step of objecting twice due to the defense mischaracterizing the jury instructions and returning to a topic that was previously ruled off limits. (R. 165, Closing Arg. Tr. at 32:13–36:2 (Court ultimately referring the jury back to the instructions by stating "I just want to make sure that you understand, and I've said this before, but the law you are to apply is the law that's in the jury instructions. So the lawyers are arguing the law, but the law comes from what . . . I have given you as to the instructions."); *id.* at 44:13–45:3 (Court instructing defense to "move on" because the issue "was the subject of the Court's [prior] ruling on that particular matter").

## Conclusion

For the foregoing reasons, the Court should deny Detling's motion.

Respectfully submitted,

Kurt R. Erskine
    *United States Attorney*


/s/ Alex Sistla
    *Assistant United States Attorney*
    Georgia Bar No. 845602
    Alex.Sistla@usdoj.gov


/s/ Samir Kaushal
    *Assistant United States Attorney*
    Georgia Bar No. 935285
    Samir.Kaushal@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Caitlyn Wade

Suzanne Hashimi

*Counsel for Chalmer Detling II*

January 4, 2022

/s/ ALEX SISTLA

ALEX SISTA

*Assistant United States Attorney*

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,     :
     :
     :
     :     CRIMINAL ACTION NO.
v.     :     1:18-cr-00309-LMM-LTW-1
     :
CHALMER DETLING, II,     :
*also known as* Chuck Detling,     :
     :
     Defendant.     :

## ORDER

This case comes before the Court on a Motion for New Trial, filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure by Defendant Chalmer Detling, II. Dkt. No. [170]. After due consideration, the Court enters the following Order.

## I.   BACKGROUND

Defendant was charged by indictment with four counts of wire fraud under 18 U.S.C. § 1343 and five counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) for conduct associated with the fraudulent procurement of

litigation advances.[1] Dkt. No. [35]. A jury returned a verdict of guilty on all counts on November 1, 2021. Dkt. No. [154].

On December 7, 2021, Defendant filed the Motion for New Trial that is presently pending before the Court.[2] Dkt. No. [170]. He argues that he should be granted a new trial because the verdict was tainted by improper jury instructions. Id.

## II.  DISCUSSION

Rule 33 of Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendant contends that he should be granted a new trial because the Court erroneously charged the jury on deliberate ignorance and aiding and abetting. Dkt. No. [170] at 7-16. As to the deliberate-ignorance charge, Defendant argues that the Court erred in giving any instruction because the evidence of record did not support the charge; that the Court improperly amended the pattern instruction; and that the Court constructively amended the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two. Id. at 8-10. Defendant argues that it was improper for the Court to instruct the jury

---

[1]      The indictment describes "litigation advances" as modest financing afforded to plaintiffs, mainly those with personal-injury cases, for living and medical expenses while their lawsuits are pending. Dkt. No. [35] at 3.

[2]      As a result of an extension order entered on November 10, 2021, the timeliness of the motion is not at issue. See Dkt. No. [161].

on aiding and abetting because the Government's theory of prosecution as reflected in the language of the indictment was that Defendant acted alone in defrauding finance companies and using clients' personal information to obtain advances to which he was not entitled, the defense was not put on notice of the Government's plan to rely on an aiding-and-abetting theory prior to the close of evidence, and the Government made no reference to the instruction in its closing argument, all of which Defendant contends resulted in constructive amendment and unfair surprise. Id. at 10-14.[3] The Court addresses each contention in turn.

### A.    Evidence at Trial Supported the Instructions

Defendant first argues that the Court erred in giving any instruction of deliberate ignorance because the charge was unsupported by the evidence. Id. at 8. A deliberate ignorance instruction is warranted when the facts "support the inference that the defendant was aware of a high probability of the existence of

---

[3]    Defendant raised additional arguments in his reply brief, but they are not considered here. See United States v. House, 684 F.3d 1173, 1210 (11th Cir. 2012) (refusing to consider an argument raised for the first time in a reply brief); see also United States v. Zambrano, 752 F. App'x 775, 781 n.4 (11th Cir. Oct. 9, 2018) ("[W]e do not consider arguments raised for the first time in a reply brief.") (citing United States v. Fiallo-Jacome, 874 F.2d 1479, 1481 (11th Cir. 1989)); United States v. Kendricks, Crim. Action File No. 1:15-cr-400-MHC/AJB, 2016 WL 11440141, at *5, n.4 (N.D. Ga. Aug. 22, 2016) (R&R) ("Arguments which are first raised in a reply brief are deemed waived."), adopted at 2016 WL 5952743 (N.D. Ga. Oct. 13, 2016).

Defendant also asserts in his opening brief that using the edited deliberate-ignorance charge was particularly harmful to him because it undercut his good-faith defense. Dkt. No. [170] at 9-10. Because Defendant does not explain how, this contention is similarly waived.

the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." United States v. Rivera, 944 F.2d 1563, 1571 (11th Cir. 1991) (internal quotation marks omitted).

The argument that the deliberate-ignorance instruction was unsupported by the evidence is without merit. Defendant himself argued during a charge conference that the evidence was sufficient to enable the jury to conclude that he applied for the litigation advances because his colleagues—Mackenzie Cole and Aimee Ingram—had indicated to him that the clients had authorized him to do so and that he believed Ms. Cole would move the funds from the firm's IOLTA account to the clients. Dkt. No. [166] at 11:12-12:9, 13:4-9, 14:4-13. The evidence also showed that Defendant was responsible for approving his clients' settlement statements, that the settlement statements would include any legitimate litigation advances, and that his victim-clients' settlement statements did not include the advances; that Defendant had control of the three IOLTA accounts that were used to receive the fraudulent litigation advances and was the sole signatory on two of them, but the advances were never transferred from the firm's IOLTA accounts to the clients who supposedly needed them; and that several of his victim clients had expressly told him that they did not want or need a litigation advance. Together, these facts certainly support an inference that Defendant was aware of a high probability that the clients had not authorized the loan applications or

4

received the funds and that he purposefully contrived to avoid learning that they had not.

The evidence at trial also supported the aiding-and-abetting charge. "Under an aiding and abetting theory, the government must prove that the defendant in some way associated himself with the criminal venture, that he wished to bring it about, and that he sought by his actions to make it succeed." United States v. Broadwell, 870 F.2d 594, 608 (11th Cir. 1989). The aiding-and-abetting statute allows the finder of fact to find a defendant guilty of a substantive crime even though the person did not personally commit all acts constituting elements of the crime and may not even know the particular means by which all of the elements were committed. Id.

The evidence here shows that Defendant was associated with the fraudulent-loan scheme, wished to bring it about, and sought by his actions to make it succeed. The evidence showed that Defendant allowed Ingram and Cole to access one of the IOLTA accounts that was used as part of the fraud, that he had given Cole the title of "partner," that he did not personally interact with every victim client, and that Cole and other lawyers in the firm were involved in representing some of the victim clients. There was also evidence that Defendant signed the fraudulent loan agreements, picked up the fraudulently obtained checks, controlled the bank accounts where the funds from the fraudulent litigation advances were deposited, communicated with the financing companies

5

about the repayment status of the loans, and tried to make "payoffs" after the loans were discovered to be fraudulent. The evidence at trial therefore supported the aiding-and-abetting charge as well.

### B. Defendant Was Not Unfairly Surprised by the Deliberate-Ignorance or Aiding-and-Abetting Instructions

Defendant argues that he was unfairly surprised by the accomplice theories. Dkt. No. [170] at 14. This is false: it was in fact Defendant who raised the theory that he did not act alone.

The parties filed proposed jury instructions prior to trial. Dkt. Nos. [136, 137]. Neither proposal included instructions on deliberate ignorance or aiding and abetting, id., but Defendant's proposed instructions included a good-faith charge, Dkt. No. [137] at 12.

The Court held its first charge conference on October 28, 2021, before the Government concluded its case in chief. Dkt. Nos. [157, 166]. During the conference, Defendant argued that a good-faith instruction was appropriate because a jury could conclude that Cole and Ingram caused him to apply for the litigation loans by indicating to him that the clients had authorized him to do so and that he believed Ms. Cole would move the funds from the firm's IOLTA account to the clients. Dkt. No. [166] at 11:12-12:9, 13:4-9, 14:4-13. In charge discussions over the next couple of days, Defendant argued that the jury must be instructed that because he was not charged with conspiracy or aiding and abetting, it must acquit if it found reasonable doubt that Defendant acted alone.

6

Dkt. No. [150] at 1-2. The Court therefore finds no foundation for Defendant's argument that he was surprised by any theory that he did not act alone.

### C. The Instructions Did Not Constructively Amend the Indictment

As to Defendant's argument that the deliberate-ignorance and aiding-and-abetting charges amounted to constructive amendments of the indictment, or, in other words, that Defendant could not be found guilty unless the jury determined that he personally committed each element of the charged crimes because he was not charged with conspiracy or aiding-and-abetting, see Dkt. No. [170] at 10, this, of course, is a misstatement of the law. A court does not constructively amend an indictment by giving a deliberate-ignorance charge; rather, courts in this circuit recognize " 'deliberate ignorance of criminal activity as the equivalent of knowledge.' " United States v. Wentt, 828 F. App'x 526, 528 (11th Cir. Sept. 17, 2020) (quoting United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993)). That is to say, " '[t]he knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance.' " Wentt, id. (quoting United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000)). Likewise, aiding and abetting is a theory of criminal liability that is embedded in every count charged in an indictment. United States v. Philpot, 773 F. App'x 583, 590 (11th Cir. July 12, 2019); United States v. Thomas, 631 F. App'x 847, 851 (11th Cir. Nov. 19, 2015); United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993); Broadwell, 870 F.2d at 608.

### D.   Harmless Error

The remainder of Defendant's arguments were not raised at trial. Under Rule 30 of the Federal Rules of Criminal Procedure, a party must "inform the court of the specific objection and grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Where a party fails to do so, the plain-error standard applies. United States v. Iriele, 977 F.3d 1155, 1177 (11th Cir. 2020); United States v. Schlei, 122 F.3d 944, 973 (11th Cir. 1997); United States v. Sirang, 70 F.3d 588, 594 (11th Cir. 1995); see also United States v. Puche, 350 F.3d 1137, 1148 n.5 (11th Cir. 2003) (applying plain error review to an objection argued differently on appeal).

Plain-error review requires that a court consider whether it made "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Xavier, 735 F. App'x 656, 659 (11th Cir. May 30, 2018) (citing United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013)); accord United States v. Turner, 474 F.3d 1265, 1275-76 (11th Cir. 2007) (explaining that "plain-error review is intended to enforce the requirement that parties lodge timely objections to errors at trial so as to provide the district court with an opportunity to avoid or correct any error, and thus avoid the costs of reversal and a retrial" and that "proof of a plain error involves not only a showing of harm, but also proof that the error was so conspicuous that the judge and prosecutor were derelict in countenancing it" (internal quotation marks

omitted)). Jury instructions are examined to determine whether, taken as a whole, the jury "was sufficiently instructed to understand the issues and was not misled." United States v. Jefferies, 378 F. App'x 961, 963 (11th Cir. May 11, 2010).

### 1.   Deliberate Ignorance

The Court instructed the jury on deliberate ignorance at the Government's request. Using a portion of the pattern jury instruction for deliberate ignorance, the Court stated to the jury,

> If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Dkt. No. [153] at 11.

Defendant newly argues that this was reversible error because the Court gave only the first and last sentences of the pattern instruction, omitted the middle portion, and thereby neglected to charge "the evidentiary finding required for the application of the charge."[4] Dkt. No. [170] at 8-9. Specifically, the Court omitted the portion of the pattern charge that instructs the jury:

---

[4]    Defendant avers that he cannot point to the objection because that portion of the trial transcript is not yet complete. See Dkt. No. [178] at 6 n.6. This argument is baseless: at trial, the Court specifically asked the parties whether they opposed the modification; the Government explained that it agreed, and Defendant did not object to the modification. Dkt. No. [167] at 10-11, 15. Moreover, the Court granted Defendant an extension of time to file his motion for new trial, by which it extended the deadline to fourteen days after the requested portions of the trial transcript were prepared. Dkt. No. [161]. Thus, no material

"Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.

So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed [his] [her] eyes.

11th Cir. Pattern Jury Instrs. (Crim. Cases) (2021), Special Instr. No. S8.

There was no plain error in giving this instruction. Although the Court modified the pattern instruction as stated above, it properly instructed the jury regarding the knowledge standard when it instructed the jury that the government must prove every fact beyond a reasonable doubt; that " 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident"; and "that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew [a] fact." Dkt. No. [153] at 1, 6, 11. Thus, the jury was sufficiently instructed on the concept of deliberate ignorance.

Moreover, it is difficult to see how Defendant could have been prejudiced by the deliberate-ignorance instruction, as the evidence of actual knowledge in this case is overwhelming. The Eleventh Circuit "ha[s] repeatedly held that 'instructing the jury on deliberate ignorance is harmless error where the jury was

_____

portion of the charge conferences should remain untranscribed. The objection is therefore subject to plain-error review.

also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge.' " <u>Wentt</u>, 828 F. App'x at 528 (quoting <u>United States v. Steed</u>, 548 F.3d 961, 977 (11th Cir. 2008)); <u>accord</u> <u>United States v. Ahrens</u>, 782 F. App'x 845, 849 (11th Cir. July 26, 2019); <u>United States v. Fernandez</u>, 553 F. App'x 927, 937 (11th Cir. Feb. 3, 2014); <u>Rivera</u>, 944 F.2d at 1572.

That is the case here. Four witnesses from defrauded companies Capital Financing and Mighty testified that they dealt exclusively with Defendant on the fraudulent litigation advances and that they never would have approved them if they had known the clients had neither authorized the advances nor received the funds. The witnesses from Capital Financing testified that Defendant picked up the fraudulently obtained checks and that they dealt with Defendant exclusively about the status of repayment. The witnesses from Mighty testified that they spoke with Defendant over the telephone and even met with him in person on a few occasions. There was also evidence that when Mighty learned of the fraud, Defendant tried for months to make "payoffs" and ultimately reached an agreement with Mighty to "release" his former clients from any liability. The testimony was corroborated by voluminous e-mail correspondence and business records, including loan agreements signed by Defendant. Twelve victim clients also testified, including the five whose identities underlie the charges in the superseding indictment. They all testified that they had never authorized any of the financing contracts, and all but one testified that they would not have

authorized the financing if asked. In fact, several testified that they had expressly told Defendant that they did not want a litigation advance. Each of the victim clients also testified that they never received any of the funds from the financing companies, and that testimony was corroborated by an FBI agent who testified that she had traced the litigation advances and found that none of them went to Defendant's clients. The Government also presented overwhelming evidence that Defendant controlled the bank accounts where the funds from the fraudulent litigation advances were deposited, including bank records and testimony of his former colleagues. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar. In light of these facts, the Court finds that copious evidence of actual knowledge supported the guilty verdict.

For these reasons, the Court concludes that the deliberate-ignorance instruction, as given, was not contrary to the interest of justice and thus that the charge does not supply grounds for granting a new trial.

### 2.   *Aiding and Abetting*

At the request of the Government, the Court instructed the jury on aiding and abetting as follows:

> It's possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others. A Defendant "aids and abets" a person if the Defendant intentionally joins with the person to commit a crime. A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also

responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.

But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime — not just proof that the Defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

Dkt. No. [153] at 7-8 (using 11th Cir. Pattern Jury Instrs. (Crim. Cases) (2021), Special Instr. No. S7).

Defendant argues that this was improper because the Government's theory of prosecution as reflected in the language of the indictment was that Defendant acted alone in defrauding finance companies and using clients' personal information to obtain advances to which he was not entitled; the defense was not put on notice of the Government's plan to rely on an aiding-and-abetting theory prior to the close of evidence; and the Government made no reference to the instruction in its closing argument. Dkt. No. [170] at 10-14. He contends that the Court therefore unlawfully permitted the Government to surprise him with a new theory of the prosecution at a point in time where he could no longer challenge the Government's witnesses or present evidence to counter the new theory and that the aiding-and-abetting instruction, in effect, impermissibly broadened the bases for conviction beyond the allegations contained in the indictment. Id. at 14-17 (citing United States v. Sanders, 966 F.3d 397 (5th Cir. 2020); United States v. Phea, 953 F.3d 838 (5th Cir. 2020); United States v. Hoover, 467 F.3d

496 (5th Cir. 2006); United States v. Artrip, 942 F.2d 1568 (11th Cir. 1991);

United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990); United States v.

Peel, 837 F.2d 975, 979 (11th Cir. 1988), abrogation recognized by United States

v. Maradiaga, 987 F.3d 1315, 1323 n.2 (11th Cir. 2021) (explaining that a

constructive amendment to an indictment does not necessarily require reversal);

United States v. Lignarolo, 770 F.2d 971, 981 n.15 (11th Cir. 1985); United States

v. Martin, 747 F.2d 1404 (11th Cir. 1984)).

The Court is unpersuaded by these arguments as well. First, as noted

above, aiding and abetting need not be expressly charged, as it is a theory of

criminal liability that is embedded in every count charged in an indictment. See

supra Part II.C. While Defendant now seeks to distinguish the authority the Court

relied on during the charge conference and in doing so makes clear his argument

that an indictment that does not contain allegations against potential aides or

abettors is per se constructively amended by an aiding-and-abetting charge, the

Court notes that at trial he did not supply case law to support his objection or

seek to distinguish the case law argued by the Government or cited by the Court.

See Dkt. No. [167] at 5, 8-10. An "objection must be specific enough 'to give the

district court the chance to correct errors before the case goes to the jury.' " Iriele,

977 F.3d at 1177 (quoting Sirang, 70 F.3d at 594). Because Defendant argued only

in the abstract and did not make a clear objection or supply legal grounds for the

objection before the jury retired to deliberate, the plain-error standard applies.

14

See Fed. R. Crim. P. 30(d); Iriele, 977 F.3d at 1177; Puche, 350 F.3d at 1148 n.5; Schlei, 122 F.3d at 973; Sirang, 70 F.3d at 594. Therefore, Defendant must show that the aiding-and-abetting charge affected his substantial rights and "seriously affect[ed] the fairness, integrity, or public reputation of [his] judicial proceedings." Xavier, 735 F. App'x at 659; Turner, 474 F.3d at 1276.

Defendant has not made such a showing. Contrary to Defendant's arguments regarding the timing of the request for the aiding-and-abetting charge, he has not shown that the timing of the request prejudiced him. The request for aiding-and-abetting charge was filed in the early afternoon the day before the jury was charged. Dkt. No. [152]. The Court held a final charge conference at 10:15 the next morning, where Defendant was invited to cite authority precluding the charge but failed to do so. Dkt. No. [167] at 5-6, 8-10. Moreover, while Defendant contends that he was prejudiced because the request came after the close of evidence, he had been aware that Cole and Ingram were on the Government's witness list, cross-examined them rigorously, and himself accused them of undertaking a portion of the conduct making up the charges against him. He also does not argue that the Court improperly denied a motion to reopen the evidence or state what evidence he would have sought to elicit if he had the opportunity to reopen the evidence.

Of the cases cited by Defendant, only Martin suggests that an unwarranted aiding-and-abetting charge may constitute reversible error. See Martin, 747 F.2d

at 1407-08.[5] However, subsequent to that opinion, the Eleventh Circuit Court of Appeals explained in <u>United States v. Hornaday</u>, 392 F.3d 1306 (11th Cir. 2004), that <u>Martin</u>'s holding resulted from legal and factual errors and that under Supreme Court precedent, an unwarranted aiding-and-abetting charge constitutes error that "is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, 'or had but very slight effect.' " <u>Hornaday</u>, 392 F.3d at 1315 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 762, 764 (1946) (citations omitted)). In other words, "[i]f one can say 'with fair assurance . . . that the judgment was not substantially swayed by the error,' the judgment is due to be affirmed even though there was error." <u>Hornaday</u>, <u>id.</u> at 1315-16 (quoting <u>Kotteakos</u>, <u>id.</u> at 1248).

In this case, despite Defendant's rigorous cross-examination, there is scant evidence that it was in fact Cole or Ingram who undertook any of the conduct of which Defendant was accused. Defendant himself asserts (without pointing to any evidence of record) only that Cole once transferred funds from a litigation advance from the firm's IOLTA account into the firm's operating account, that Ingram "may have" forged the signature of one victim client on the client's

---

[5]     The propriety of an aiding-and-abetting charge was not on appeal in <u>Sanders</u>, <u>Phea</u>, <u>Hoover</u>, <u>Artrip</u>, <u>Weissman</u>, <u>Peel</u>, or <u>Lignarolo</u>. The Court also notes that in <u>Lignarolo</u>, the court found that although the jury instructions allowed for the satisfaction of an element of a charge on broader grounds that those alleged in the indictment, the defendant was not prejudiced. <u>Lignarolo</u>, 770 F.2d at 981 n.15.

litigation advance, and that Ingram acknowledged that she could easily forge Defendant's signature. Dkt. No. [170] at 11. In contrast, the evidence that Defendant personally undertook the conduct giving rise to the charges was overwhelming. Four witnesses from the defrauded companies testified that they dealt exclusively with Defendant on the fraudulent litigation advances. The witnesses from Capital Financing testified that Defendant picked up the fraudulently obtained checks and that they dealt with Defendant exclusively about the status of repayment. The witnesses from Mighty testified that they spoke with Defendant over the telephone and even met with him in person on a few occasions. There was also evidence that when Mighty learned of the fraud, Defendant tried for months to make "payoffs" and ultimately reached an agreement with Mighty to "release" his former clients from any liability. The Government also presented overwhelming evidence that Defendant controlled the bank accounts where the funds from the fraudulent litigation advances were deposited and was the sole signatory on two of the three accounts. Testimony was corroborated by voluminous e-mail correspondence, bank records, and business records, including loan agreements signed by Defendant. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar. In sum, there was copious evidence that all pointed toward Defendant as the sole actor undertaking the fraud and identity theft.

Moreover, as Defendant concedes, the Government did not argue aiding and abetting in closing arguments. Dkt. No. [170] at 13-14. And while the Court does not base its conclusion on the speed with which the jury reached its verdict, the fact that Defendant was found guilty on all counts in well under an hour suggests that the jury found no need to look beyond the evidence of Defendant's own conduct and delve into the more nuanced question of aiding and abetting.

For these reasons, the Court can say that if even any error was committed, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," that no reasonable jury would have been influenced by the instruction on liability under an aiding and abetting theory, and that Defendant's "substantial rights were not affected." Hornaday, 392 F.3d at 1315-16 (internal quotation marks omitted). The Court therefore concludes that the aiding-and-abetting charge was not contrary to the interest of justice and thus does not supply grounds for granting a new trial.

## III.  CONCLUSION

In accordance with the foregoing, Defendant's Motion for New Trial, Dkt. No. [170], is **DENIED**.

**IT IS SO ORDERED** this 4th day of February, 2022.

**Leigh Martin May**
**United States District Judge**

18

# EXHIBIT E

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

### 1:18-cr-00309-LMM-LTW
### USA v. Detling
### Honorable Leigh Martin May

Minute Sheet for proceedings held In Open Court on 02/10/2022.

| | |
|---|---|
| TIME COURT COMMENCED: 2:01 P.M. | COURT REPORTER: Montrell Vann |
| TIME COURT CONCLUDED: 4:30 P.M. | CSO/DUSM: 1 CSO |
| TIME IN COURT: 2:29 | USPO: Anthony Parker |
| OFFICE LOCATION: Atlanta | DEPUTY CLERK: Brittany Poley |

| | |
|---|---|
| DEFENDANT(S): | [1] Chalmer Detling, II Present at proceedings |
| ATTORNEY(S) PRESENT: | Suzanne Hashimi representing Chalmer Detling |
| | Samir Kaushal representing USA |
| | Alex Sistla representing USA |
| | Caitlyn Wade representing Chalmer Detling |
| PROCEEDING CATEGORY: | Sentencing Hearing (Sentencing Hearing-Contested) |
| MINUTE TEXT: | The Court adopted the Presentence Report and made it the findings of the Court, subject to the Court overruling Defendant's objections to the victim enhancement and the role enhancement. Defendant's counsel raised an additional objection as to the application notes expanding the definition of victim. The Government objected to Defendant's objection as untimely. The Court overruled the objection. The Court heard from Government's and Defendant's counsel. Government's exhibits 1 and 2 admitted. The Court pronounced the sentence as a total of 70 months CBOP, 3 years supervised release, no fine, a special assessment of $900, and restitution in the amount of $254,837.89. The Court allowed the Defendant to voluntarily surrender. The Court inquired about objections to the sentence. Government's counsel objected on substantive reasonableness grounds. Defendant's counsel maintained the objections to the guidelines and objected to the search condition of Defendant's supervised release. The Court advised Defendant of his right to appeal his sentence. |
| HEARING STATUS: | Hearing Concluded |
| EXHIBIT STATUS: | Exhibits retained by the Court to be forwarded to the Clerk's Office. |

# EXHIBIT F

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| | ) | |
| v. | ) | Case Number:   1:18-CR-309-LMM-LTW |
| | ) | USM Number:   71805-019 |
| CHALMER DETLING, II | ) | |
| | ) | Caitlyn Virginia Wade |
| | ) | Defendant's Attorney |

**THE DEFENDANT:**

The defendant was found guilty on counts 4s-7s and 11s-15s of the First Superseding Indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1343 | FRAUD BY WIRE, RADIO, OR TELEVISION | April 1, 2015 | 4s |
| 18 U.S.C. § 1343 | FRAUD BY WIRE, RADIO, OR TELEVISION | April 30, 2015 | 5s |
| 18 U.S.C. § 1343 | FRAUD BY WIRE, RADIO, OR TELEVISION | October 21, 2015 | 6s |
| 18 U.S.C. § 1343 | FRAUD BY WIRE, RADIO, OR TELEVISION | November 4, 2015 | 7s |
| 18 U.S.C. § 1028A(a)(1) | AGGRAVATED IDENTITY THEFT | March 30, 2015 | 11s |
| 18 U.S.C. § 1028A(a)(1) | AGGRAVATED IDENTITY THEFT | March 31, 2015 | 12s |
| 18 U.S.C. § 1028A(a)(1) | AGGRAVATED IDENTITY THEFT | April 17, 2015 | 13s |
| 18 U.S.C. § 1028A(a)(1) | AGGRAVATED IDENTITY THEFT | October 20, 2015 | 14s |

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1                                      Judgment -- Page **2** of **7**

| 18 U.S.C. § 1028A(a)(1) | AGGRAVATED IDENTITY THEFT | November 3, 2015 | 15s |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

The remaining counts are dismissed pursuant to Standing Order 07-04.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

February 10, 2022
_____
Date of Imposition of Judgment

_____
Signature of Judge

LEIGH MARTIN MAY, U. S. DISTRICT JUDGE
_____
Name and Title of Judge

February 11, 2022
_____
Date

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1

Judgment -- Page **3** of **7**

---

Judgment in a Criminal Case
Sheet 2 -- Imprisonment

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a term of 46 MONTHS as to Counts Four, Five, Six, and Seven, with all counts to run concurrent to each other, and 24 MONTHS as to Counts Eleven, Twelve, Thirteen, Fourteen, and Fifteen, to be served concurrent with each other and consecutive to Counts Four through Seven, for a total sentence of **SEVENTY (70) MONTHS**.

The Court recommends that the defendant be incarcerated at a facility as close as possible to Montgomery, Alabama in order to be close to his family.

The defendant shall voluntarily surrender to the United States Marshal for this district or report to the designated facility for service of sentence as directed by the United States Marshal

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

_____
DEPUTY UNITED STATES MARSHAL

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1                                            Judgment -- Page **4** of **7**

Judgment in a Criminal Case
Sheet 3 -- Supervised Release

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of 3 YEARS as to Counts Four through Seven, to run concurrently with each other, and 1 YEAR as to Counts Eleven through Fifteen, to run concurrently with each other, with all counts to run concurrently for a total term of **THREE (3) YEARS**.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
4.  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution.   Restitution payments must be made to Clerk, U.S. District Court, Northern District of Georgia, 2211 U.S. Courthouse, 75 Ted Turner Dr. SW, Atlanta, GA 30303.
5.  You must cooperate in the collection of DNA as directed by the probation officer.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1                                                          Judgment -- Page **5** of **7**

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

**U.S. Probation Office Use Only**

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see Overview of Probation and Supervised Release Conditions, available at:  www.uscourts.gov

I understand that a violation of any of these conditions of supervised release may result in modification, extension, or revocation of my term of supervision.

Defendant's Signature _____   Date _____

USPO's Signature _____   Date _____

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1

Judgment -- Page **6** of **7**

## SPECIAL CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following special conditions of supervision.

You must make full and complete disclosure of your finances and submit to an audit of your financial documents at the request of your probation officer. You must provide the probation officer with full and complete access to any requested financial information and authorize the release of any financial information.  The probation office may share the financial information with the United States Attorney's Office.

You must not incur new credit charges, or open additional lines of credit without the approval of the probation officer.

You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States Probation Officer.  Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.  An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you violated a condition of your supervision and that areas to be searched contain evidence of this violation.  Any search must be conducted at a reasonable time and in a reasonable manner.

You must permit confiscation and/or disposal of any material considered to be contraband or any other item which may be deemed to have evidentiary value of violations of supervision.

DEFENDANT:  CHALMER DETLING, II
CASE NUMBER:  1:18-CR-309-LMM-LTW-1

Judgment -- Page **7** of **7**

Judgment in a Criminal Case
Sheet 5 -- Criminal Monetary Penalties

# CRIMINAL MONETARY PENALTIES

The defendant shall pay to the United States a special assessment of $900 which shall be due immediately.

Special Assessment

TOTAL        $900.00

The Court finds that the defendant does not have the ability to pay a fine and cost of incarceration.  The Court waives the fine and cost of incarceration in this case.

Fine

TOTAL        $0

Restitution

TOTAL        $254,837.89

The defendant must make restitution in the amount of $254,837.89. Restitution shall be paid to the United States District Court Clerk for distribution to:

| Name of Payee | Restitution Ordered |
|---|---|
| Mighty Group, Inc.<br>43 West 24th Street, Sixth Floor<br>New York, New York 10010 | $185,837.89 |
| Capital Financing<br>316 Greyhaven Lane<br>Marietta, GA 30068 | $69,000.00 |
| TOTALS | $254,837.89 |

Restitution shall be paid in full immediately.

Payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are to be made payable to the Clerk, U.S. District Court, 2211 U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303. Any balance that remains unpaid at the commencement of the term of supervision shall commence within 60 days after release from imprisonment on the following terms: payable at a rate of no less than $250 monthly to U.S. District Court Clerk. You must notify the Court of any changes in economic circumstances that might affect the ability to pay this financial penalty.

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA     )
                                 )      CRIMINAL ACTION NO.
vs.                    )      1:18-CR-00309-LMM-LTW-1
                                 )
CHALMER DETLING, II           )
_____)

## NOTICE OF APPEAL

Notice is hereby given that defendant, CHALMER DETLING, II, hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the final judgment and sentence entered in this action on the 11th day of February 2022.

Dated:  This 25th day of February, 2022.

Respectfully submitted,

*/s/ Suzanne Hashimi*
Suzanne Hashimi
Georgia Bar No. 335616

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114

Attorney for Chalmer Detling, II

Federal Defender Program, Inc.
101 Marietta Street, N.W., Suite 1500
Atlanta, Georgia 30303
(404) 688-7530; (404) 688-0768 fax
Suzanne_Hashimi@fd.org
Caitlyn_Wade@fd.org

# EXHIBIT H

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,       )
                                )
                                )
                                )
        v.                      )       Case Number:
                                )       1:18-CR-00309-LMM-LTW-1
CHALMER DETLING, II,            )
                                )
        Defendant.              )

## **ORDER**

The Court hereby modifies the Magistrate Judge's Order Setting Conditions of

Release [14] and the Magistrate Judge's Order Modifying Conditions of Release [23] to

include **CURFEW** and **LOCATION MONITORING**. The defendant, Chalmer

Detling, II, shall be restricted to his residence as directed by the pretrial services office

or supervising officer. Mr. Detling shall submit to location monitoring as directed by the

pretrial services office or supervising officer and comply with all of the program

requirements and instructions provided. The defendant must pay all or part of the cost

of the program based on his ability to pay as determined by the pretrial services office or

supervising officer.

All other previous bond conditions shall remain in effect.

IT IS SO ORDERED, this _1st_ day of November, 2021.

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No.: |
| *versus* | 1:18-CR-00309-LMM-LTW-1 |
| CHALMER DETLING, II | |

## **MOTION FOR APPEAL BOND**

COMES NOW, the Defendant, Chalmer Detling, II, and hereby moves, for

an appeal bond, pursuant to 18 U.S.C. §3143(b) and shows the Court as follows:

### **Procedural Background**

Mr. Detling was charged by indictment with multiple counts of wire fraud

(18 U.S.C. § 1343) and aggravated identity theft (18 U.S.C. § 1048A(a)(1)). Docs.

1, 35. On August 10, 2018, Mr. Detling made his initial appearance before a

United States Magistrate Judge who granted a non-surety bond in the amount of

$50,000.  Docs. 10, 13, 14.  He has remained on bond since that day. On

November 1, 2021, a jury returned a verdict of guilty on counts four through seven

and counts eleven through fifteen against Mr. Detling. Doc. 158.  After the return

of the jury verdict, the government moved to detain Mr. Detling over defense

objection. Doc. 158. The Court found by clear and convincing evidence that Mr.

Detling was not a risk of flight or a danger to the community and denied the

government's motion. Doc. 158.

While the Court allowed Mr. Detling to remain free until sentencing, the Court did impose two additional conditions of his continued release. Specifically, the Court directed that Mr. Detling be subject to a curfew and location monitoring. Doc. 155.  Since Mr. Detling's release more than three years ago, he has been in compliance with all of the conditions of his release including the period after the jury's verdict where more stringent controls were placed on his freedom. There have been no violations reported against him while he has been on bond.

Mr. Detling previously filed a motion for new trial, to which the government responded and Mr. Detling replied to the response. Docs. 170, 177, 178. In his motion for new trial, Mr. Detling alleged that the Court erroneously instructed the jury on deliberate ignorance and aiding and abetting. Docs. 170, 178. The issues raised in his motion for new trial, if granted on appeal would require a new trial on all counts contained in the indictment.  On February 4, 2022, the Court denied Mr. Detling's motion for new trial. Doc. 181.

On February 10, 2022, Mr. Detling was sentenced to a custodial term of seventy (70) months to be followed by a three (3) year term of supervised release along with financial penalties including $900 in special assessment fees and $254,837.89 in restitution. Doc. 183. The Court granted voluntary surrender to Mr. Detling based on its finding by clear and convincing evidence that he was not a risk of flight or a danger to the community. Doc. 182.

## **Argument and Citation of Authority**

The determination of whether a defendant should be granted an appeal bond is governed by 18 U.S.C. §3143(b).  An individual who has been found guilty of an offense, sentenced to a period of confinement, and has filed an appeal may be granted an appeal bond upon a finding:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
(i) reversal,
(ii) an order for a new trial

If the Court finds favorably for the defendant on these factors, the Court "shall order the release of the person in accordance with section 3142(b) or (c) of this title".[1]

The Eleventh Circuit has employed this same standard when it considers motions for an appeal bond after the motion has been denied by the district court. *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985). The *Giancola* Court examined the changes in the 1984 Bail Reform Act from the 1966 Bail Reform Act.  The Court specifically noted that the presumption formerly aided the defendant as the government had the burden to show that a defendant should be

---

[1] Mr. Detling was not charged with any of the offenses described in 18 U.S.C. § 3143(b)(2).

detained.  *Id.* at 901.  However, under the new Act, the conviction is presumed to be correct and now, the burden falls on the defendant to overcome this presumption. *Id.*  The Court also addressed the question of what issues constitute "substantial questions of law." A "substantial question" is,

> One of more substance than would be necessary to a finding that it was not frivolous. It is a "close" question or one that very well could be decided the other way. Further, there are no blanket categories for what questions do or do not constitute substantial ones.

*Id.* at 901.  To apply this standard, each request for an appeal bond must be evaluated on a case by case basis. *Id.* The *Giancola* Court also determined that a "substantial question of law" is raised when an issue "has not been decided by controlling precedent". *Id*. at 901. The Court rejected the notion that the district court must find that the error cited by the defendant would in fact result in reversible error. *Id.* at 900.

Furthermore, while the word "substantial" defines the level of merit required in the question raised on appeal, the phrase "likely to result in reversal" merely defines the type of question that must be presented. *See id.* Mr. Detling need not show in this motion the particular probability of reversal but merely that the issue raised is "substantial" and is of the type that would lead to reversal if the appeal was successful.

The legal issues Mr. Detling intends to raise on appeal are both substantial and if decided in his favor, likely to result in reversal.  In his motion for a new trial,

Mr. Detling challenged the Court's instructions to the jury on (1) deliberate ignorance and (2) aiding and abetting. Doc. 170.  He intends to raise these issues on appeal as well.[2] Because he is challenging whether these jury charges were supported by the evidence and whether they were legally correct, the Eleventh Circuit will review these alleged errors in the jury charge *de novo*. *United States v. Mayweather*, 991 F.3d 1163 (11th Cir. 2021)(applying *de novo* standard of review and reversing convictions related to the trial court's errors in its charge to the jury, both on the question of whether the evidence supported a charge and whether a given charge was legally erroneous).  The issues raised by Mr. Detling "could very well be decided the other way" and therefore meet the *Giancola* standard for a substantial issue.

As Mr. Detling has consistently contested these issues, it is clear that he is not bringing this motion for purposes of delay but rather to gain a new trial and ultimately a verdict of acquittal from a jury.

"While it is clear that [the district court] must look into the nature of the appeal to make a determination that there is a 'substantial question,' it is also clear that it is not the role of [the district court] to substitute itself for the appellate court

---

[2] These are not the only issues Mr. Detling intends to raise on appeal.  However, this motion will specifically focus on the issues previously argued in the motion for new trial as they involve "substantial issues of law" and would result in a new trial on all counts.  Mr. Detling incorporates by reference each of the arguments outlined in his prior motion for new trial and reply. Doc. 170, 178.

in deciding the ultimate merits of the appeal." *United States v. Hicks*, 611 F. Supp. 497, 499 (S.D. Fla. 1985). In order to obtain bond, a defendant is not required to convince a trial court that it committed reversible error. *Id.* In fact, the question may be "substantial" even though the judge hearing the application for bail would affirm on the merits of the appeal. *Id*. at 499-501.

**I.     Mr. Detling raises a "substantial question" because the erroneous deliberate ignorance instruction given by the Court misstated the law as to the essential element of knowledge.**

The Court erred when it instructed the jury that "knowledge" could be found if the defendant was "aware of a high probability that the fact existed without also instructing that they must first find that he "took deliberate steps to avoid knowledge." This contention is based on Supreme Court precedent and similar cases from other Circuits.

Mr. Detling primarily relies on the Supreme Court's decision in *Global-Tech Appliances, Inc. v. Seb S. A.*, 563 U.S. 754 (2011). In that case, the Supreme Court clearly rejected a willful blindness instruction that did not include the requirement that a defendant act deliberately to avoid knowledge.

> While the Courts of Appeals articulate the doctrine of willful blindness in slightly different ways, all appear to agree on two basic requirements: (1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.

*Global-Tech Appliances, Inc. v. Seb S. A.*, 563 U.S. 754, 769 (2011)

The Supreme Court was clear that it was the requirement that a Defendant "take deliberate action" to avoid knowledge which gave the instruction an "appropriately limited scope that surpasses recklessness and negligence" *Id.* The Supreme Court noted that this finding was consistent with controlling precedent in nearly every circuit including the Eleventh Circuit. *Id.; See also U.S. v. Perez-Tosta*, 36 F.3d 1552 (11th Cir. 1994). In *Perez-Tosta*, the Eleventh Circuit stated that a party is willfully blind only when it "was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *Id* at 1564 (quoting *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991) (quoting *United States v. Alvarado*, 838 F.2d 311, 314 (9th Cir. 1987)).

On numerous occasions the Eleventh Circuit has upheld the pattern deliberate ignorance instruction and found that it was harmless error even when the instruction was given without sufficient proof in the record. *See United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993). (upholding deliberate ignorance instruction where the jury was clearly instructed that a precondition to its application of the deliberate ignorance instruction was proof beyond a reasonable doubt that Stone deliberately kept himself ignorant.); *United States v. Rivera*, 944 F.2d 1563, 1571 (11th Cir. 1991) (recognizing that the giving of a deliberate ignorance instruction is subject to harmless error analysis if the error alleged is

insufficient evidence to support the charge). But, in these cases, the jury was instructed on both elements of the charge.  Mr. Detling is not aware of any reported Eleventh Circuit cases where a jury was instructed that "knowledge" could be found if the defendant was "aware of a high probability that the fact existed" without also being told that the Defendant must take deliberate steps to avoid knowing the fact. That is, when only the first step of the factual analysis is provided while the second step is omitted entirely. If such a case existed, then the Government would have surely pointed it out. However, even before the Supreme Court's *Global-Tech decision,* other Circuits have clearly rejected instructions similar to the one in this case.

In *United States v. Aguilar*, the Defendant was charged with a federal wiretapping violation that required knowledge as an essential element of the offense. 80 F.3d 329 (9th Cir.1996).  The jury was instructed that the knowledge element was satisfied if, "[The] defendant was aware, actually knew, or was aware of a high probability that [the wiretap application] existed." *Id* at 331.  The Ninth Circuit rejected that jury instruction stating that:

> The serious defect in the instruction given by the district court in this case is that "high probability of the awareness of the circumstance" was given as an alternative to actual knowledge without the requirement that there be evidence of willful blindness.

*Id* at 332.  Here, the Court gave a substantively identical charge to the one that was rejected in Aguilar.

8

Mr. Detling asserts that clear and controlling precedent supports his argument regarding the deliberate ignorance jury instruction. However, at a minimum, the Court's holding in *Global-Tech* and the other cases cited by the Defense show that the issue is substantial. The jury in this case was told to "follow all of my instructions as a whole" and to "not single out or disregard any of the Court's instructions on the law." Doc. 153-1. We presume, of course, that the jury followed its instructions. If the two instructions pertaining to knowledge are read together then the instruction on knowledge would read like this:

> The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident. If a Defendant's knowledge of a fact is an essential part of the crime, it's enough that the Defendant was aware of a high probability that the fact existed-unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Read together, the instructions on knowledge are a misstatement of the law. The result is that the jury could have found Mr. Detling possessed the requisite knowledge by simply being "aware of a high probably that the fact existed."

Even if the Court presumes that the jurors read and understood each instruction separately, the deliberate ignorance instruction that was given still constitutes reversible error. "[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on

the insufficient ground." *United States v. Adkinson*, 135 F.3d 1363, 1375 (11th Cir. 1998) (quoting *United States v. Elkins*, 885 F.2d 775, 782 (11th Cir.1989). Furthermore, even in the absence of a proper objection, this issue would be considered by the appellate court under a plain error analysis. "An error is plain when it is "contrary to…on-point precedent in this Court or the Supreme Court." United States v. Hoffman, 710 F.3d 1228, 1232 (11th Cir. 2013))

Additionally, the flawed deliberate ignorance instruction given by the Court resulted in a constructive amendment of the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two.  This is contrary to the allegation in the indictment that Mr. Detling had actual knowledge.  A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. *United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013). A constructive amendment requires per se reversal when the issue is properly preserved for appeal. *United States v. Behety*, 32 F.3d 503, 508 (11th Cir. 1994).  However, even when the issue was not objected to at trial, the Eleventh Circuit has found that a constructive amendment can require reversal even under the plain error standard. *Madden* 733 F.3d at 1322.

This Court previously found that Mr. Detling failed to properly preserve this issue and specifically observed that the defense "did not object to the modification [of the Court's deliberate ignorance charge]." Doc. 181-9 n.4.  In fact, Mr. Detling, when asked if he agreed to the modification, advised that he objected to the entire charge and further stated that giving just a portion of the charge was not appropriate.[3]

Rule 30(d) of the Federal Rules of Criminal Procedure reads in pertinent part: "[a] party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."  The purpose of Rule 30 is to "provide the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations." *U.S. v. Edwards*, 968 F.2d

---

[3] The defense objection:

Ms. Wade: As to the portion that the court had indicated that they were considering entering before–or, sorry– after the good faith charge, it's essentially a portion of the pattern deliberate ignorance charge. However–

The Court: yes, it's the language, but without the example.

Ms. Wade: Yes, Judge. I don't think that that is appropriate here because a deliberate ignorance instruction even in part would only be appropriate if there was actual evidence that Mr. Detling had in some way attempted not to know information in the case.

Doc. 167-10-11.

1148, 1152 (11th Cir. 1992) (quoting *United States v. Arteaga-Limones*, 529 F.2d 1183, 1192 (5th Cir.), *cert. denied*, 429 U.S. 920 (1976)).  However, *Edwards* discouraged an overly technical application of Rule 30. *Id.* at 1152-1153.

Furthermore, once a defendant has sufficiently raised an issue for the district court's consideration, he has preserved the issue for appeal. The 11th Circuit does not require a defendant raising an issue in the district court to cite every decision that could support their position on that issue if it arises on appeal. *United States v. Davis,* 875 F.3d 592, 602 n.2 (11th Cir. 2017).

Ms. Wade's statement that giving "essentially a portion of the pattern deliberate ignorance instruction" was inappropriate clearly meets the standard of Rule 30.  It was made before the jury deliberated and gave the Court the opportunity to remedy the issue.  Therefore, the issue has been properly preserved for appeal.

However, if the Court of Appeals disagrees, the *Madden* case gives a good indication of the analysis of a constructive amendment under a plain error standard. *Madden,* 733 F.3d 1314.   In that case, like this one, the issue involved a jury instruction that broadened the possible bases for conviction beyond what is contained in the indictment.  The Court found error under the plain error standard because Eleventh Circuit precedent makes clear that a defendant can only be convicted for a crime charged in the indictment.  *Id.* at 1318, 1323. It further

explained that the error was plain because a court errs when it allows for an alternative method of conviction that is not included in the indictment. *Id.* It found that the error affected the Defendant's substantial rights because it could not say "with certainty" that the Defendant was convicted solely on the charge made in the indictment. *Id.* And finally the Court ordered a reversal because it was "self evident" that "convicting a defendant of an unindicted crime affects the fairness, integrity, and public reputation of judicial proceedings in a manner most serious." *Id.*   It is likely that a similar analysis would lead to a reversal in this case.[4]

## II. The Court's instruction to the jury on aiding and abetting without sufficient notice to the defense and when the government never argued such a theory presents a novel question of law in this circuit and is therefore a "substantial question."

No case in the Eleventh Circuit (or Supreme Court) has approved the use of an aiding and abetting jury charge in a case with the unique facts presented in the instant case.[5]  However, the Ninth Circuit has addressed a strikingly similar set of

---

[4] While the Court elected to dismiss some of Mr. Detling's arguments that it regarded as being raised for the first time in his reply brief, these issues can be presented to the Eleventh Circuit on appeal and would not be deemed to have been waived.  Doc. 181-3 n.3.

[5] Mr. Detling acknowledges the government can generally pursue a theory of the prosecution based on aiding and abetting without expressly charging §2 in the indictment. Doc. 170-14. The question posed here is whether the government can seek to have a jury instructed on aiding and abetting where the indictment provides no notice that it alleges Mr. Detling aided or abetted anyone, i.e. Cole or Ingram, after the evidence has closed and hours before closing arguments.

circumstances in *Smith v. Lopez* 731 F.3d 859 (9th Cir. 2013)[6]. There, the court found that a last minute jury instruction on aiding and abetting infringed on the defendant's fundamental right to notice of the nature of the charges against him. Id. at 871.9

> In sum, the prosecution tried its case on one theory—that Smith directly perpetrated his wife's murder. The prosecution presented no evidence in support of aiding-and-abetting liability, and its opening statements and case-in-chief seemed to firmly preclude the possibility that an unidentified person killed [the victim].

*Id.* The fact that the defense pointed to an alternate suspect did not necessarily invoke the question of aiding and abetting. *Id.* at 870.  More importantly, the prosecution "presented no evidence in support of aiding-and-abetting liability, and its opening statements and case-in-chief seemed to firmly preclude the possibility that [someone else committed the crime]" *Id.* at 871. According to the Ninth Circuit, the trial court's jury instruction on aiding and abetting amounted to an "ambush" that deprived him of his fundamental right to be advised of the charges against him and to prepare defense.

   If, as in *Smith*, the Court of Appeals finds that adding a last minute aiding and abetting instruction denied Mr. Detling of "his fundamental right to be advised of the charges against him" then it will have to find a constructive amendment of

---

[6] Reversed on the basis that there was no clearly established Supreme Court precedent to support habeas relief.  However, *Smith v. Lopez* still accurately examines relevant Ninth Circuit precedent.

the indictment which requires a *per se* reversal. *U.S. v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990).

In denying Mr. Detling's motion for new trial, the court undertook a plain error analysis as to this issue based on a finding that Mr. Detling failed to properly object to the instruction.   Mr. Detling disagrees and argues that he did properly object to the jury charge on aiding and abetting.  Specifically, Mr. Detling objected to this charge both before and after it was. Doc. 158; 166-4-5, 9-10, 10-11, 12; 191-4-10. As argued above, Rule 30 does not require that a defendant include a citation to each and every case supporting an objection.  As such Mr. Detling did properly preserve the issue and asserts that the court of appeals will employ a de novo review of this legal question.  However, even if the question is subject to a more stringent standard of review, the issue still raises a "substantial question."

### III.   This Court has found on several occasions that Mr. Detling is not a flight risk nor a danger to the community.

Mr. Detling submits that he is eligible for release on bond pending resolution of his appeal. He is not a flight risk. He has appeared as directed for several years without being cited for a single violation of the conditions of his release. There is no evidence that he poses a threat to the safety of the community or another person.  This court has previously found by clear and convincing evidence that Mr. Detling was neither a flight risk nor a danger to community.  His appeal is not taken for the purpose of delay and he has raised issues regarding the jury

15

instructions which pose substantial questions of law which are likely to result in reversal of his conviction. Despite the Court's denial of his motion for new trial, his briefs in support of the motion for new trial support a finding that he has raised substantial questions of law. *See United States v. Price*, 611 F. Supp. 502 (S.D. Fla. 1985) and 773 F.2d 1526, 1527 (11th Cir. 1985)(affirming the district court's decision to grant bond pending appeal because the defendant was released pre-trial, complied with all of the conditions of his release, and was present at all court hearings).

Undersigned counsel has conferred with AUSA Alex Sistla who has indicated that the government objects to Mr. Detling being granted an appeal bond.

## <u>Conclusion</u>

For the foregoing reasons, Mr. Detling respectfully requests that the Court grant his motion for an appeal bond.

Dated: This 18th day of March, 2022.

Respectfully Submitted,

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114

*s/ Suzanne Hashimi*
Suzanne Hashimi
State Bar No. 335616

Attorneys for Mr. Detling

16

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. |
| *v.* | 1:18-cr-00309-LMM-LTW |
| CHALMER DETLING, II | |
| A/K/A CHUCK DETLING | |

### Government's Response in Opposition to
### Motion for Appeal Bond

The United States of America, by Kurt R. Erskine, Acting United States Attorney, and Alex Sistla, Assistant United States Attorney for the Northern District of Georgia, files this response in opposition to Defendant Chalmer Detling, II's Motion for Appeal Bond (R. 194). For the reasons below, the Could should deny Detling's motion.

### Background

On November 1, 2021, a jury convicted Detling of four counts of wire fraud, in violation of 18 U.S.C. § 1343, and four counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A. (R. 154, Jury Verdict.) Following the jury's verdicts, the government requested that the Court remand him into custody concerned that he posed flight risk given he faced a lengthy custodial sentence. *See* 18 U.S.C. § 3143(a)(1). The Court denied the government's request, but imposed more stringent bond conditions pending sentencing, including that Detling "shall be restricted to his residence as directed by the pretrial services office or

supervising officer." (R. 155, Order.) The Court also required that Detling be placed on location monitoring. (*Id.*)

Detling subsequently moved for a new trial under Federal Rule of Criminal Procedure 33. (R. 170, Detling Mot. for New Trial.) He claimed the Court erred by instructing the jury on deliberate ignorance and aiding and abetting. (*Id.* at 7–16.) On January 4, 2022, the government filed its opposition. (R. 177, Govt. Opp. to Mot. for New Trial.) The government's opposition explained that the Court did not err by giving either instruction, but "even if one or both instructions were erroneous, any such errors were harmless, and Detling cannot demonstrate that it is in the 'interest of justice' to grant a new trial given the overwhelming evidence that supported the jury's verdicts." (*Id.* at 14.) On February 4, 2022, in a detailed written order, the Court denied Detling's motion. (R. 181, Order Denying Mot. for New Trial.) The Court explained that the trial evidence supported both the deliberate ignorance or aiding and abetting instructions (*id.* at 3-5), but even if one or both instructions were improper it was harmless error. (*Id.* at 8-18.) The Court also observed that with respect to the precise wording of the deliberate ignorance instruction Detling never objected (*id.*at 9) and thus any claimed error would be subject to plain error review. (*Id.* at 9-10.)

On February 10, 2022, the Court sentenced Detling to 70 months' imprisonment. (R. 183, Judgment and Conviction.) The Court also

ordered Detling to pay \$254,837.39 in restitution, to be paid in full immediately. (*Id.*)[1] Following sentencing, the government renewed its request to have Detling remanded into custody,[2] but it was again denied by the Court—mainly based on representations from his wife regarding the assistance he provided with childcare, in particular with a then-upcoming medical appointment for one of his children.

On February 25, 2022, Detling filed a timely notice of appeal. (R. 186.) The United States Marshals Service has yet to provide a report date for Detling, but he has now filed a motion for an appeal bond. Detling argues that an appeal bond is appropriate because the Court's alleged errors in instructing the jury on deliberate ignorance and aiding and abetting raise "substantial questions of law" that are "likely to result in reversal." (R. 194, Mot. for Appeal Bond at 4-5.) The government now files its response in opposition.

## Argument

Under the Bail Reform Act of 1984, a convicted defendant shall be detained while his appeal is pending unless a court finds:

(A)  by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the

---

[1] Restitution was payable as follows: \$185,837.89 to the Mighty Group, Inc and \$69,000.00 to Capital Financing.

[2] The government's request was based on its continued concern that Detling posed a flight risk, especially now that he faced a 70-month sentence. Moreover, Detling—while having no obligation to do so—elected to make a statement at sentencing during which he failed to accept any responsibility for his actions, let alone show even a modicum of contrition.

community if released under section 3142(b) or (c) of this title; and

(B)   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal

18 U.S.C. § 3143(b)(1). The Eleventh Circuit has explained that the Congress "did not intend for the 1984 Bail Reform Act to eliminate bail pending appeal, [but] it did intend to limit its availability." *United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985). In particular, "Congress intended to reverse the presumption in favor of bail that existed under the prior statute, the Bail Reform Act of 1966." *Id*. Under the 1966 Act, a defendant was entitled to bail even after conviction unless "the court or judge has reason to believe that no one or more conditions of relief will reasonably assure that the person will not flee or pose a danger to any other person or any other community" or "it appears that an appeal is frivolous or taken for delay." *Id*. Importantly, the 1984 Act changed the presumption so that "the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption." *Id*. at 901 (citing legislative history).

4

Under *Giancola*, "a 'substantial question' is one of more substance
than would be necessary to a finding that it was not frivolous. It is a
'close' question or one that very well could be decided the other way."
754 F.2d at 901; *see also, e.g.*, *United States v. Fernandez*, 905 F.2d 350,
354 (11th Cir. 1990). The "likely to result in reversal" language in
§ 3143 must be read as going to the significance of the substantial issue
to the ultimate disposition of the appeal. *Id*. at 900 (citation omitted).
"A question of law or fact may be substantial but may, nonetheless, in
the circumstances of a particular case, be considered harmless, to have
no prejudicial effect, or to have been insufficiently preserved." *Id*. A
court may find that reversal or a new trial is "likely" only if it concludes
that the question is "so integral to the merits of the conviction on which
defendant is to be imprisoned that a contrary appellate holding is likely
to require reversal of the conviction or a new trial." *Id*.

The burden is thus on Detling to show: (i) by clear and convincing
evidence that he is not likely to flee or pose danger to the safety of the
community; (ii) that his appeal is not for purpose of delay; and (iii) the
appeal raises a substantial question of law or fact that is likely to result
in reversal or an order for a new trial. Although the government agrees
that Detling is not appealing to delay his report date, the Court should
deny his motion because Detling continues to pose a risk of flight given
his substantial sentence and restitution obligations, but regardless he
cannot demonstrate that any of the issues raised in his motion raise a

substantial issue of law likely to result in his convictions being vacated or a new trial. Indeed, Detling's motion is mainly a retread of his motion for a new trial, in which he continues to ignore relevant Eleventh Circuit precedent with respect to purportedly erroneous jury instructions.

### A. There is no substantial question that the Court did not err by instructing the jury on deliberate ignorance and doing so did not constructively amend the indictment.

Although not entirely clear, Detling does not appear to raise as a ground for his release the Court's decision to give the deliberate ignorance instruction. This is with good reason. As the Court concluded in denying his motion for a new trial, "[t]he argument that the deliberate-ignorance instruction was unsupported by the evidence is without merit [and Detling] himself argued during the charge conference that the evidence was sufficient to enable the jury to conclude that he applied for the litigation advances because his colleagues . . . had indicated to him that the clients had authorized him to do so . . . ." (R. 181, Order Denying Mot. for New Trial at 4 (transcript citations omitted).); *see also United States v. Rivera*, 944 F.2d 1563, 1572 n.39 (11th Cir. 1991) (noting that the district court's decision to instruct (albeit improperly) on deliberate ignorance may have been influenced by the defendants' arguments and may be proper if a defendant establishes such facts underlying the instruction).

6

Rather, Detling's arguments seem to focus on the precise wording of the instruction and whether how it was worded resulted in a constructive amendment of the indictment. (R. 194, Mot. for Appeal Bond at 6-13.)

Instructing the jury on deliberate ignorance did not "constructively amend" the indictment.[3] As the government previously explained:

> Instructing a jury how the government may prove that a defendant had the requisite knowledge does not broaden the possible bases of conviction. As shown in the jury instructions, the jury was still required to find each element of wire fraud and aggravated identity theft beyond a reasonable doubt, including that Detling acted knowingly. (R. 153, Detling Final Jury Instructions at 8–9 (wire fraud); 11 (aggravated identity theft)). *Compare United States v. Edwards*, 526 F.3d 747, 761 (11th Cir. 2008) ("As the jury instructions did not alter the *mens rea* element of the wire fraud offense, a constructive amendment did not occur.") *with United States v. Madden*, 733 F.3d 1314, 1317–18 (11th Cir. 2013) (indictment was constructively amended when jury instructed that it could convict a defendant if it found he carried a firearm "during and in relation to a drug trafficking offense," when the indictment charged the defendant only with possessing a firearm "*in furtherance of* . . . a drug trafficking crime" and using and carrying a firearm "during and in relation to a crime of violence") (emphasis added).[4]

---

[3] "A constructive 'amendment occurs when the essential elements of the offense are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Edwards*, 526 F.3d 747, 760 (11th Cir. 2008) (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)) (alterations omitted).

[4] *See also, e.g., United States v. Vasquez*, 677 F.3d 685, 696 (5th Cir. 2012) ("The deliberate ignorance instruction does not lessen the government's

(R. 177, **Govt. Opp. to Mot. for New Trial** at 21.)

Detling has cited no authority that the instruction here
constructively amended the indictment in an impermissible manner.
This is not surprising because the Eleventh Circuit has routinely
affirmed convictions where there was only evidence of actual knowledge
and no deliberate ignorance instruction should've been given. *See, e.g.*,
*United States v. Fernandez*, 553 F. App'x 927, 937 (11th Cir. 2014)
("But the absence or presence of evidence of deliberate ignorance 'does
not matter' when 'the jury could have convicted on an alternative,
sufficiently supported theory of actual knowledge.") (quoting *United
States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006)); *Rivera*, 944 F.2d
at 1572 ("Although the district court erred in giving a deliberate
ignorance instruction, we conclude that the error was harmless beyond
a reasonable doubt. Under the facts of this case, the jury could only find
either that the defendants had actual or no knowledge of the cocaine in
their suitcases; there is no evidence suggesting a middle ground of
conscious avoidance."). Nor has Detling identified any cases where even
an improperly worded (assuming it was) deliberate ignorance
instruction results in a constructive amendment such that the jury
could have convicted Detling because he acted recklessly or negligently
(or with some lesser *mens rea*). *Cf. Rivera*, 944 F.2d at 1570 ("To act

---

burden to show, beyond a reasonable doubt, that the knowledge elements of
the crimes have been satisfied.") (quotation marks omitted).

'knowingly,' therefore, is not necessarily to act only with positive knowledge, but also to act with an awareness of the high probability of the existence of the fact in question.") (quoting *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (*en banc*)). Indeed, the jury instructions here emphasized that the government could not satisfy its burden by showing Detling acted negligently or carelessly. (R. 153, Jury Instructions at 11 ("But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that [Detling] knew the fact.")).

## B. Even if the Court's deliberate instruction was erroneously worded, there is no substantial question that it does not amount to plain error.

Detling contends that a "substantial question" exists because the deliberate ignorance instruction did not fully track the pattern instruction. Specifically, the Court's instruction omitted the following from its instruction:

> "Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.
>
> So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed [his] [her] eyes.

9

11th Cir. Pattern Jury Instrs. (Crim. Cases) (2021), Special Instr. No. S8; *see also* R. 181, **Order Denying Mot. for New Trial at 10**. As a result of omitting the reference to "deliberate avoidance of positive knowledge," Detling contends that the Court improperly instructed the jury on deliberate ignorance. (R. 194, Mot. for Appeal Bond at 6-7.) This omission he claims raises a "substantial question" because the jury may have been improperly instructed on knowledge and thus wrongly convicted him for "simply being 'aware of a high [probability] that the fact existed." (*Id.* at 8-9.) Detling's argument is meritless.

Detling—contrary to his assertion in the present motion—never objected to the wording of the deliberate ignorance instruction. (*Id.* at 11-12.) As detailed in the government's opposition to his motion for new trial, Detling *only* objected to the Court's decision to give the deliberate ignorance instruction. ((R. 177, Govt. Opp. to Mot. for New Trial at 11-13; 24). And the Court agreed. (R. 181, Order Denying Mot. for New Trial at 8-9.) In fact, Detling was given several opportunities to object to wording of the Court's instruction but failed to do so. (*Id.* at n.4 ("[A]t trial, the Court specifically asked the parties whether they opposed the modification; the Government explained that it agreed, and Defendant did not object to the modification.").)

Detling disingenuously argues that counsel's statement: "It's essentially a portion of the pattern deliberate ignorance charge" placed the Court on notice that he objected to the *actual language* of the

instruction. (R. 194, Mot. for Appeal Bond at 11-12 & n.3 (citing R. 167, Tr. at 10-11).) He conveniently ignores that his counsel's objection was whether the Court should provide the deliberate ignorance instruction at all.[5] Indeed, after the quoted line above, the Court and Detling's counsel continued to have a dialogue as to whether the deliberate ignorance instruction was even appropriate. (R. 167, Tr. at 11:11-12:16.)

The Eleventh Circuit could not be clearer on this point. Federal Rule of Criminal Procedure 30(d) requires a party to "inform the court of the specific objection and ground for objection before the jury retires to deliberate." *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (noting that plain error applies to any unpreserved objections to jury instructions). It is not enough that a defendant generally objects to a particular instruction. *See United States v. Schlei*, 122 F.3d 944, 974 (11th Cir. 1997) ("Although Schlei objected to the deliberate ignorance instruction at trial, he did not raise this specific contention before the district court. 'In order to preserve an objection to jury instructions for

---

[5] *See* R. 167, Tr. 10:22-11:5 (Counsel: Yes, Judge. I don't think that that is appropriate here because a deliberate ignorance instruction *even in part* would only be appropriate if there was actual evidence that Mr. Detling had in some way attempted not to know information in this case. And I don't think there's been any sort of evidence that the government's presented or that we've argued that he was trying to, you know, willfully try not to find out information that would have been important in the case.") (emphasis added). No fair reading of this statement could be understood that Detling was objecting to the language the Court *was actually proposing*.

appellate review, a party must object before the jury retires, stating distinctly the specific grounds for the objection.'") (quoting *United States v. Starke*, 62 F.3d 1374, 1380-81 (11th Cir.1995)); *see also United States v. Puche*, 350 F.3d 1137, 1148 n. 5 (11th Cir. 2003) (noting that because defendants objected to the deliberate-ignorance instruction on different grounds on appeal, the plain-error standard of review applied); *United States v. Sirang*, 70 F.3d 588, 594 (11th Cir. 1994) (holding the objection must be specific enough to give a court an opportunity to correct errors before the case goes to the jury).[6]

Because Detling failed to specifically object to the phrasing of the Court's deliberate ignorance instruction, his claim would be reviewed for plain error on appeal. *See, e.g., Iriele*, 977 F.3d at 1177. There is no substantial question that Detling would not prevail on plain error review.

---

[6] Citing *United States v. Davis*, 875 F.3d 592 (11th Cir. 2017), Detling argues that the Eleventh Circuit "does not require a defendant raising an issue in the district court to cite every decision that could support their position on that appeal if it arises on appeal." (R. 194, Mot. for Appeal Bond at 12.) *Davis* is of no help to Detling. First, it is not a Rule 30 case. Second, the issue in *Davis* was whether the defendant forfeited an issue by not specifically citing a relevant case in challenging whether one of his convictions qualified as a predicate offense under the Armed Career Criminal Act. The Eleventh Circuit noted that it has never required litigants to cite particular cases to preserve an issue for appeal so long as they have "sufficiently raised an issue for the district court's consideration." *Davis*, 875 F.3d at 601 & n. 2 (citations omitted).

To satisfy plain error,[7] Detling must show "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Xavier*, 735 F. App'x 656, 659 (11th Cir. 2018) (citing *United States v. Madden*, 733 F.3d 1314, 1322 (11th Cir. 2013)).[8] Although the Court modified the pattern instruction by not providing the jury an example of deliberate ignorance, the instruction, when coupled with the remaining jury instructions, properly instructed the jury as to the elements it had to find with respect to wire fraud and aggravated identity theft. Importantly, the jury was instructed that the government must prove every fact beyond a reasonable doubt, and they could not find Detling guilty merely because of "negligence, carelessness, or foolishness." (R. 153, Jury Instructions at 8, 11); *see, e.g., United States v. Jefferies*, 378 F. App'x 961, 963 (11th Cir. 2010) ("We examine jury instructions to determine if, taken as a whole, the jury was sufficiently instructed to understand the issues and was not misled.") (citing *United States v. Fulford*, 267

---

[7] The plain error discussion is taken in substantial part from the government's response in opposition to Detling's motion for a new trial. (R. 177 at 25-28.)

[8] As a formal matter, a party must establish the first three elements of plain error, before a court "may . . . exercise its discretion to notice a forfeited error, but only if [ ] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Turner*, 474 F.3d 1265, 1276 (11th Cir. 2007).

F.3d 1241, 1245 (11th Cir. 2001)).[9] And it is well-settled that the jury is presumed to follow the instructions. United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005) (citation omitted). But even if there was error here, it was not plain. Detling has identified no authority that the modified instruction—either taken alone or read as part of the jury instructions as a whole—would be obvious error.[10]

_____

[9] Indeed, there could be little doubt that the government's burden was proof beyond a reasonable doubt. Detling stressed that point in his closing argument, mentioning the government's burden or "reasonable doubt" at least a dozen times in his closing argument. (R. 165, Closing Arg. Tr. at 27, 28, 29, 30, 36, 54, 55.) For its part, the government noted its burden prove Detling's guilt beyond a reasonable doubt at least four times. (*Id.* at 2, 3, 27, 56.)

[10] Detling argues that "[e]ven if the . . . jurors read and understood each instruction separately, the deliberate ignorance instruction that was given still constitutes reversible error." (R. 194, Def. Mot. for Appeal Bond at 9.) He claims this is because "'a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those is insufficient, because the verdict may have rested exclusively on the insufficient ground." (*Id.* at 9-10 (citing *United States v. Adkinson*, 135 F.3d 1363, 1375 (11th Cir. 1998) (quoting *United States v. Elkins*, 885 F.2d 775, 782 (11th Cir. 1989)).) Detling never explains which independent grounds he has in mind. Nor does he mention that neither *Adkinson* nor *Elkins* have anything to do with deliberate ignorance. But regardless his reliance on these cases is misplaced. The "general verdict" language quoted above originates from the Supreme Court's decision in *Stromberg v. California*, 283 U.S. 359 (1931). *See, e.g.*, *Martin v. United States*, 852 F. App'x 485, 489 (11th Cir. 2021). In *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), the Eleventh Circuit held that any so-called *Stromberg* error is subject to harmless error review. *Id.* at 1294 (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 58, 62 (2008)); *see also Marin*, 852 F. App'x at 489. Accordingly, even if Detling was correct that an erroneous deliberate ignorance instruction constitutes "an insufficient ground" on which the jury could have based its verdict, that—standing alone—doesn't constitute reversible error.

14

Nor can Detling demonstrate that any error with the instruction—assuming there was some error—affected his substantial rights or seriously affected the fairness or integrity of his trial. For example, in *United States v. Watson*, 611 F. App'x 647 (11th Cir. 2015), the court of appeals held that even if the district court plainly erred in providing a deliberate ignorance instruction, the defendant could not "demonstrate that the error affected his 'substantial rights' [because] [i]n the 'ordinary case,' an error impacts a defendant's substantial rights when that error "affected the outcome of the district court proceedings." *Id.* at 662-663 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). In *Watson*, [a]ny error from the [deliberate ignorance] instruction had no effect on the proceedings because the evidence at trial supported a finding that [the defendant] actually knew that his passengers could not legally enter the United States." 611 F. App'x at 663; *see also Starke*, 62 F.3d at 1381. Likewise, here, the evidence at trial demonstrated that Detling knew his victim-clients neither applied for nor authorized Detling to obtain litigation advances on their behalf. As such, whether the Court plainly erred by instructing the jury on deliberate ignorance was inconsequential and had no effect on the outcome of Detling's trial.

Detling's motion places a great deal of emphasis on the Supreme Court's decision in *Global-Tech Appliances, Inc. v. SEB S.A.*, 564 U.S. 745 (2011), to support his argument that his complaints about the

Court's deliberate ignorance instruction raises a "substantial question" meriting an appeal bond. (R. 194, Def. Mot. for Appeal Bond at 6-8.) On the contrary, *Global-Tech* undermines his arguments.

In *Global-Tech*, the Court considered whether the Federal Circuit's willful blindness (or deliberate ignorance) instruction was proper. 564 U.S. at 769. The Court held that it was flawed because it "permi[tted] a finding of knowledge when there is merely a 'known risk' that the induced acts are infringing [and] . . . in demanding only 'deliberate indifference' to that risk, the . . . test [did] not require active efforts by [a defendant] to avoid knowing about the infringing nature of the activities." *Id.* In other words, the instructions being reviewed in *Global-Tech* suffered, at least in part, from the same infirmity that Detling alleges was present here—that the jury was not sufficiently instructed that the defendant needed to take "active steps" to avoid learning about a relevant fact. But importantly, the *Global-Tech* court *did not remand for a new trial*, but rather it concluded:

> In spite of these flaws, we believe that the evidence when viewed in the light most favorable to the verdict for SEB is sufficient under the correct standard. The jury could have easily found that before April 1998 [the defendant] willfully blinded itself to the infringing nature of the sales it encouraged Sunbeam to make.

> \*   \*   \*

Taken together, this evidence was more than sufficient for a jury to find that [the defendant] subjectively believed there was a high probability that SEB's fryer was patented, that

> [the defendant] took deliberate steps to avoid knowing that
> fact, and that it therefore willfully blinded itself to the
> infringing nature of Sunbeam's sales.

563 U.S. at 770-71 (footnote omitted).

In other words, despite the erroneous jury instructions, the Supreme Court considered whether the evidence was sufficient to establish willful blindness as a matter of law. Importantly, "the record contained no direct evidence that [the defendant] knew" of the relevant fact. *Id.* at 759. And thus, the plaintiff never argued that the defendant had actual knowledge of the unlawful activity.

If the Supreme Court did not remand *Global-Tech* for a new trial where there was both an incorrect deliberate ignorance instruction and no evidence of actual knowledge, it is difficult to imagine how Detling could show that any error here seriously affected the fairness or integrity of his trial. This is especially so given that the Eleventh Circuit has repeatedly held that even where the deliberate ignorance instruction was improperly given, *i.e.*, where no evidence supports it being given to the jury, such an error is harmless where there is "sufficient evidence to support the actual-knowledge theory" *Ahrens*, 782 F. App'x at 849; Fernandez, 553 F. App'x at 937. Such is the case here, where the government presented overwhelming evidence from which the jury could have concluded that Detling had "actual knowledge" of the fraud scheme.

In short, Detling has not presented a substantial question as to the allegedly erroneous deliberate ignorance instruction because even if

17

there was error, it was not plainly so meriting reversal of his
convictions.

### C. There is no substantial question that the Court did not err by instructing the jury on aiding and abetting.

Detling argues that the Court erred by instructing the jury on aiding
and abetting because he did not have sufficient notice as to that theory
of liability. (R. 194, Def. Mot. for Appeal Bond at 13-15.) As this Court
previously concluded, Detling was not "unfairly surprised" by the
government's request for an aiding and abetting instruction. (R. 181,
Order Denying Mot. for New Trial at 7.) And in his motion, Detling
offers nothing in response to the Court's decision aside from an out-of-
circuit habeas case. (*Id.* at 13-15 (citing *Smith v. Lopez*, 731 F.3d 859
(9th Cir. 2013).) Detling also complains that the Court erred by
reviewing his post-trial objections to the aiding and abetting
instruction for plain error. (*Id.* at 15.) Because it is well-settled that
aiding and abetting is implied in every indictment, and that any error
in giving such an instruction is subject to harmless error review,
Detling has not raised a substantial question regardless of whether he
properly preserved his objections to the instruction.[11]

---

[11] The discussion below borrows substantially from the government's
response in opposition to Detling's motion for a new trial. (R. 177, Govt. Opp.
to Mot. for New Trial at 28-33.)

*First*, aiding and abetting is a theory of criminal liability embedded in every count charged in an indictment and therefore raises no notice or constructive amendment issue. *See, e.g.*, *United States v. Philpot*, 773 F. App'x 583, 590 (11th Cir. 2019) (citations omitted). As such, "18 U.S.C. § 2 is an alternative charge in every count, whether explicit or implicit, and the rule is well-established . . . that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense." *United States v. Walker*, 621 F.2d 163, 166 (5th Cir. 1980) (stating that "18 U.S.C. § 2 does not define a crime[, but] simply makes punishable as a principal one who aids or abets the commission of a substantive crime") (internal quotation marks omitted).[12]

*Second*, the evidence at trial supported inclusion of the instruction. At trial, evidence and testimony was presented that: (i) Aimie Ingram and Mackenzie Cole had access to the SunTrust Bank x0526 account; (ii) this bank account was used as part of the fraud; (iii) Cole had been given the title of "partner" by Detling; (iv) Detling did not personally interact with every victim-client; and (v) Cole and other lawyers at Detling's law firm were involved in representing some of the victim-clients. The evidence and testimony—including emails between Mighty and Detling and testimony from Golden, Caballero, Schwadron, and

---

[12] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions issued prior to October 1, 1981.

Brammer—also showed that Detling was solely responsible for interfacing with the financing companies. Ingram and Cole both testified on direct that they were not involved in the criminal scheme. And on cross-examination, Detling challenged their veracity. (See R. 170, Mot. for New Trial at 11.) The jury was left to evaluate the witnesses' veracity, which Detling attacked voraciously in closing. (E.g., R. 165, Closing Arg. Tr. at 42:7–18, 44:2–3, 45:13–14, 46:9–47:2, 48:13– 49:2.) Indeed, Detling's own defense (as described in his motion for new trial)—"that he relied in good faith upon the managing partner, Mackenzie Cole, and the office manager, Aimie Ingram, . . . regarding the desire of clients to obtain litigation advances" (R. 170, Mot. for New Trial at 11)—essentially conceded evidence of aiding and abetting liability, leaving only intent unproven. As such, there was some evidence and a view of the facts that the jury could reach—largely pushed by the defense—that Detling possibly worked with others to commit the fraud scheme. Although the government did not ultimately opt to do so, it would have been free to argue to the jury in closing (or on rebuttal) that even if Ingram and Cole were involved in the crimes, Detling could still be found guilty as a principal or under an aiding and abetting theory if the evidence supported that conclusion.

*Third*, this case is neither unique nor novel. In *United States v. Thomas*, 631 F. App'x 847 (11th Cir. 2015), the Eleventh Circuit found no issue with an aiding and abetting instruction with a similar defense

20

from the defendant. There, the defendant's main defense was that "his wife committed the[] crimes." *Id*. at 851. That defense "coupled with the evidence presented at trial—that [the wife] worked where he did, that it was possible that she could have logged in remotely if she knew [the defendant's] passwords, that she was a signatory on each of the three bank accounts which received the stolen funds, and that she had a total of $17,000 in checks written out to her personally from these accounts—supported the aiding and abetting instruction." *Id*. The same reasoning applies here as similar arguments were made by Detling to blame Ingram and Cole for the charged crimes.

*Fourth*, Detling's claim of prejudice and surprise is unsupported. To start, there is no doubt that both parties knew long before trial that Cole and Ingram would be key witnesses so there was no surprise in terms of witnesses. Detling has never provided a specific example of prejudice regarding any witnesses. He has at best vaguely claimed that the cross-examinations of Cole and Ingram "would have been quite different" (R. 170, Def. Mot. for New Trial at 13), but he has never provided a single theoretical, practical, or legal reason why his tactics would have changed. And with good reason—his strategy would have been no different; he would have still attacked Cole and Ingram to make it appear as if he was not involved, just as he did during trial. But regardless, Detling had all the notice he required, as the black

letter law makes plain that aiding and abetting liability is implicit in any charged count. *See Walker*, 621 F.2d at 166.

*Smith* does not help Detling's "notice" argument because its reasoning was gutted by the Supreme Court. In *Smith*, the Ninth Circuit granted habeas relief under 28 U.S.C. § 2254 to a convicted state murderer where the prosecutor requested an aiding and abetting "jury instruction just before closing argument and without any prior indication that it was pursuing an aiding-and-abetting theory." 731 F.3d at 868. The court reasoned that "the prosecution ambushed Smith and denied him a meaningful opportunity to prepare his defense" in violation of his constitutional right to notice. *Id.* The Supreme Court reversed. *Lopez v. Smith*, 574 U.S. 1. "Assuming . . . that a defendant is entitled to notice of the possibility of conviction on an aiding-and-abetting theory," the Supreme Court explained that none of its cases clearly established "that a defendant, once adequately apprised of such a possibility, can nevertheless be deprived of adequate notice by a prosecutorial decision to focus on another theory of liability at trial." *Id.* at 5. Detling does not raise a substantial question where his only authority is an overruled Ninth Circuit case—one that has never been followed by the Eleventh Circuit.[13]

---

[13] *Smith* relied on an earlier Ninth Circuit case, *Sheppard v. Rees*, 909 F.2d 1234 (9th Cir. 1989), in support of its holding that a defendant may be deprived of sufficient notice if a prosecutor proceeds on one theory of liability and then "ambushes" a defendant with a new theory of liability a trial without giving a defendant adequate time to respond. The government could

*Fifth*, not only was the aiding and abetting instruction proper under binding Eleventh Circuit law, but it was necessary based on how Detling argued the evidence—insisting, based on his contrived, incorrect understanding of the law—that the government had to exclude Cole, Ingram, and everyone else in the world from being involved in the charged scheme for the jury to convict Detling. Because the jury instructions were read before closing arguments, it was important for the jury to hear the true and correct law to prevent defense counsel from poisoning the jury with their incorrect assertions during closing.[14]

---

not locate any Eleventh Circuit that has ever cited *Sheppard*. Moreover, *Sheppard*'s analysis is inconsistent with Eleventh Circuit's regarding the application of harmless error review to erroneous jury instructions. *See Czech v. Melvin*, No. 14-c-2012, 2017 U.S. Dist. LEXIS 42981, at *13 & n.6 (N.D. Ill. Mar. 24, 2017). Finally, Detling's citation to *United States v. Keller*, 916 F.2d 628 (11th Cir. 1990), is irrelevant. (R. 194, Def. Mot. for Appeal Bond at 14-15.) *Keller* did not address, let alone have anything to do with whether improperly instructing the jury on aiding and abetting amounts to a constructive amendment.

[14] The government's fears regarding Detling's closing were well founded. During closing, the government had to take the unusual step of objecting twice due to the defense mischaracterizing the jury instructions and returning to a topic that was previously ruled off limits. (R. 165, Closing Arg. Tr. at 32:13–36:2 (Court ultimately referring the jury back to the instructions by stating "I just want to make sure that you understand, and I've said this before, but the law you are to apply is the law that's in the jury instructions. So the lawyers are arguing the law, but the law comes from what . . . I have given you as to the instructions."); id. at 44:13–45:3 (Court instructing defense to "move on" because the issue "was the subject of the Court's [prior] ruling on that particular matter").

**D. Even if the Court erred by providing the deliberate ignorance or aiding and abetting instructions, there is no substantial question that it is not likely to result in Detling's convictions being reversed or vacated because any error was harmless.**

Eleventh Circuit case law is replete with examples in which the court of appeals concluded (or assumed) that a jury had been erroneously instructed on deliberate ignorance yet affirmed a defendant's conviction because doing so was "'harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge.'" *United States v. Wentt*, 828 F. App'x 526, 528 (11th Cir. 2020) (quoting *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008)); *see also United States v. Pineda*, 843 F. App'x 174, 181 (11th Cir. 2021) (district court did not err by instructing the jury as to deliberate ignorance even though there was testimony that the defendant acted "with full knowledge of the fraud" and even if the court erred, it was harmless, because "there was sufficient proof that [the defendant] had actual knowledge of the fraud"); *United States v. Fernandez*, 553 F. App'x 927, 937 (11th Cir. 2014) ("But the absence or presence of evidence of deliberate ignorance 'does not matter' when 'the jury could have convicted on an alternative, sufficiently supported theory of actual knowledge.") (quoting *United States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006)).

As the Court observed in its Order denying Detling's motion for new trial, there was "copious of evidence of [Detling's] actual knowledge [to]

support[] the guilty verdict." (R. 181, **Order Denying Mot. for New Trial at 12**; *see also id.* at 11-12 (detailing Detling's actual knowledge of the fraudulent litigation advance scheme); R. 177, **Govt. Opp. to Mot. for New Trial at 2-8, 18-19, 23**.)  Thus, even if this Court improperly instructed the jury on deliberate ignorance, given the overwhelming evidence that Detling actually defrauded the financing companies, there isn't a substantial question of law that is likely to result in a new trial or his convictions being vacated. Detling did not identify any case law to the contrary in his motion for a new trial. And his present motion fails to do so as well.

The Eleventh Circuit has held similarly with respect to the jury being improperly instructed on aiding and abetting. *See United States v. Hornaday*, 392 F.3d 1306, 1316 (11th Cir. 2004) (applying harmless error review when jury is improperly instructed on aiding and abetting theory of liability); *United States v. Grimsley*, 808 F. App'x 865, 870 (11th Cir. 2020) (same). Thus, even if the Court improperly instructed the jury on aiding and abetting it does not raise a substantial question of law that is likely to result in Detling receiving a new trial or having his convictions vacated.

\*   \*   \*   \*   \*

For the foregoing reasons, Detling's motion should be denied.

25

Respectfully submitted,

KURT R. ERSKINE
   *United States Attorney*


/s/ ALEX SISTLA
   *Assistant United States Attorney*
   Georgia Bar No. 845602
   Alex.Sistla@usdoj.gov

**Certificate of Service**

The United States Attorney's Office served this document today by
filing it using the Court's CM/ECF system, which automatically notifies
the parties and counsel of record.

> Caitlyn Wade
>
> Suzanne Hashimi
>
> *Counsel for Chalmer Detling II*

April 4, 2022

> /s/ ALEX SISTLA
> _____
>
> ALEX SISTA
>
> *Assistant United States Attorney*

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:18-cr-00309-LMM-LTW-1 |
| | : | |
| CHALMER DETLING, II, | : | |
| | : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on a Motion for Bond Pending Appeal, Dkt. No. [194], filed by Defendant Chalmer Detling, II. After due consideration, the Court enters the following Order.

### I.   BACKGROUND

Defendant was charged by indictment with four counts of wire fraud under 18 U.S.C. § 1343 and five counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) for conduct associated with the fraudulent procurement of litigation advances.[1] Dkt. No. [35]. A jury returned a verdict of guilty on all counts on November 1, 2021. Dkt. No. [154]. Defendant then filed a Motion for New Trial, Dkt. No. [170], which the Court subsequently denied, Dkt. No. [181].

---

[1] The indictment describes "litigation advances" as modest financing afforded to plaintiffs, mainly those with personal-injury cases, for living and medical expenses while their lawsuits are pending. Dkt. No. [35] at 3.

On February 10, 2022, the Court sentenced Defendant to a 70-month term of imprisonment, to be followed by three years of supervised release, plus a $900 special assessment and restitution in the amount of $254,837.89. Dkt. No. [183]. He is set to voluntarily surrender at noon on May 11, 2022. Dkt. No. [206]. Defendant has filed an appeal, which remains pending. He now moves under 18 U.S.C. § 3143(b) for bond pending the resolution of his appeal. Dkt. No. [194].

## II.   LEGAL STANDARD

Section 3143(b) provides that where a defendant has been found guilty of an offense, sentenced to a period of confinement, and filed an appeal, "the judicial officer shall order" the person detained "unless the judicial officer finds":

**(A)**   by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

**(B)**   that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    **(i)**   reversal,

    **(ii)**   an order for a new trial,

    **(iii)**   a sentence that does not include a term of imprisonment, or

    **(iv)**   a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1)(A)-(B). "[T]he burden of establishing these factors is on the convicted defendant." United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). Thus, Defendant must show (1) by clear and convincing evidence that he is

not likely to flee or pose a danger to the safety of the community; (2) that his appeal is not for the purpose of delay; and (3) that the appeal raises a substantial question of law or fact that is likely to result in reversal, an order for a new trial, or a lesser sentence.

## III.   DISCUSSION

The Government has conceded that Defendant is not appealing to delay his report date. Dkt. No. [204] at 5. Additionally, the Court has already found based on clear and convincing evidence that Defendant is not a flight risk or likely to pose a danger to the community, see Dkt. No. [183] (allowing Defendant to voluntarily surrender), and the Government has supplied no basis for reconsideration of that finding, see generally Dkt. No. [204]. Accordingly, the Court finds the first two factors satisfied and turns to the third factor.

Defendant argues that his appeal includes allegations of error as to the Court's jury charges on deliberate ignorance and aiding and abetting and thus raises substantial questions of law likely to result in reversal or an order for a new trial. Dkt. No. [194] at 3-15. The Court does not find that Defendant has shouldered his burden.

As the Government points out, within the context of a motion for bond pending appeal, "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." United States v. Fernandez, 905 F.2d 350, 354 (11th Cir. 1990) (quoting Giancola, 754 F.2d at 901). The "likely to result

in reversal" language in § 3143 "'must be read as going to the significance of the substantial issue to the ultimate disposition of the appeal.'" <u>Giancola</u>, 754 F.2d at 900 (quotation omitted). "A question of law or fact may be substantial but may, nonetheless, in the circumstances of a particular case, be considered harmless, to have no prejudicial effect, or to have been insufficiently preserved." <u>Id.</u> A court may find that reversal or a new trial is "likely" only if it concludes that the question is "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." <u>Id.</u>

### A.   Deliberate Ignorance

Defendant argues that the Court's wording on the deliberate ignorance charge constitutes a "substantial question" likely to result in reversal or an order for a new trial. Dkt. No. [194] at 6-13. Specifically, Defendant argues that the instruction was erroneous because it did not include the requirement that the defendant act deliberately to avoid knowledge and thus did not appropriately instruct the jury that it was necessary to find a degree of knowledge surpassing recklessness and negligence. Dkt. No. [194] at 6-13.

Using a portion of the pattern jury instruction for deliberate ignorance, the Court stated to the jury,

> If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Dkt. No. [153] at 11. At trial, Defendant objected not to the wording of the deliberate-ignorance charge but rather to the Court's providing any deliberate-ignorance charge to the jury. See Dkt. No. [167] at 10-11.[2] Thus, because the wording of the deliberate-ignorance charge was not objected to at trial, it is reviewed under the plain error standard. See United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013) ("In cases where the defendant fails to object to a constructive amendment, we apply traditional plain-error review."); United States v. Schlei, 122 F.3d 944, 973 (11th Cir. 1997) (finding that although the defendant objected to the deliberate-ignorance instruction at trial, the specific contention on appeal was subject to plain-error review because he had not raised that particular contention before the district court); id. ("In order to preserve an objection to jury instructions for appellate review, a party must object before the jury retires, stating distinctly the specific grounds for the objection." (internal quotation marks omitted)); United States v. Sirang, 70 F.3d 588, 594 (11th Cir. 1995) ("[T]he objection should be sufficient to give the district court the chance to

---

[2]        Defendant recites the defense objection as follows:

Ms. Wade:   As to the portion that the court had indicated that they were considering entering before–or, sorry– after the good faith charge, it's essentially a portion of the pattern deliberate ignorance charge. However–

The Court:   Yes, it's the language, but without the example.

Ms. Wade:   Yes, Judge. I don't think that that is appropriate here because a deliberate ignorance instruction even in part would only be appropriate if there was actual evidence that Mr. Detling had in some way attempted not to know information in the case.

Dkt. No. [194] at 11, n. 3 (quoting Dkt. No. [167] at 10-11).

correct errors before the case goes to the jury."). A conviction may be reversed under plain-error review where (1) there was an error (2) that is plain and (3) has affected the defendant's substantial rights, and the error (4) "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Fleury, 20 F.4th 1353, 1368 (11th Cir. 2021).

There was no plain error in giving this instruction. Jury instructions are reviewed to determine whether, "taken as a whole, the jury was sufficiently instructed to understand the issues and was not misled." United States v. Jeffries, 378 F. App'x 961, 963 (11th Cir. May 11, 2010) (citing United States v. Fulford, 267 F.3d 1241, 1245 (11th Cir. 2001)). Although the Court modified the pattern instruction as stated above, it properly instructed the jury regarding the knowledge standard when it instructed the jury that the government must prove every fact beyond a reasonable doubt; that " 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident"; and "that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew [a] fact." Dkt. No. [153] at 1, 6, 11. Thus, the jury was sufficiently instructed on the concept of deliberate ignorance.

Moreover, it is difficult to see how Defendant could have been prejudiced by the deliberate-ignorance instruction, as the evidence of actual knowledge in this case is overwhelming. The Eleventh Circuit "ha[s] repeatedly held that 'instructing the jury on deliberate ignorance is harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported

theory of actual knowledge.' " <u>United States v. Wentt</u>, 828 F. App'x 526, 528 (11th

Cir. Sept. 17, 2020) (quoting <u>United States v. Steed</u>, 548 F.3d 961, 977 (11th Cir.

2008)); <u>accord</u> <u>United States v. Ahrens</u>, 782 F. App'x 845, 849 (11th Cir. July 26,

2019); <u>United States v. Fernandez</u>, 553 F. App'x 927, 937 (11th Cir. Feb. 3, 2014);

<u>United States v. Rivera</u>, 944 F.2d 1563, 1572 (11th Cir. 1991).

That is the case here. Four witnesses from defrauded companies Capital

Financing and Mighty testified that they dealt exclusively with Defendant on the

fraudulent litigation advances and that they never would have approved them if

they had known the clients had neither authorized the advances nor received the

funds. The witnesses from Capital Financing testified that Defendant picked up

the fraudulently obtained checks and that they dealt with Defendant exclusively

about the status of repayment. The witnesses from Mighty testified that they

spoke with Defendant over the telephone and even met with him in person on a

few occasions. There was also evidence that when Mighty learned of the fraud,

Defendant tried for months to make "payoffs" and ultimately reached an

agreement with Mighty to "release" his former clients from any liability. The

testimony was corroborated by voluminous e-mail correspondence and business

records, including loan agreements signed by Defendant. Twelve victim clients

also testified, including the five whose identities underlie the charges in the

superseding indictment. They all testified that they had never authorized any of

the financing contracts, and all but one testified that they would not have

authorized the financing if asked. In fact, several testified that they had expressly

told Defendant that they did not want a litigation advance. Each of the victim clients also testified that they never received any of the funds from the financing companies, and that testimony was corroborated by an FBI agent who testified that she had traced the litigation advances and found that none of them went to Defendant's clients. The Government also presented overwhelming evidence—including bank records and testimony of Defendant's former colleagues—that he controlled the bank accounts where the funds from the fraudulent litigation advances were deposited. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar.

"An erroneous jury charge only entitles the defendant to reversal of his conviction and remand for a new trial . . . when a reasonable likelihood exists that the jury applied the instruction in an improper manner." United States v. Mayweather, 991 F.3d 1163, 1175 (11th Cir. 2021) (internal quotation marks omitted). In light of the facts elicited at trial, the Court finds it highly unlikely that the jury applied the deliberate-ignorance instruction in an improper manner or that the instruction seriously affected the fairness, integrity, or public reputation of the judicial proceedings.

Global-Tech Appliances, Inc. v. SEB S.A., 563 U.S. 754, 769 (2011), the case upon which Defendant principally relies, Dkt. No. [194] at 6-13, does not require a different result. To Defendant's point, the Supreme Court was clear that a deliberate-ignorance charge requires a showing that the defendant not only was aware of a high probability of a fact in question, but also took deliberate action to

avoid knowledge of the fact, thus elevating mens rea beyond recklessness and negligence. Id. at 769. However, as previously discussed, the Court established the proper standard when it instructed the jury that the government must prove every fact beyond a reasonable doubt; that " 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident"; and "that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew [a] fact." Dkt. No. [153] at 1, 6, 11. Additionally, although the jury instruction in Global Tech Appliances did not include the "deliberate action" provision, the court did not remand for a new trial but instead affirmed because, despite of the flaws in the charge, the evidence was sufficient under the correct standard. Global-Tech Appliances, Inc., 563 U.S. at 770-71.

For these reasons, the undersigned concludes that the deliberate-ignorance charge does not present a "substantial question" within the context of a motion for bond pending appeal.

## B. Aiding and Abetting

Defendant further argues that the Court's instruction to the jury on aiding and abetting constitutes a "substantial question" likely to result in reversal or an order for a new trial. Dkt. No. [194] at 13-15. Likening the facts of this case to those in Smith v. Lopez, 731 F.3d 859 (9th Cir. 2013), rev'd, Lopez v. Smith, 574 U.S. 1 (2014), Defendant argues that there was no allegation in the indictment that he aided or abetted another person, "i.e. [Defendant's colleagues] [Mackenzie] Cole or [Aimee] Ingram," and it was improper for the Government

to seek a jury instruction on aiding and abetting after the evidence had closed. <u>Id.</u> at 13 n.5. He also contends that he properly objected to the charge both before and after it was given and that he is therefore entitled to de novo review of the issue. <u>Id.</u> at 15 (citing Dkt. No. [158]; Dkt. [166] and 4-5, 9-10, 10-11, 12; and Dkt. No. [191] at 4-10). The Court is also unpersuaded by these arguments.

First, of the citations allegedly marking Defendant's objections to the aiding-and-abetting instructions, only the transcript filed at Docket Entry [191] in fact addresses the aiding-and-abetting instruction. <u>See</u> Dkt. No. [191] at 7-8.[3] In that portion of the transcript, Defendant argued, without citing any authority, that it would be improper to give the aiding-and-abetting instruction because "he was not charged with aiding and abetting." <u>Id.</u> at 7. This, however, was an incorrect statement of the law, as aiding and abetting is a theory of criminal liability that is embedded in every count charged in an indictment. <u>See</u> <u>United States v. Philpot</u>, 773 F. App'x 583, 590 (11th Cir. July 12, 2019); <u>United States v. Thomas</u>, 631 F. App'x 847, 851 (11th Cir. Nov. 19, 2015); <u>United States v. Walser</u>, 3 F.3d 380, 388 (11th Cir. 1993); <u>United States v. Broadwell</u>, 870 F.2d 594, 608 (11th Cir. 1989). Therefore, the Court properly overruled the objection.

Second, <u>Smith v. Lopez</u> does not help Defendant's "notice" argument because the Supreme Court criticized its reasoning and reversed its holding. In

---

[3]    Where a document's original page numbering differs from that assigned by the Court's CF/ECF system, the Court uses the numbers assigned by its CM/ECF system.

Smith, the Ninth Circuit granted habeas relief to a convicted state murderer where the court had given an aiding-and-abetting jury instruction based on the government's request "just before closing argument and without any prior indication that it was pursuing an aiding-and-abetting theory." 731 F.3d at 868. The court reasoned that "the prosecution ambushed [the defendant] and denied him a meaningful opportunity to prepare his defense" in violation of his constitutional right to notice. Id. The Supreme Court reversed, Lopez, 574 U.S. at 9, explaining that even under the assumption "that a defendant is entitled to notice of the possibility of conviction on an aiding-and-abetting theory," none of its cases clearly established "that a defendant, once adequately apprised of such a possibility, can nevertheless be deprived of adequate notice by a prosecutorial decision to focus on another theory of liability at trial," id. at 5. Moreover, Defendant has presented no authority—and the Court has found none— indicating that Smith has ever been followed in the Eleventh Circuit. In fact, the Eleventh Circuit found no issue with an aiding-and-abetting instruction in a case similar to the case at bar. See Thomas, F. App'x at 851 (finding that the district court did not err in giving the aiding-and-abetting instruction, "even though aiding and abetting was not charged in the indictment," and that there was sufficient evidence in the trial record to support the instruction, since the main defense was that the defendant's wife had committed the crimes and the evidence presented at trial showed that she worked where he did, could have logged in remotely if she knew his passwords, was a signatory on the bank accounts that

received the stolen funds, and had checks written out to her personally from the accounts").

Additionally, contrary to Defendant's arguments regarding the timing of the request for the aiding-and-abetting charge, he has not shown that the timing of the request prejudiced him. The request for aiding-and-abetting charge was filed in the early afternoon the day before the jury was charged. Dkt. No. [152]. The Court held a final charge conference at 10:15 the next morning, where Defendant was invited to cite authority precluding the charge but failed to do so. Dkt. No. [167] at 5-6, 8-10. Moreover, while Defendant contends that he was prejudiced because the request came after the close of evidence, he had been aware that Cole and Ingram were on the Government's witness list, cross-examined them rigorously, and himself accused them of undertaking a portion of the conduct making up the charges against him. He also does not argue in his motion that the Court improperly denied a motion to reopen the evidence or state what evidence he would have sought to elicit if he had the opportunity to reopen the evidence.[4]

_____

[4]    It is only in the reply brief Defendant filed in support of his motion for bond that he finally addresses what questions he would have raised with Cole and Ingram if he had additional notice of the aiding-and-abetting instruction. Dkt. No. [205] at 7. This, of course, comes too late for the Government to respond to Defendant's contentions, much less for the Court to have addressed the contentions prior to charging the jury. The Court therefore finds that Defendant has not properly raised the issue before it. See United States v. House, 684 F.3d 1173, 1210 (11th Cir. 2012) (refusing to consider an argument raised for the first time in a reply brief); see also United States v. Zambrano, 752 F. App'x 775, 781 n.4 (11th Cir. Oct. 9, 2018) ("[W]e do not consider arguments raised for the first

Finally, the evidentiary record in this case, any error in giving the aiding-and-abetting charge was harmless. Under Supreme Court precedent, an unwarranted aiding-and-abetting charge constitutes error that "is harmless if, viewing the proceedings in their entirety, . . . a court determines that the error did not affect the verdict, 'or had but very slight effect.' " United States v. Hornaday, 392 F.3d at 1306, 1315 (11th Cir. 2004) (quoting Kotteakos v. United States, 328 U.S. 750, 762, 764 (1946)). In other words, "[i]f one can say 'with fair assurance . . . that the judgment was not substantially swayed by the error,' the judgment is due to be affirmed even though there was error." Hornaday, id. at 1315-16 (quoting Kotteakos, id. at 1248).

In this case, despite Defendant's rigorous cross-examination, there is scant evidence that it was in fact Cole or Ingram who undertook any of the conduct of which Defendant was accused, much less that they were the principal actors aided and abetted by Defendant. Defendant himself has asserted (without pointing to any evidence of record) only that Cole once transferred funds from a litigation advance from the firm's IOLTA account into the firm's operating account, that Ingram "may have" forged the signature of one victim client on the client's litigation advance, and that Ingram acknowledged that she could easily

---

time in a reply brief.") (citing United States v. Fiallo-Jacome, 874 F.2d 1479, 1481 (11th Cir. 1989)); United States v. Kendricks, Crim. Action File No. 1:15-cr-400-MHC/AJB, 2016 WL 11440141, at *5, n.4 (N.D. Ga. Aug. 22, 2016) (R&R) ("Arguments which are first raised in a reply brief are deemed waived."), adopted at 2016 WL 5952743 (N.D. Ga. Oct. 13, 2016).

forge Defendant's signature. Dkt. No. [170] at 11. In contrast, the evidence that Defendant personally undertook the conduct giving rise to the charges was overwhelming. Four witnesses from the defrauded companies testified that they dealt exclusively with Defendant on the fraudulent litigation advances. The witnesses from Capital Financing testified that Defendant picked up the fraudulently obtained checks and that they dealt with Defendant exclusively about the status of repayment. The witnesses from Mighty testified that they spoke with Defendant over the telephone and even met with him in person on a few occasions. There was also evidence that when Mighty learned of the fraud, Defendant tried for months to make "payoffs" and ultimately reached an agreement with Mighty to "release" his former clients from any liability. The Government also presented overwhelming evidence that Defendant controlled the bank accounts where the funds from the fraudulent litigation advances were deposited and was the sole signatory on two of the three accounts. Testimony was corroborated by voluminous e-mail correspondence, bank records, and business records, including loan agreements signed by Defendant. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar. In sum, there was copious evidence that all pointed toward Defendant as the sole actor undertaking the fraud and identity theft.

      For these reasons, the Court concludes that it is highly unlikely that the jury applied the aiding-and-abetting instruction in an improper manner or that the instruction seriously affected the fairness, integrity, or public reputation of

the judicial proceedings. Thus, the aiding-and-abetting charge also does not present a substantial question for the purposes of Defendant's motion for bond pending appeal.

## IV.   CONCLUSION

Based upon the foregoing, Defendant's Motion for Bond Pending Appeal, Dkt. No. [194], is **DENIED**.

**IT IS SO ORDERED** this 25th day of April, 2022.

**Leigh Martin May**
**United States District Judge**

# EXHIBIT L

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 22-10630-BB

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

CHALMER DETLING, II,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia
Atlanta Division
Civil Action File No. 18-CR-00309-LTW-1

## DEFENDANT-APPELLANT'S MOTION FOR RELEASE PENDING APPEAL

David A. Cox
Georgia State Bar No. 192381
2870 Peachtree Road, # 183
Atlanta, GA 30305
(404) 276-0798
dacox@dacoxlaw.com

**United States of America v. Chalmer E. Detling**
**Case No. 22-10630**

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Appellant, Chalmer E. Detling, through the undersigned counsel, and in accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-2(d), herein discloses all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns ten percent or more of a party's stock, and other identifiable legal entities related to a party.

1. Samir Kashal, Assistant United States Attorney, Northern District of Georgia

2. Alex Sistla, Assistant United States Attorney, Northern District of Georgia

3. Caitlyn Wade, Federal Public Defender, Atlanta

4. Suzanne Hashimi, Federal Public Defender, Atlanta

5. Judge Leigh May, District Court Judge, Northern District of Georgia

6. Judge Linda Walker, Magistrate Court Judge, Northern District of Georgia

7. Tusk Financing, Inc.

8. Legal Funding Group, Inc.

9. Mighty Financing, Inc.

C **1** of **2**

In accordance with Rule 26.1(a) of the Federal Rues of Appellate Procedure and Eleventh Circuit Rule 26.1-3(b), the undersigned further certifies that there is no publicly traded company or corporation with an interest in the outcome of this case,

Respectfully submitted, this 5th day of August, 2022.

/s/ David A. Cox
David A. Cox
State Bar No. 192381
2870 Peachtree Road, # 183
Atlanta, GA 30305
(404) 276-0798
dacox@dacoxlaw.com

COMES NOW, Defendant-Appellant Chalmer Detling, II, through the undersigned counsel, and moves this Court, pursuant to Rule 9(b) of the Federal Rules of Appellate Procedure, for an Order reversing the Order of U.S. District Court for the Northern District of Georgia entered on May 11, 2022 and for an Order releasing him on his own recognizance or under such terms as this Court deems appropriate pending the appeal of this matter respectfully showing the Court as follows.

**1.**

On Feb 11, 2022 judgment was entered against Mr. Detling for the offense of wire fraud and aggravated identity theft.  He was sentenced to a term of 70 months imprisonment.  A copy of the judgment of conviction is attached and it shows that Mr. Detling is qualified for release pending appeal under 18 U.S.C. 3143(b)(2). (See, Exhibit "A" attached hereto).  On February 25, 2022, Mr. Detling filed a Notice of Appeal with this Court.

**2.**

This Court must grant an appeal bond if it finds that Mr. Detling is: (1) not a flight risk or a danger to the community, (2) that his appeal is not being brought for the purpose of delay, that his appeal (3) raises a "substantial issue of law or fact", that if successful is "likely to result in reversal or an order for a new trial."

1

*United States v. Giancola,* 754 F. 2d 898, 901 (11th Cir. 1985); 18 USC 1343(B)(2).

A question is substantial if it is "one of more substance than would be necessary to a finding that it was not "frivolous"[;]... a "close" question or one that very well could be decided the other way." *Id.* at 901. Furthermore, a "novel" question may be considered a substantial question so long as the question is not "patently without merit". *Id.* (noting that a novel question may be substantial so long as it is not patently without merit.)

### 3.

On March 10, 2022 the District Court entered an order (See, Exhibit "B" attached hereto) denying Mr. Detling's second Motion for Bond Pending Appeal.[1] (See, Exhibit "C" attached hereto). The Government never filed a response to the motion and there was no hearing. The basis for the denial was the Court's belief that Mr. Detling could not bring a successive motion for bond unless he could show exceptional circumstances, even though the second motion raised a different substantial question than the first. This refusal to consider the merits of the motion seems to run counter to F.R.A.P. 9(b) which provides that these motions should (in most circumstances) be brought in the first instance in the

---

[1] Mr. Detling's first motion for bond and the Court's denial are attached as Exhibits "D" and "E" hereto.

District Court. Furthermore, "a District Court is not free under any circumstances to disregard an application for release pending appeal" and must "act on the application and state in writing its reasons for the action taken" *U.S. v. Hart*, 779 F.2d. 575 (10th Cir. 1985). The District Court did not object to Mr. Detling's assertion that he was not a flight risk or a danger to the community and had in fact ruled on multiple occasions that he was not. In fact, Mr. Detling was free on bond until he self-reported to FPC-Montgomery on May 11, 2022.

## 4.

This Court reviews a denial of a motion for appeal bond *de novo*. *Harris v. United States*, 404 U.S. 1232 (1971). Furthermore, since the Court can independently consider questions of law this Court has discretion to consider questions not raised before the District Court. *U.S. vs. Tortora*, 922 F. 2d 880 (1st Cir. 1990) (materials not presented to trial court may be considered); *U.S. v. Hochevar*, 214 F. 3d. 342 (2d. Cir. 2000) (requirement that defendant move first in district court not a jurisdictional requirement); *U.S. v. Smith*, 793 F.2d. 85, n. 3 (3rd Cir 1986) (Court elected to consider three additional questions not raised in initial motion to the District Court).

## 5.

The Speedy Trial Act requires a defendant to be brought to trial within 70 days. Not all days are counted though. For example, all the time from the filing

3

of a motion until the hearing on the motion is excludable.  For motions that do not require a hearing, only 30 days from the time the motion comes under advisement is excludable.  A motion is deemed to be under advisement when the judge receives the last piece of paper it expects to receive on a motion. *Zedner v. U.S.*, 547 U.S. 489 (2006).  Time is also excluded if the Court grants a continuance so long as the Court finds that the "ends of justice" require the continuance and the court sets forth in the record its reasons for finding that the "ends of justice" served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial". *Bloate v. U.S.,* 559 U.S. 196 (2010).  If the Defendant is not brought to trial within 70 days then the case must be dismissed.

**Substantial Question Number 1.**

This appeal turns on the question of whether the Motion to Strike Surplusage [Doc 29] filed by Mr. Detling tolled the speedy trial clock, and if so, for how long.  If the Motion did not toll the clock or tolled it for only 30 days, then there has been a speedy trial violation and the case must be dismissed. On May 10, 2022, at approximately 12:15 pm, Mr. Detling filed his motion to appeal *pro se* and an attached motion for appeal bond.  The gist of this motion was that a substantial issue existed as to whether, within the meaning of the Speedy Trial Act, the Court held a "hearing" on his Motion to Strike Surplusage

4

during the pretrial conference. If the Court did not in fact hold a hearing, then the speedy trial act would be violated. What constitutes a "hearing" for purposes of the Speedy Trial Act appears to be a novel issue in this circuit. In support of his motion Mr. Detling pointed to the transcript of conference and argued that the Court never mentioned or referred to the motion, asked about the motion, or ruled on the motion. The Defendant also pointed out that there was no reference to the motion in the pretrial conference minutes.

Less than 4 hours after the above-referenced motion was filed, the Court issued its denial without a hearing and without any response from the government. The Court refused to consider the merits of the motion and based its denial on its belief that Mr. Detling could not bring a second motion for bond without showing exceptional circumstances. The Court did not cite any caselaw for this proposition. Remand, however, does not seem appropriate in this case because the District Court Order was clear that it would have denied the motion on the merits because it believes that Mr. Detling failed to present a substantial question of law.

Regarding the merits of Mr. Detling's motion, the Court stated that "The Court heard detailed argument on the issues raised in the Motion to Strike Surplusage at the October 13, 2021, pretrial conference, specifically referring to the motion by name and hearing argument from both the Government and Mr.

5

Detling's counsel." [Doc 230, page 6] The transcript speaks for itself and shows

that the Court is mistaken in its assertion that it "specifically referred to the

motion by name." The motion was only mentioned once, in passing, by Defense

counsel. The Court did not dispute the Defendant's contention that the motion

was never ruled on by the Court or that it was not referenced in the minutes. The

Court did not mention the *Giancola* standards or reference the record in support

of its contention. The Court did not analyze whether the question was "novel",

"close", or one that could be decided the other way.

## 6.

The relevant procedural and speedy trial history of this case is as follows:

- On August 10, 2018, Mr. Detling made his first appearance and the speedy trial clock ran for 11 days before stopping when a continuance was granted.

- On October 30, 2018, Mr. Detling filed several pre-trial motions including the Motion to Strike which is the subject of this appeal. [Doc 29]

- On December 12, 2018, a superseding indictment was issued. The superseding indictment did not add any charges or materially change any allegations. [Doc 35]

- On January 11th, 2019 Mr. Detling filed his reply brief and the motions were taken under advisement by the Magistrate Judge. [Doc 41] The clock would stay stopped for up to 30 days unless the Court decided that a motion could not be decided without a hearing.

- On March 4th, 2019, Mr. Detling's attorney called the
  Magistrate Judge's chambers and asked when the Court would
  rule on the motions and certify the case for trial.

- On March 21, 2019, the Magistrate Judge made the following
  docket entry:

  > ORDER TO CONTINUE - Ends of Justice as to
  > Chalmer Detling, II; Defendant informed the Court on
  > March 4, 2018, that he would not be filing any
  > additional motions in this case and that it is ready for a
  > ruling on the motions that he previously filed. Time
  > excluded from 02/06/2019 until 04/06/2019.
  > APPROVED by Magistrate Judge Linda T. Walker on
  > 03/21/2019. (slc)

This continuance doesn't satisfy the requirements of the Speedy Trial Act and

neither the US Attorney nor the District Court have attempted to argue

otherwise. *Zedner v. U.S.*, 547 U.S. 489 (2006)

- On April 11th, 2019, the speedy trial clock would have expired
  assuming none of the motions required a hearing.

- On April 30th, 2019, the Magistrate Judge issued a Report and
  Recommendation on all but two of the motions. The
  Magistrate Judge "deferred" the Motion to Strike [Doc 29] and
  the Motion to participate in Voir Dire [Doc 30] to the District
  Court.

- On May 29, 2019, the District Court entered an order adopting
  the Magistrate Judge's recommendations, granting the motion
  to participate in Voir Dire, and "deferring" the Motion to
  Strike until the pre-trial conference. [Doc 52]

- On October 21, 2021, just minutes before voir dire was to
  begin, the Court denied Mr. Detling's oral motion to dismiss

7

citing a violation of the Speedy Trial Act. The details of this
motion are thoroughly discussed in the Mr. Detling's Motion
for Appeal Bond that was rejected by the District Court.
Relevant to this action is the fact that Mr. Detling specifically
challenged the time related to the Motion to Strike and the time
related to the Magistrate Judge's continuance entered on March
21, 2019.

## 7.

Mr. Detling's Motion to Dismiss turns on whether or not the Motion to

Strike tolled the speedy trial clock and, if so, for how long.  Mr. Detling offers

four alternative grounds below, in addition to those presented to the District

Court, through which this Court can find that the motion did not in fact toll the

speedy trial clock.  The Motion to Strike, which was filed along with several

other pretrial motions on October 30, 2018, is extraordinarily brief and is

reproduced in full below:

COMES NOW the Defendant, Chalmer Detling II, by and through

undersigned counsel, pursuant to Rule 7(d) Federal Rules of Criminal

Procedure, and moves this Court to strike from the indictment

allegations which are immaterial, irrelevant, and if submitted to the

jury, would be unfairly prejudicial to the Defendant.  The irrelevant

language's presence in the indictment, a document that has been

returned by the grand jury, and contains the signature of the United

States Attorney gives these irrelevant and unfairly prejudicial

8

allegations undue weight and indicia of authority. As such they are to

be struck.  "The inclusion of clearly erroneous language in an

indictment that could serve only to inflame the jury, confuse the

issues, and blur the elements necessary for conviction under the

separate counts involved surely can be prejudicial." *United States v.*

*Bullock*, 451 F.2d. 884 (5th Cir. 1971).  Mr. Detling respectfully

requests that the following statements be struck from the indictment

in order to protect the defendant against immaterial or irrelevant

allegations in the indictment which may be prejudicial (Rule 7, Note

to Subdivision (d)):  "On or about October 31, 2016, the Supreme

Court of Georgia accepted Detling's petition for voluntary surrender

of his law license, which the Supreme Court of Georgia described as

'tantamount to disbarment.' DETLING is currently not licensed to

practice law in the State of Georgia."

WHEREFORE, Mr. Detling respectfully requests that the Court grant his motion

to strike surplusage in the indictment.

**Substantial Question Number 2.**

Rule 47(b) of the Federal Rules of Criminal Procedure states that a

motion "must state the grounds on which it is based."  The Motion to Strike

does not state any grounds at all and is a legal nullity.  The motion simply

cites to Rule 7 and then adds a block quote from a 5th circuit case that doesn't appear to even involve the application of Rule 7.   Moreover, the motion never states why the language the Defendant wants stricken is "erroneous", or "irrelevant", or "unfairly prejudicial", or why its inclusion might "inflame the jury" or "confuse the issues and blur the elements necessary for conviction". In fact the motion never actually quotes the proper standard in the Eleventh Circuit which requires a showing that the language is "irrelevant, inflammatory and prejudicial." *U.S. v. Awan*, 966 F. 2d 1415 (11th Cir. 1992). But the motion states that the language should be struck because it "may be prejudicial."  Because this motion fails to state any applicable legal support and fails to state any grounds or argument in favor of relief and as such cannot even be considered a motion at all.  It is a legal nullity. *Stephenson v. Deutsche Bank*, 282 F. Supp. 2d 1032 (D. Minn. 2001) (motions giving no reasons for relief have no effect); *U.S. v. 64.88 Acres of Land*, 25 F.R.D. 88 (W.D. Pa. 1960) (motion which does not comply with particularity requirement of 7(d) is a nullity).

Can a filing which does not comply with the provisions of Rule 47(d) and is in effect a "legal nullity" stop the speedy trial clock?

**Substantial Question Number 3.**

Assuming, *arguendo*, that the Motion to Strike was not a legal nullity, there is substantial question as to whether or not the motion was mooted by the superseding indictment. In the 11th Circuit the filing of a superseding indictment has the same effect as dismissing an original indictment and filing a new indictment. *U.S. v. Mckay*, 30 F. 3d. 1418 (11th Cir. 1994). Mr. Detling filed his pre-trial motions on October 30, 2018. The Government issued a superseding indictment on December 10, 2018. Numerous Eleventh Circuit decisions have cited the *Mckay* case for the proposition that a superseding indictment moots all pending but undecided motions. See, for example, *U.S. v. Taylor*, 2019 U.S. Distr. Lexis 139684 (August 19, 2019 N.D. Ga).

In Mr. Detling's case, the Magistrate Judge implicitly held that the pre-trial motions had been mooted by the superseding indictment when she recommended to the District Court that those motions be "construed" as if filed against the superseding indictment. [Doc 45] Did the superseding indictment moot the Motion to Strike and if so can a mooted motion toll the speedy trial clock? Could a mooted motion ever require a hearing to decide?

**Substantial Question Number 4.**

Assuming, a*rguendo*, that the Motion to Strike was: (1) not a legal nullity and (2) was not mooted by the superseding indictment there is a

11

substantial question as to whether or not the Magistrate Judge had authority to defer a properly referred non-dispositive motion to the District Court for decision. The Local Rules for the Northern District of Georgia state that all pre-trial motions shall be initially submitted to a magistrate judge who shall conduct any necessary hearings and shall issue a ruling thereon. LR N.D. Ga. Crim. R. 12.1(E)(1).  Here, the Motion to Strike was submitted to the Magistrate who took the motion under advisement [Docket 31].  Therefore, the rule required the Magistrate Judge to rule and does not allow deferral of the motion, but no hearing was conducted nor was the Motion decided.

Rather, the Magistrate Judge simply "deferred" the Motion to the District Court through a docket entry and certified the case ready for trial. Did this *ultra vires* "deferral" of the Motion to Strike act as an implicit denial of the motion?  Did the District Court even have the authority to decide a non-dispositive motion or hold hearings on a properly referred, non-dispositive motion?

**Substantial Question Number 5.**

No court has held that a motion to strike surplusage from an indictment is the type of motion that requires a hearing.  In fact, in this circuit a motion to strike surplusage should not be granted "unless it is clear that the allegations are: (1) not relevant to the charge and are (2) inflammatory and (3)

prejudicial." *Awan*, *supra* at 1426. This is a "most exacting standard". *Id.*
Even inflammatory and prejudicial language should be allowed to remain in
the indictment if it is nevertheless relevant (though the Court may redact the
information if it chooses). If the allegations are "clearly" irrelevant,
inflammatory and prejudicial, then that should be obvious from the motion
although in *Awan* the court did endorse the trial court's waiting until the
presentation of evidence to ascertain whether language was relevant.
Otherwise, the mere fact that a Court might want to hear additional argument
is a reasonable indication that this "exacting" standard has not been met. Does
a motion to strike surplusage toll the speedy trial clock for more than thirty
days when, as in this case, the Court gave no indication at any time why it
might need a hearing before being able to decide the motion?

## **CONCLUSION**

The purpose of a motion for release pending appeal is not to convince
the appellate court that the appellant should win his appeal. That is the
purpose of appellate briefs and oral argument. Rather, the purpose of this
Motion is to show that a "substantial issue" exists that would result in reversal
if decided in Mr. Detling's favor. When an appellant has done that, and has
also provided a reasonable alternative interpretation of the law, as has Mr.
Detling, then this Court cannot say that the question is insubstantial or not

susceptible to a different answer. Here, each of the five issues presented to the Court are novel and important issues that would result in a violation of the Speedy Trial Act and require this Court to order that the indictment be dismissed. Furthermore, since the District Court has ruled that Mr. Detling is not a flight risk and it is clear that this appeal is not brought for delay (Mr. Detling is already incarcerated, after all) then the only issue for this Court is whether the questions raised are substantial. The purpose of Rule 9 is to "insure the expeditious determination of appeals respecting release orders" and permits these appeals to be heard on an "informal record" and "without the necessity for briefs and on reasonable notice." Fed. R. App. Proc. 9 (advisory note to subdivision a). To effectuate this intent, this Court must simply review this Motion and the referenced parts of the record and it "shall issue" an Order releasing Mr. Detling if it finds that he has raised a substantial question which if decided in his favor would result in a new trial. As Mr. Detling has met that burden, the Court should, without delay, issue an Order for his immediate release on appeal bond.

Respectfully submitted, this, 9th day of August, 2022.

/s/ David A. Cox
David A. Cox
Georgia Bar No. 192381
2870 Peachtree Road, # 183
Atlanta, GA 30305
(404) 276-0798 / dacox@dacoxlaw.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion does not exceed 20 pages and contains 3,475 words, excluding accompanying documents authorized by FED. R. APP. P. 27(a)(2)(B). This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

This 9th day of August, 2022

/s/ David A. Cox
David A. Cox
Ga. Bar Number 192381

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on August 9, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

This 9th day of August, 2022

/s/ David A. Cox
David A. Cox
Ga. Bar Number 192381

# EXHIBIT M

No. 22-10630-BB

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHALMER DETLING, II,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 18-cr-309-LMM-LTW-1

**Response to Defendant's Motion to
For Release Pending Appel**

RYAN K. BUCHANAN
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

No. 22-10630-BB
*United States v. Chalmer Detling, II*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to the individuals identified in Appellant's Certificate of
Interested Persons, counsel hereby certifies that the following people
and entities may have an interest in the outcome of this appeal:

Capital Financing

Buchanan, Ryan, United States Attorney

Erskine, Kurt, Former Acting United States Attorney

Golden, Howard

Parmer, Molly, Former Federal Public Defender, Atlanta

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

No publicly traded company or corporation has an interest in the
outcome of the case or appeal.

No. 22-10630-BB

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

————————————

### UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

### CHALMER DETLING, II,

*Defendant-Appellant.*

————————————

### Response to Defendant's Motion to
### For Release Pending Appel

Following a nearly two-week trial, a federal jury convicted Chalmer Detling, a disbarred attorney, of four counts of wire fraud and five counts of aggravated identity theft after a little more than an hour of deliberations. (Doc. 154 (Ex. A)).[1] On February 10, 2022, the district court sentenced Detling to a within-Guidelines sentence of 70 months' imprisonment. (Docs. 182 (Ex. B), 183 (Ex. C)). Detling filed a timely notice of appeal. (Doc. 186 (Ex. D)). On August 9, 2022—before any merits briefing—Detling filed the present motion

———————————————

[1] The docket entries are attached to this motion as an exhibit as indicated in the parenthetical. Exhibit designations appear once.

requesting a bond pending appeal claiming that his appeal will raise multiple substantial questions of law likely to result in in his convictions being vacated. Not one of his purported substantial questions, however, challenge his convictions. The Court should deny Detling's motion.

## 1. Background

On August 8, 2018, the grand jury returned an indictment against Detling charging him with multiple counts of wire fraud and aggravated identity theft arising from his scheme to use his clients' identities to obtain approximately $400,000 in fraudulent litigation advances. (Doc. 1 (Ex. E)). Detling made his initial appearance on August 10, 2018. (Doc. 10 (Ex. F)). On August 16, 2018, the magistrate judge issued a pretrial scheduling order setting a hearing for August 28, 2018. (Doc. 15 (Ex. G)). On August 22, 2018, Detling filed an unopposed motion to continue the pretrial conference and for an extension of time to file pretrial motions, which the magistrate judge granted. (Docs. 18 (Ex. H), 21 (Ex. I)).

After receiving an additional continuance, Detling filed multiple counseled motions, including a motion to strike surplusage from the indictment (or "motion to strike") on October 30, 2018. (Doc. 29 (Ex. J)). Detling requested the following language be struck under Federal Rule of Criminal Procedure 7(d):

On or about October 31, 2016, the Supreme Court of Georgia
accepted DETLING's petition for voluntary surrender of his
law license, which the Supreme Court of Georgia described as
"tantamount to disbarment." DETLING is currently not
licensed to practice law in the State of Georgia.

(*Id.* 2).  The government filed its response to this motion, as well as

the others on December 14, 2018. (Doc. 33 (Ex. K)). In the interim,

however, on December 12, 2018, the government obtained a

superseding indictment to address a concern raised in Detling's

jurisdictional motion. (Doc. 26 (Ex. L), Doc. 35 (Ex. M), Doc. 33-7

(Ex. K)). The language that was the subject of Detling's motion to

strike remained in the superseding indictment. (*Compare* Doc. 1-1 (¶

1) *with* Doc. 35-1 (¶ 1)).

On January 14, 2019, Detling was arraigned on the superseding

indictment, and a pretrial conference was scheduled for February 6,

2019. (Docs, 42 (Ex. N), 43 (Ex. O)). On March 21, 2019, a minute

entry was entered labeled "order to continue" and noting that on

March 4, 2019, Detling notified the court that "he would not file any

additional motions and . . . [he] is ready for a ruling on the motions

that he previously filed." The minute entry also noted that it was

excluding time between February 6 and April 6, 2019. Detling did not

object to the magistrate judge's minute order.

3

On April 30, 2019, the magistrate judge issued a report and recommendation ("R&R") denying several of Detling's motions, and deferred ruling on his motion to strike. (Doc. 45 (Ex. P), Apr. 30, 2019 minute orders). On May 29, 2019, the district court overruled Detling's objections to the R&R and deferring ruling on the motion to strike. (Doc. 52 (Ex. Q)).

On October 13 and 19, 2021, the district court held two lengthy pretrial conferences. (Docs. 139 (Ex. R), 140 (Ex. S)). During these hearings, which Detling did not attend, the district court addressed many evidentiary issues, including the need for the government to prepare a redacted indictment. (Doc. 168-43 (Ex. T); Doc. 169-96 (Ex. U)). Detling's trial began October 21, 2021. Just minutes before jury selection, Detling—although represented by counsel—was permitted to make a *pro se* oral motion to dismiss the indictment on speedy trial grounds. (Doc. 212-10-14 (Ex. V)). He argued that the magistrate judge had made an insufficient ends-of-justice finding to exclude certain time and that the district court did not resolve his motion to strike at the pretrial conference, but if it did, it had done so without a hearing. (*Id.*). Detling suggested that if the motion to strike was resolved without a hearing, then the speedy trial clock would not be tolled. (*Id.*-13).

The district court rejected his argument:

4

> Mr. Detling's argument was premised on the fact that [the motion to strike] was not discussed during the pretrial conference. That is incorrect. I looked at detail at this motion, and in fact I have basically ruled in your favor . . . . so not only was it discussed, it was something that I told the government that they needed to take another look at the indictment . . . [and] there [were] a few things that needed to be straightened out in terms of the counts, the specific information that was listed in this motion and to the extent there was anything else that needed to be narrowed before the Court could make a final decision about the appropriateness of the indictment, but this specific issues was addressed.

(*Id.* 15). Detling's counsel did not take issue with the district court's characterization of the pretrial conference. The court also issued a minute entry memorializing its statements. (10/21/22 Minute Entry Order Granting in Part and Deferring in Part Motion to Strike).

Notably, Detling did not argue that the motion to strike did not comply with Federal Rule of Criminal Procedure 47, that the filing of the superseding indictment supposedly mooted his pending motions, or that the magistrate judge erred by deferring this motion (in fact taking essentially the opposite position in that regard). (Doc. 212-12).

2.  **Argument and Citation of Authority**

A defendant who has been convicted and sentenced to a term of imprisonment "shall" be detained pending appeal unless the Court finds:

5

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in-
(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). "[T]he conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption." *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985).

Although Detling is not likely to flee or pose a danger, and he is not appealing for the purpose of delay, he has not satisfied his burden of showing that his appeal raises a substantial question likely to result in a reversal, a new trial, or a reduced sentence. *Id.*; 18 U.S.C. § 3143(b).

A "'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous. It is a 'close' question or one that very well could be decided the other way." *Giancola*, 754

6

F.2d at 901. Here, Detling has yet to file his initial merits brief. Nonetheless, Detling asserts that there are *five* substantial questions that merit his release on bond: (i) an alleged violation of the Speedy Trial Act; (ii) whether his motion to strike surplusage complied with Rule 47; (iii); whether the filing of a superseding indictment mooted his motion to strike; (iv) whether the magistrate judge had authority to defer the motion to strike to the district court; and (v) whether the district court erred in holding a hearing on the motion to strike. (Mot. at 4-13). Because the majority of these "questions" were not raised below and do not plainly present a basis for relief, and because it is not a "close question" whether the district court erred in denying Detling' eleventh-hour oral motion to dismiss on speedy trial grounds, the Court should deny Detling's request for an appellate bond.[2]

### A. The district court's denial of Detling's eleventh-hour oral motion to dismiss on speedy trial grounds does not present a substantial or close question because the filing of the motion to strike surplusage tolled the speedy trial clock.

The Speedy Trial Act ("the Act") requires the trial of a defendant to commence within seventy days "from the filing date and making public of the information or indictment, or from the date the

_____

[2] As discussed below, most of Detling's claims are subject to plain error review, thus further undercutting any argument that these issues raise close or substantial questions.

7

defendant has appeared before a judicial officer of the court in which
such charge is pending, whichever date last occurs." 18 U.S.C.
§ 3161(c)(1). "When the clock is triggered by a defendant's first
appearance, the clock begins after the defendant's appearance." *United
States v. Hughes*, 840 F.3d 1368, 1377 (11th Cir. 2016) (citing *United
States v. Williams*, 314 F.3d 552, 557 (11th Cir. 2002)). If a trial does
not begin within seventy days, an indictment may be dismissed with
or without prejudice on motion of the defendant. 18 U.S.C.
§ 3162(a)(2).

In calculating this seventy-day period, however, certain events may
"toll" the speed trial clock. 18 U.S.C. § 3161(h). When the speedy
trial clock is "tolled," those days are deemed "excludable" or "not
countable" toward the seventy-day period. *See, e.g., United States v. Ellis*,
789 F. App'x 163, 166 (11th Cir. 2019). Several of those provisions
are relevant here.

The Act excludes "any period of delay resulting from any pretrial
motion, from the filing of the motion through the conclusion of the
hearing on, or prompt disposition of, such motion." 18 U.S.C.
§ 3161(h)(1)(D). The Act also provides that "any period resulting from
a continuance granted by any judge on his own motion or at the
request of the defendant or his counsel or at the request of the
attorney for the Government, if the judge granted such continuance

8

on the basis of his findings that the ends of justice served by taking

such action outweigh the best interest of the public and the defendant

in a speedy trial." *Id.* § 3161 (h)(7)(A). Ordinarily, for time to be

excludable under this subsection of the Act, the court must set forth

"in the record of the case, either orally or in writing, its reasons for

finding that the ends of justice served by" granting the "continuance

outweigh the best interests of the public and the defendant in a

speedy trial." *Id.*; *see, e.g., United States v. Ammar*, 842 F.3d 1203, 1206

(11th Cir. 2016). With respect to placing such findings on the record,

the Act does not require them to be made contemporaneously with

granting a continuance (though this is the best practice). *Id.* at 1207

(citing *Zedner v United States*, 547 U.S. 489, 507 (2006)). Nevertheless,

this Court has held that "[f]or there to be a valid ends-of-justice

continuance, the court need not explicitly enunciate its findings when

it grants the continuance 'so long as there is sufficient evidence in the

record indicating that it considered the factors identified in the

statute when it granted the continuance.'" *Williams*, 314 F.3d at 556

(quoting *United States v. Vasser*, 916 F.2d 624, 627 (11th Cir. 1990)).

Detling contends that the period from February 6, 2019 to April 6,

2019 should not have been excluded under the Act because the

magistrate judge's March 21, 2019 minute order did not make

sufficient ends-of-justice findings. (Mot. at 7). Detling's does not

9

identify any other period that should not have been excluded but
asserts that the speedy trial clock would have expired on April 11,
2019, "assuming none of the motions required a hearing." (*Id.*) His
motion does clearly explain why he believes the speedy trial clock ran
that day. And before the district court, in his eleventh-hour oral
motion, he never mentioned this date, instead vaguely referencing
that there were "109 days of delay." (Doc. 212-13). But these
shortcomings aside, whether the magistrate judge's ends of justice
finding was sufficient under the Act is of no moment, because, as
explained below, the entire time between the filing of his motion to
strike and the district court's consideration at the pretrial conferences
was excludable under § 3161(h)(1)(D).

This Court has held that where a motion necessitates a hearing,
"'[§ 3161(h)(1)(D)] excludes *all* time between the filing of the motion
and the conclusion of the hearing at which it is addressed.'" *United
States v. Harris*, 376 F.3d 1282, 1289 (11th Cir. 2004) (quoting *United
States v. Dunn*, 345 F.3d 1285, 1292 (11th Cir. 2003)) (emphasis in
original).[3] It does not matter "whether or not a delay in holding [the]
hearing [was] 'reasonably necessary.'" *Henderson v. United States*, 476
U.S. 321, 330 (1986). Accordingly, "[t]he entire time from the filing

---

[3] 18 U.S.C. § 3161(h)(1)(D) was previously codified at 18 U.S.C.
§ 3161(h)(1)(F). *Harris* and *Dunn* both reference the prior subsection.

10

of the motion to the conclusion of the hearing is excludable, *even when the hearing is deferred until trial.*" *United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991) (citations omitted) (emphasis added).

Detling filed his motion to strike on October 30, 2018. (Doc. 29). At the time he filed his motion, just 11 days had elapsed under the Act. On April 30, 2019, the magistrate issued a written order addressing several of Detling's pretrial motions and made several minute entries noting which of his motions had been deferred to the district court, including his motion to strike.[4] The magistrate judge did not err in doing so. *See infra*, pp. 20-21. On May 29, 2019, the district court entered an order that, in relevant part, deferred ruling on Detling's motion to strike surplusage until the pretrial conference. (Doc. 52). This was also not error on the district court's part.

In *United States v. Awan*, 966 F.2d 1415 (11th Cir. 1992), this Court held "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language[.]" *Id.* at 1426 (citing *United States v. Fahey*, 769 F.2d 829, 842 (1st Cir.1985) (trial court did not abuse its discretion by waiting until hearing evidence in deciding

---

[4] The April 30, 2019 entry relating to the motion strike read "ORDER deferring ruling on 29 Motion to Strike Surplusage as to Chalmer Detling III (1). Signed by Magistrate Judge Linda T. Walker on April 30, 2019. (LTW) (Entered: 04/30/2019)"

not to strike certain alleged surplusage from the indictment).[5] The
need for a hearing—at or near the time of trial—on a motion to strike
is often necessary because the question of whether to strike certain
language from an indictment is informed by the government's theory
of prosecution and evidence at trial. That, in turn, may depend on the
court resolving Rule 404(b) motions or other motions *in limine* that
would typically not occur until shortly before trial or even during the
trial itself. And this was all true here. The parties engaged in
significant pretrial litigation regarding the scope of the government's
evidence, which included the filing of more than a dozen motions and

---

[5] *See also*, *e.g.*, *United States v. Chrisley*, No. 1:19-cr-297-ELR, 2022
U.S. Dist. LEXIS 14380, at **14-15 (N.D. Ga. Jan. 26, 2022) ("The
Magistrate Judge correctly observed that the Court possesses the right
to reserve judgment on a motion to strike surplusage until a hearing
before trial.") (citing *Awan*); *United States v. Webman*, No. 1:13-cr25-
SCJ, 2014 U.S. Dist. LEXIS 27504, at **12-13 (N.D. Ga. Jan. 6, 2014)
("And, in order to determine whether the allegations are relevant to
the charges and the evidence introduced at trial, '[t]he Court may
reserve ruling on a motion to strike surplusage until hearing the
evidence and determining its relevance at trial.'") (quoting *United
States v. Al-Arian*, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004)).

12

responses[6] and required the district court to convene two lengthy pretrial hearings.[7]

Detling suggests that a hearing was unnecessary because it should be "obvious" from the face of the indictment whether to grant a motion to strike. (Mot. at 13). But as the foregoing discussion demonstrates, the decision of whether to strike language from an indictment is a fact-intensive inquiry. And in any event, this Court has observed "appellate courts generally have been reluctant to question the judgment of a district court that a hearing is required." *Dunn*, 345 F.3d at 1294 & n.4 (citations omitted). This is because "[t]he reasons for conducting a hearing on a motion typically are fact-intensive, and accordingly are uniquely within the purview of the district court." *Id.* at 1294. It also makes no difference with respect to the tolling analysis under the Act that the court rather than the parties decided a hearing was necessary. *United States v. Grosz*, 76 F.3d 1318, 1325 (5th Cir. 1996) ("[The defendant] also contends that this motion was a non-hearing motion because the parties never requested and the district court never formally set a hearing on it. We are not persuaded

---

[6] *See* Docs. 105 (Ex. W), 106 (Ex. X), 107 (Ex. Y), 109 (Ex. Z), 110 (Ex. AA), 113 (Ex. BB), 114 (Ex. CC), 117 (Ex. DD), 118 (Ex. EE), 119 (Ex. FF), 122 (Ex. GG), 123 (Ex. HH), 124 (Ex. II), 125 (Ex. JJ).

[7] *See* Docs. 139, 140, 143 (Ex. KK), 168, 212.

by these arguments [because] [t]he plain language of [§ 3161(h)(1) (D)] [does not] require[] a court to make any on-the-record findings as to the status of a motion."). In short, unless there is evidence that the hearing was held simply "to avoid the operation of the Speedy Trial Act," district courts enjoy substantial discretion in deciding whether a motion requires a hearing. *Id.* at 1325 n.7 (cited approving by *Dunn*). There was no such evidence here where the district court unambiguously deferred consideration of the motion to strike until the pretrial conference years before Detling raised his speedy trial claim.

Because Detling's motion to strike required a hearing to be resolved, "[t]he entire time from the filing of the motion to the conclusion of the hearing [was] excludable" under the Speedy Trial Act. *Phillips*, 936 F.2d at 1254. Whether Detling believes this delay was "reasonable" or not is immaterial—though as demonstrated above it was entirely so.[8] Accordingly, the entire time from October 30, 2018 until at least October 13, 2021 would be excluded under the Act. *See, e.g.*, *Harris*, 376 F.3d at 1289 (no speedy trial violation where district court did not resolve motions to suppress until a hearing 22

---

[8] As the Court is aware, much of the delay in this case was attributable to the COVID pandemic. And Detling himself repeatedly sought continuances before the pandemic. (Docs. 39 (Ex. LL), 48 (Ex. MM), 59 (Ex. NN), 67 (Ex. OO), 75 (Ex. PP)).

14

months later).[9] Because Detling was tried within the Act's 70-day limit, when accounting for any properly excludable days, his speedy trial argument does not raise a substantial or close question likely to result in his convictions being vacated.

### B. Detling's counseled motion to strike complied with Federal Rule of Criminal 47(b).

Detling offers that a second "substantial question" warranting his release is whether his counseled motion to strike complied with Federal Rule of Criminal Procedure 47(b). (Mot. at 9-10). For the first time, Detling argues that this counseled motion was not actually a motion but a "legal nullity" because it supposedly did not state the grounds on which was based. (*Id.*). That being the case, so Detling's argument goes, the motion to strike could not have stopped the speedy trial clock. (*Id.*) Detling cites no authority in support of his argument. And this is unsurprising because the argument is nonsensical.

Rule 47(b) provides:

_____

[9] And arguably until October 21, 2021, when the district court revisited the issue with Detling following his oral motion.

15

> A motion—except when made during a trial or hearing—must be
> in writing, unless the court permits the party to make the
> motion by other means. A motion must state the grounds on
> which it is based and the relief or order sought. A motion may
> be supported by affidavit.

Fed. R. Crim. P. 47(b). The rule demands only that the party identify
the basis upon which they seek relief. Its purpose is to provide the
district court and litigants sufficient notice as to why and what relief a
moving party seeks. *See, e.g.*, *United States v. Audette*, 923 F.3d 1227,
1241 (9th Cir. 2019) ("Audette fails to identify any precedent, and we
are aware of none, that requires a court to construe a defendant's post-
trial motion as requesting relief that the motion itself does not
request."); *United States v. Bowen*, 472 F. App'x 747, 748 (D.C. Cir.
2012) (citing Rule 47 in affirming district court's refusal to construe a
motion to continue as a motion for a new trial where the motion did
not seek the latter relief). But Rule 47 "does not require that the
grounds upon which a motion is made shall be stated 'with
particularity,' as is the case with [Federal Rule of Civil Procedure 7]."
Fed. R. Crim. P. 47, 1944 Comm. Note 1.[10] Detling's counseled
motion to strike readily satisfied Rule 47's low bar.

_____

[10] Accordingly, Detling's reliance on cases discussing Federal Rule
of Civil Procedure 7's particularly requirement is misplaced. (Mot. at
10).

16

In the motion to strike, Detling's then-counsel specifically identified the Federal Rule of Criminal Procedure under which Detling was seeking relied, namely Rule 7(d). (Doc. 29-1). Counsel further cited *binding authority* in support of her argument. (*Id.* (citing *United States v. Bullock*, 451 F.2d 884 (5th Cir. 1971))). And counsel identified the precise language that Detling wanted stricken from the indictment. (Doc. 29-2). The government understood exactly the relief Detling sought and filed a substantive response in opposition. (Doc. 33-16-19). The district court later understood the relief that Detling sought and ordered the government to prepare a redacted indictment for the jury. (Doc. 168-43; Doc. 169-96; Doc. 212-14-15 (Court: "I looked in detail at this motion [to strike], and in fact I have basically ruled in [Mr. Detling's favor on this motion.").

Detling nevertheless claims that this motion was no motion at all because "it fail[ed] to state any applicable legal support . . . [or] grounds or argument in favor of relief." (Mot. at 10). His argument is belied by the motion itself, which cited the applicable Federal Rule of Criminal Procedure, a relevant case, and identified the precise relief sought. Rule 47 demands nothing more.

Detling chafes at his counsel's decision to cite a Fifth Circuit case. (Mot. at 10). But as this Court is aware, decisions from the "old Fifth Circuit" handed down before the close of business on September 30,

17

1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc). He is also wrong that *Bullock* "doesn't appear to even involve the application of Rule 7." (Mot. at 10). The court of appeals specifically considered whether the district court abused its discretion by not striking excess and objectionable language from an indictment. 451 F.2d at 888. And whether counsel should have cited a different case, as Detling suggests, has no bearing on whether the motion satisfied Rule 47.

It is not a substantial or close question that Detling's counseled motion to strike satisfied Rule 47.

### C. It is not a substantial question that the filing of a superseding indictment mooted Detling's pending motions.

Citing *United States v. McKay*, 30 F.3d 1418 (11th Cir. 1994), Detling argues that the filing of the superseding indictment "moots all pending but undecided motions." (Mot. at 11). That is not, however, *McKay's* holding. Nor have "[n]umerous Eleventh Circuit decisions" cited [] *McKay*" for this proposition. (*Id*.). And before filing the present motion, Detling never raised this argument.

*McKay* addressed whether under the Speedy Trial Act the time between the dismissal of an indictment and filing of a superseding indictment, was automatically excluded under 18 U.S.C. § 3161(h)(6) even where not accompanied by a formal motion. 30 F.3d at 1420-21.

18

*McKay* did not discuss, much less mention, the import that the filing of a superseding indictment would have on any pending pretrial motions. Indeed, the lone district court case Detling cites, *United States v. Taylor*, No. 1:18-cr-425-SCJ, 2019 U.S. Dist. LEXIS 139684 (N.D. Ga. Aug. 19, 2019), did not hold that the superseding indictment mooted *all* pending pretrial motions, but rather mooted only the motion to dismiss the indictment. *Id.* at 2. It noted, however, that "to the extent that it is proper to consider the motion as applying to the Superseding Indictment, Defendant's objections are overruled." *Id.* at *2 (citing *United States v. Waddell*, No. 15-cr-95, 2016 U.S. Dist. LEXIS 85455, at *1 n1 (S.D. Ga. June 28, 2016)). Indeed, in *Waddell*, the court expressly noted that it "rule[d] on the merits of [the] Defendant's arguments, rather than dismiss his motion as moot" despite the government filing another superseding indictment because it "contained only minor clerical changes." *Waddell*, No. 15-cr-095, 2016 U.S. Dist. LEXIS 85455, at *1 n.1; *see also United States v. Hill*, No. 1:21-cr-143-ELR, 2022 U.S. Dist. LEXIS 81938, at *1 n.1 (N.D. Ga. May 5, 2022); *United States v. Damiani*, No. 1:10-cr-519, 2011 U.S. Dist. LEXIS 154277, at **58-59 (N.D. Ga. Sept. 23, 2011) (filing of superseding indictment did not moot pending motion to sever).

Here, the filing of the superseding indictment could not have mooted Detling's motion to strike because the same allegedly

19

offending language appeared in both the original and superseding indictments. (*Compare* Doc. 1-1 (¶ 1) *with* Doc. 35-1 (¶ 1)). Given the absence of Eleventh Circuit authority that the filing of a superseding indictment automatically moots all pending pretrial motions, and the practice of district courts to in fact consider such pending motions, this issue does not present a substantial or close question likely to lead reversal. *See Giancola*, 754 F.2d at 901 ("We note that an issue may be without controlling precedent largely because that issue is so patently without merit that it has not been found necessary for it to have been resolved.") This is especially so because this Court would review any error in this regard for plain error, a standard Detling cannot satisfy. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

**D. Deferring a ruling on the motion to strike to the district court does not raise a substantial or close question because it is well-settled that this an appropriate way to handle such motions.**

Again citing no authority from this Court, and having not previously objected, Detling argues that the magistrate judge erred by deferring a ruling on the motion to strike. (Mot. at 12). His current position cannot be reconciled with his concession below that the magistrate judge had "the right to defer to [the district court]" the motion to strike. (Doc. 212-12). Without acknowledging his prior concession, he now argues that the Northern District of Georgia's

20

local criminal rules required the magistrate judge to issue a definitive ruling on his motion to strike. (Mot. at 12). He cites no cases, however, for the proposition that a magistrate judge may not defer a pretrial motion to the district court. (*Id.*). And with good reason, because the magistrate judge's decision to defer the motion to strike to the district court accords with binding Eleventh Circuit precedent.

As noted above, in *Awan*, this Court held "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language[.]" 966 F.2d at 1426 (citation omitted). Considering *Awan*, it is not a substantial or close question that the magistrate judge plainly erred by deferring a ruling on the motion to strike.[11]

### E. It is not a substantial or close question that a district court may hold a hearing on motion to strike surplusage.

Detling argues that absent precedent requiring a court to hold a hearing on a motion to strike surplusage, the district court having done so here erred. (Mot. at 12-13). As an initial matter, his position runs contrary to one he took below, in which he acknowledged that a court might hold a hearing on a motion to strike:

---

[11] Because Detling agreed the magistrate judge had the authority to defer ruling on the motion, this Court also would be precluded from reviewing this claim under the invited error doctrine. *See, e.g.*, *United States v. Harris*, 443 F.3d 822, 823-24 (11th Cir. 2006).

21

I'm not saying that Judge Walker didn't have the right to defer [the motion to strike] to your Honor, but those are the one that routinely ruled on without a hearing and rule on at the magistrate court level. Judge Walker did not request a hearing.

(Doc. 212-12).

The premise underlying his argument also finds no support in the law. Courts have wide latitude when they may hold a hearing, *see, e.g.*, *Dunn*, 345 F.3d at 1294, and he cites no authority for the proposition that a court should only hold a hearing on a pretrial motion when compelled by existing case law.

Moreover, under *Awan*, a hearing on a motion to strike surplusage is especially proper because it is a fact-intensive inquiry and the nature of the evidence and testimony often only crystalizes shortly before trial, or once the jury begins to receive the evidence. Detling's argument therefore that it should be "obvious" whether certain language should be struck from an indictment is irreconcilable with this Court's precedent. And that is in fact what happened here. The district court effectively granted Detling's motion to strike certain language from the indictment that the jury would receive after holding lengthy pretrial hearings in the weeks leading up to trial in which several issues were discussed, including the admissibility of certain government evidence that informed the district court's views on the language in the indictment which Detling found objectionable.

22

(Doc. 168; Doc. 169; Doc. 212); *see also Dunn*, 345 F.3d at 1294 n.4
(noting that "the courts of appeals typically have afforded a liberal
definition to the term 'hearing,' as it is used in [§ 3161(h)(1)(D)],
including situations where the district court hears argument of
counsel and considers it prior to making its ruling") (citations
omitted).

There is no substantial or close question that the district court did
not plainly err by considering Detling's motion to strike in the context
of various evidentiary issues raised during several pretrial conferences.

## 3. Conclusion

Because none of the issues that Detling has identified raise a
substantial or close question, the Court should deny his motion.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a) (5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in 14-point Goudy Old Style, a proportionally spaced typeface, using Microsoft Word 2016 word processing software.

   This response complies with the 5,200-word type-volume limitation of Fed. R. App. P. 27(d)(2) because, according to the word processing software, it contains 5198 words, excluding the parts of the brief exempted by Fed. R. App. P. 27(a)(2)(B) and 32(f), and excluding the title page, certificates, caption, and signature block.

   Today, this motion was filed and served using the Court's CM/ECF system, which automatically sends notification to the parties and counsel of record.


August 19, 2022

                        _____
                        /s/ALEX R. SISTLA
                            *Assistant United States Attorney*

24

# EXHIBIT N

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  22-10630-BB

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHALMER DETLING, II,
a.k.a. Chuck Detling,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

ORDER:

"Defendant-Appellant's Motion for Release Pending Appeal" is DENIED.

/s/ Kevin C. Newsom
UNITED STATES CIRCUIT JUDGE

# EXHIBIT O

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## CASE NO. 22-10630-BB

UNITED STATES OF AMERICA,
Plaintiff-Appellee

v.

CHALMER DETLING, II,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Georgia
Atlanta Division
Civil Action File No. 18-CR-00309-LTW-1

## DEFENDANT-APPELLANT'S MOTION FOR REVIEW OF DENIAL OF MOTION FOR RELEASE PENDING APPEAL

David A. Cox
Georgia State Bar No. 192381
2870 Peachtree Road, # 183
Atlanta, GA 30305
(404) 276-0798
dacox@dacoxlaw.com

**United States of America v. Chalmer E. Detling**
**Case No. 22-10630**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT (CIP)**

Appellant, Chalmer E. Detling, through the undersigned counsel, and in accordance with Rule 26.1(a) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rule 26.1-2(d), herein discloses all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns ten percent or more of a party's stock, and other identifiable legal entities related to a party.

1. Samir Kashal, Assistant United States Attorney, Northern District of Georgia

2. Alex Sistla, Assistant United States Attorney, Northern District of Georgia

3. Caitlyn Wade, Federal Public Defender, Atlanta

4. Suzanne Hashimi, Federal Public Defender, Atlanta

5. Judge Leigh May, District Court Judge, Northern District of Georgia

6. Judge Linda Walker, Magistrate Court Judge, Northern District of Georgia

7. Tusk Financing, Inc.

8. Legal Funding Group, Inc.

9. Mighty Financing, Inc.

In accordance with Rule 26.1(a) of the Federal Rues of Appellate Procedure and Eleventh Circuit Rule 26.1-3(b), the undersigned further certifies that there is no publicly traded company or corporation with an interest in the outcome of this case,

Respectfully submitted, this 14th day of September, 2022.

/s/ David A. Cox
David A. Cox
State Bar No. 192381
2870 Peachtree Road, # 183
Atlanta, GA 30305
(404) 276-0798
dacox@dacoxlaw.com

COMES NOW, Defendant-Appellant Chalmer Detling, II, through the undersigned counsel, and moves this Court, pursuant to Rule 27 (c) of the Federal Rules of Appellate Procedure and Eleventh Circuit Rules, for the review of the denial of Appellant's Motion for Release Pending Appeal in this matter, respectfully showing the Court as follows.

**1.**

On August 9, 2022, Appellant moved this Court for Release Pending Appeal. On August 19, 2022, the Government filed its response and Appellant submitted a reply on August 22, 2022.

**2.**

The motion was ultimately denied on September 9, 2022 by a single judge of the Circuit. The Court did not provide an opinion or any rationale for its decision, so it is unclear whether the Court ruled against the motion on the merits or refused to consider the motion on procedural grounds. Appellant now seeks the Court's review of this Order, pursuant to Fed. R. App. P. 27(c) which provides that "The court may review the action of a single judge." See Locke v. Allstate, 696 F. 2d. 1340 (11th Cir. 1983). (Fed. R. App. P. 27(c)...provide[s] for an appeal of a single judge order to a three-judge panel).

1

**3.**

Appellant's motion requested that the Court apply the standards set forth in *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985), to decide whether to order his release pending appeal. In its response, the Government explicitly conceded that Mr. Detling was not a flight risk and that his appeal was not being brought for purposes of delay. [Resp. P. 7]. This Court was, therefore, left to decide the only remaining issue, which was whether the appeal raised a substantial issue which would likely result in a reversal or dismissal of his case.

**4.**

Appellant's primary argument was that the Speedy Trial Act was violated because the District Court failed to conduct a hearing on a pretrial Motion to Strike during the October 13, 2021 pretrial conference. Appellant pointed to the transcript of the pretrial conference as evidence that there was no hearing on this motion and challenged the Government to point to the place in the transcript where the motion was discussed or ruled on. The Government, in its response to the motion, was unable to do so and simply doubled down on the District Court's statement that "this specific issue was addressed". [Resp. P. 7].

**5.**

To this day, neither this Court, the District Court, nor the Government has been able to point to where in the transcript the Court and the parties discussed "this specific issue." Therefore, a substantial issue exists as to whether or not there was a hearing and consequently whether the Speedy Trial Act was violated in this case.

WHEREFORE, Appellant respectfully requests that the Court review the September 9, 2022 Order denying his Motion for Release Pending Appeal in this matter.

Respectfully submitted, this, 14th day of September, 2022.

> /s/ David A. Cox
> David A. Cox
> Georgia Bar No. 192381
> 2870 Peachtree Road, # 183
> Atlanta, GA 30305
> (404) 276-0798

3

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limitations of FED. R. APP. P. 27(d)(2)(A) because this motion does not exceed 20 pages and contains 687 words, excluding accompanying documents authorized by FED. R. APP. P. 27(a)(2)(B). This motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this motion has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.

This 14th day of September, 2022

/s/ David A. Cox
David A. Cox
Ga. Bar Number 192381

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on September 14, 2022. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

This 14th day of September, 2022

/s/ David A. Cox
David A. Cox
Ga. Bar Number 192381

5

# EXHIBIT P

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 22-10630-BB

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHALMER DETLING, II,
a.k.a. Chuck Detling,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

Before:  JORDAN and NEWSOM, Circuit Judges.

BY THE COURT:

"Defendant-Appellant's Motion for Review of Denial of Motion for Release Pending Appeal" is construed as a motion for reconsideration of our September 9, 2022, order and DENIED.