No. 22-10630-BB

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHALMER DETLING, II,

*Defendant-Appellant.*

On appeal from the United States District Court
for the Northern District of Georgia
No. 1:18-CR-00309-LMM-LTW-1

## BRIEF OF APPELLEE
## THE UNITED STATES OF AMERICA

RYAN K. BUCHANAN
*United States Attorney*

ALEX R. SISTLA
*Assistant United States Attorney*

SAMIR KAUSHAL
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303
(404) 581-6000

No. 22-10630-BB

*United States of America v. Chalmer Detling, II*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

In addition to those listed in Appellant's brief, the following people

have an interest in the outcome of this appeal:

Buchanan, Ryan K., United States Attorney

Capital Financing, Victim

Erskine, Kurt R., Former United States Attorney

Golden, Howard, Victim

Ghose, John S., Former Assistant United States Attorney

Pak, Byung J., Former United States Attorney

Parmer, Molly, Defendant's former counsel

Sommerfeld, Lawrence R., Assistant United States Attorney

United States of America, Appellee

No publicly traded company or corporation has an interest in the

outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The issues and positions of the parties, as presented in the record and briefs, are sufficient to enable the Court to reach a just determination.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure
    Statement.........................................................................C-1

Statement Regarding Oral Argument ................................................. i

Table of Contents ............................................................................ ii

Table of Citations ...........................................................................iv

Statement of Jurisdiction.................................................................ix

Statement of the Issues .................................................................... 1

Statement of the Case...................................................................... 2

    A. Course of Proceedings and Disposition Below..................... 2

    B. Statement of the Facts ......................................................... 3

        1.  Detling's scheme to defraud........................................... 3

        2.  The motion to strike and pretrial hearings...................... 4

        3.  Detling's trial. ............................................................... 8

            a. The Detling Law Group ............................................... 9

            b. The Financing Company Witnesses .......................... 11

            c. The Victim-Clients ..................................................... 14

            d. The Bank Accounts .................................................... 15

            e. Detling's defense........................................................ 16

        4.  The jury instructions and verdicts. ............................... 17

        5.  Detling's motion for a new trial and sentencing. .......... 23

    C. Standard of Review ............................................................ 23

Summary of the Argument............................................................. 25

Argument and Citations of Authority ........................................... 27

1.  The district court correctly denied Detling's eleventh-hour pro se motion to dismiss on speedy trial grounds because his Motion to Strike, which was addressed at a pretrial hearing, tolled the speedy trial clock....................................................... 27

2.  Overwhelming evidence showed that Detling knowingly defrauded the financing entities by obtaining litigation advances in his clients' names without their knowledge or permission. ............................................................................. 37

3.  Detling's constructive amendment claim based on the deliberate ignorance instruction fails under plain error review because Detling cannot demonstrate that any error affected his substantial rights considering the overwhelming evidence of his actual knowledge. .................................................................... 45

Conclusion...................................................................... 60

Certificate of Compliance and Service ......................................... 61

# TABLE OF CITATIONS

**Federal Cases**

*Enters., Inc. v. Fulton Cnty.,*
    242 F.3d 976 (11th Cir. 2001) ......................................................... 44

*Global-Tech Appliances, Inc. v. SEB S.A.,*
    563 U.S. 745 (2011) ............................................................... 57, 58

*Granda v. United States,*
    990 F.3d 1272 (11th Cir. 2021) ....................................................... 53

*Hedgpeth v. Pulido,*
    555 U.S. 57 (2008) ...................................................................... 53

*Henderson v. United States,*
    476 U.S. 321 (1986) ..................................................................... 28

*Jones v. United States,*
    527 U.S. 373 (1999) ..................................................................... 60

*Martin v. United States,*
    852 F. App'x 485 (11th Cir. 2021) .................................................... 53

*Molina-Martinez v. United States,*
    578 U.S. 189 (2016) ..................................................................... 55

*Stromberg v. California,*
    283 U.S. 359 (1931) ..................................................................... 53

*United States v. Adkinson,*
    135 F.3d 1363 (11th Cir. 1998) ....................................................... 53

*United States v. Al-Arian,*
    308 F. Supp. 2d 1322 (M.D. Fla. 2004) ............................................... 30

*United States v. Awan,*
    966 F.2d 1415 (11th Cir. 1992) ............................................. 29, 30, 33

*United States v. Baston,*
    818 F.3d 651 (11th Cir. 2016) ..................................................... 24, 37

*United States v. Bonilla,*
    579 F.3d 1233 (11th Cir. 2009) ....................................................... 45

*United States v. Browne,*
    505 F.3d 1229 (11th Cir. 2007) ....................................................... 43

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*United States v. Castronuovo*,
    649 F. App'x 904 (11th Cir. 2016) ................................................. 57

*United States v. Chrisley*, No. 1:19-cr-297-ELR,
    2022 U.S. Dist. LEXIS 14380 (N.D. Ga. Jan. 26, 2022)............... 29

*United States v. Clarke*,
    649 F. App'x 837 (11th Cir. 2016) ................................................. 55

*United States v. Dunn*,
    345 F.3d 1285 (11th Cir. 2003) ..................................................... 28

*United States v. Edwards*,
    526 F.3d 747 (11th Cir. 2008) ..........................................45, 46, 52

*United States v. Elbeblawy*,
    899 F.3d 925 (11th Cir. 2018) ....................................................... 46

*United States v. Elkins*,
    885 F.2d 775 (11th Cir. 1989) ....................................................... 53

*United States v. Ellis*,
    789 F. App'x 163 (11th Cir. 2019) ................................................ 27

*United States v. Fahey*,
    769 F.2d 829 (1st Cir. 1985) ......................................................... 29

*United States v. Fernandez*,
    553 F. App'x 927 (11th Cir. 2014) ................................................ 56

*United States v. Fleury*,
    20 F.4th 1353 (11th Cir. 2021)....................................................... 42

*United States v. Godwin*,
    765 F.3d 1306 (11th Cir. 2014) ............................................... 24, 37

*United States v. Harris*,
    376 F.3d 1282 (11th Cir. 2004) ............................................... 28, 36

*United States v. Hasson*,
    333 F.3d 1264 (11th Cir. 2003) ..................................................... 38

*United States v. Hernandez*,
    896 F.2d 513 (11th Cir. 1990) ....................................................... 38

*United States v. Holt*,
    777 F.3d 1234 (11th Cir. 2015) ............................................... 24, 46

*United States v. Hughes*,
    840 F.3d 1368 (11th Cir. 2016) ............................................... 23, 27

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

v

*United States v. Innocent,*
   977 F.3d 1077 (11th Cir. 2020) ..................................................... 49

*United States v. Iriele,*
   977 F.3d 1155 (11th Cir. 2020) ..................................................... 48

*United States v. Jernigan,*
   341 F.3d 1273 (11th Cir. 2003) ..................................................... 44

*United States v. Jiminez,*
   564 F.3d 1280 (11th Cir. 2009) ..................................................... 43

*United States v. Keller,*
   916 F.2d 628 (11th Cir. 1990) ....................................................... 45

*United States v. Kennard,*
   472 F.3d 851 (11th Cir. 2006) ......................................... 50, 55, 59

*United States v. Lejarde-Rada,*
   319 F.3d 1288 (11th Cir. 2003) ............................................. 41, 42

*United States v. Madden,*
   733 F.3d 1314 (11th Cir. 2013) ..................................................... 56

*United States v. Margarita Garcia,*
   906 F.3d 1255 (11th Cir. 2018) ..................................................... 55

*United States v. Olano,*
   507 U.S. 725 (1993) ...................................................................... 60

*United States v. Phillips,*
   936 F.2d 1252 (11th Cir. 1991) ............................................. 28, 36

*United States v. Pineda,*
   843 F. App'x 174 (11th Cir. 2021) ................................................ 56

*United States v. Puche,*
   350 F.3d 1137 (11th Cir. 2003) ..................................................... 49

*United States v. Ramirez,*
   426 F.3d 1344 (11th Cir. 2005) ............................................. 51, 53

*United States v. Rivera,*
   944 F.2d 1563 (11th Cir. 1991) ..................................................... 50

*United States v. Rodriguez,*
   398 F.3d 1291 (11th Cir. 2005) ........................... 40, 46, 51, 52, 60

*United States v. Rodriguez,*
   732 F.3d 1299 (11th Cir. 2013) ..................................................... 37

\*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*United States v. Schlei*,
  122 F.3d 944 (11th Cir. 1997) ....................................................... 48

*United States v. Sirang*,
  70 F.3d 588 (11th Cir. 1994) ....................................................... 49

*United States v. Starke*,
  62 F.3d 1374 (11th Cir.1995) ..............................................48, 49, 54

*United States v. Steed*,
  548 F.3d 961 (11th Cir. 2008) .................................................55, 59

*United States v. Thompson*,
  473 F.3d 1137 (11th Cir. 2006) ..................................................... 44

*United States v. Uces*,
  745 F. App'x 115 (11th Cir. 2018) ................................................ 53

*United States v. Veal*,
  839 F. App'x 341 (11th Cir. 2020) ................................................ 55

*United States v. Webman*,
  No. 1:13-cr-25-SCJ,
  2014 U.S. Dist. LEXIS 27504 (N.D. Ga. Jan. 6, 2014) ................. 30

*United States v. Williams*,
  314 F.3d 552 (11th Cir. 2002) ....................................................... 27

*United States v. Williams*,
  527 F.3d 1235 (11th Cir. 2008) ..................................................... 44

*United States v. Willis*,
  649 F.3d 1248 (11th Cir. 2011) ..................................................... 44

**Federal Statutes**

18 U.S.C. § 924(c) ................................................................... 56

18 U.S.C. § 3161(c)(1) ............................................................... 27

18 U.S.C. § 3161(h) ................................................................. 27

18 U.S.C. § 3161(h)(1)(D) .....................................................28, 37

18 U.S.C. § 3161(h)(1)(F) ........................................................... 28

18 U.S.C. § 3162(a)(2) ............................................................... 27

18 U.S.C. § 3231 ........................................................................ix

18 U.S.C. § 3742 ........................................................................ix

28 U.S.C. § 1291 ........................................................................ix

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

## Federal Rules

11th Cir. R. 28-5 ................................................................ 2

Fed. R. App. P. 4(b)(1)(A) ...............................................ix

Fed. R. App. P. 28(a)(8)(A) ........................................... 44

Fed. R. App. P. 32(a)(5) ................................................. 61

Fed. R. App. P. 32(a)(6) ................................................. 61

Fed. R. App. P. 32(a)(7)(B) ........................................... 61

Fed. R. App. P. 32(f) ...................................................... 61

Fed. R. Crim. P. 30(d) .................................................... 48

Fed. R. Evid. 404(b) ........................................6, 30, 33, 34

## Other Authorities

Eleventh Cir. Pattern Jury Instructions (Criminal Cases),
   Special Instruction No. 8 ............................................. 49

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 22-10630-BB

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHALMER DETLING, II,

*Defendant-Appellant.*

## STATEMENT OF JURISDICTION

(A)  The district court had subject matter jurisdiction over the underlying criminal case based on 18 U.S.C. § 3231.

(B)  The court of appeals has jurisdiction over this direct appeal from the judgment and sentence of the district court, under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

(C)  While not jurisdictional, the notice of appeal was timely filed on February 25, 2022, within 14 days of the entry of the district court's judgment and commitment order, on February 11, 2022. Fed. R. App. P. 4(b)(1)(A).

(D)  This appeal is from a final judgment and commitment order that disposes of all the parties' claims in this criminal case.

## STATEMENT OF THE ISSUES

1.  Whether the district court correctly denied Detling's *pro se*
    motion to dismiss on speedy trial grounds because his motion
    to strike surplusage from the indictment tolled the speedy trial
    clock.

2.  Whether there was sufficient evidence from which the jury
    could conclude that Detling was guilty of wire fraud and
    aggravated identity theft where the testimony and voluminous
    documentary evidence established that Detling's clients never
    authorized him to apply for litigation advances in their names,
    the financing companies dealt exclusively with Detling as to the
    fraudulent litigation advances, and Detling controlled the bank
    accounts into which the fraudulent advances were deposited.

3.  Whether Detling's unpreserved constructive amendment claim
    based on the district court providing an incomplete deliberate
    ignorance instruction requires reversal where there was
    overwhelming evidence of Detling's actual knowledge about the
    fraud.

## STATEMENT OF THE CASE

### A. Course of Proceedings and Disposition Below

In December 2018, Detling—a disbarred personal injury attorney—was indicted in a superseding indictment on seven counts of wire fraud and eight counts of aggravated identity theft. (Doc. 35). The charges arose from Detling's lengthy scheme to defraud two financing companies out of several hundred thousand dollars by using the identities of his law firm's clients without their knowledge to falsely claim they needed a form of litigation financing known as "litigation advances," when, in fact, they did not. (*Id.*-1-6).[1] Detling's scheme was uncovered while the State Bar of Georgia was investigating his mismanagement of client funds and other potential malfeasance. (Docs. 213-95-98; 215-80-89, 178).

Shortly before trial, the government dismissed several counts. (Doc. 168-41). On November 1, 2021, a jury found Detling guilty on the remaining counts. (Doc. 154). The district court sentenced Detling to 70 months' imprisonment, the low-end of his Sentencing Guidelines range. (Doc 183). Detling filed a timely notice of appeal. (Doc. 186). He is incarcerated.

---

[1] Page numbers to cited transcripts are the page numbers designated by the Court's ECF system. 11th Cir. R. 28-5.

### B. Statement of the Facts

#### 1. Detling's scheme to defraud.

Between October 2014 and January 2016, Detling defrauded two financing companies—Capital Financing and the Mighty entities ("Mighty")—by applying for and obtaining over $400,000 in fraudulent advances using his clients' personal identifying information without their knowledge or authorization. (GX-445). Litigation advances are modest non-recourse loans that are used by plaintiffs (typically in personal injury cases) for non-litigation related expenses, such as rent or medical bills. (Doc. 35-3-4 (¶ 10); Doc. 213-45-46). To obtain the advances, Detling provided information about his clients' cases while falsely representing that they were seeking a litigation advance. (Doc. 35-4-6 (¶¶ 11-20)). The financing companies in turn used this information to decide how much funding to advance. (*E.g.*, Doc. 216-161). If approved, the fraudulent litigation advances would be deposited or wired into Detling's law firm's IOLTA accounts, which he controlled. (*E.g.*, Docs. 217-187-188; 218-17-23; GX-350, GX-445). Detling never distributed any of the fraudulent advances to his clients but rather used the funds for his firm. (Doc. 218-189-190). His fraud was largely uncovered when a former employee reported him to the Georgia Bar in May 2016. (Docs. 213-95-98; 215-80-89, 178).

### 2. The motion to strike and pretrial hearings.

Detling made his initial appearance on August 10, 2018. (Doc. 10). On August 16, 2018, the magistrate judge issued a pretrial scheduling order setting a hearing for August 28, 2018. (Doc. 15). On August 22, 2018, Detling filed an unopposed motion to continue the pretrial conference and for an extension of time to file pretrial motions, which the magistrate judge granted. (Docs. 18, 21).

After receiving an additional continuance, Detling filed multiple counseled motions, including a motion to strike surplusage from the indictment ("Motion to Strike") on October 30, 2018. (Doc. 29). Detling requested that the following language about Detling's law license be struck:

> On or about October 31, 2016, the Supreme Court of Georgia accepted DETLING's petition for voluntary surrender of his law license, which the Supreme Court of Georgia described as "tantamount to disbarment." DETLING is currently not licensed to practice law in the State of Georgia.

(*Id.*-2). The government filed its response in opposition to Detling's pretrial motions, including the Motion to Strike, on December 14, 2018. (Doc. 33). In the interim, the government obtained a superseding indictment to address a concern raised in a jurisdictional motion that Detling had filed. (Docs. 26, 35, 33-7). The language that

was the subject of Detling's Motion to Strike remained in the superseding indictment. (*Compare* Doc. 1-1 (¶ 1) *with* Doc. 35-1 (¶ 1)).

On January 14, 2019, Detling was arraigned on the superseding indictment, and a pretrial conference was scheduled for February 6, 2019. (Docs. 42, 43). On March 21, 2019, a minute entry was entered labeled "order to continue" and noting that on March 4, 2019, Detling notified the court that "he would not file any additional motions and . . . [he] is ready for a ruling on the motions that he previously filed."[2] The minute entry also stated that it was excluding time between February 6 and April 6, 2019. Detling did not object to the magistrate judge's minute order.

On April 30, 2019, the magistrate judge issued a report and recommendation ("R&R") denying several of Detling's motions, and deferred ruling on his Motion to Strike. (Doc. 45; Apr. 30, 2019 minute orders). On May 29, 2019, the district court overruled Detling's objections to the R&R and deferred ruling on the Motion to Strike. (Doc. 52).

On October 13 and 19, 2021, the district court held two lengthy pretrial conferences. (Docs. 139, 140). During these conferences, which Detling did not attend, the district court addressed his Motion to Strike among many other evidentiary issues raised by the parties'

---

[2] The minute entry does not have a docket number.

motions *in limine*, which would ultimately require the government to redact certain items, including the indictment and several exhibits, consistent with the court's rulings. (Docs. 139, 140, 168-43, 168-45-62, 169-96, *see also* 212-15). As for the Motion to Strike, which Detling's counsel raised at the October 13th conference (Doc. 168-45-46), the district court addressed it in the context of the parties' arguments about whether any aspect of the Georgia Bar's investigations was admissible as either intrinsic or 404(b) evidence and whether evidence that Detling voluntarily surrendered his license and was no longer licensed to practice should not be admitted because of the risk of unfair prejudice. (Doc. 168-45-62; *see also* Docs. 105, 122). While concluding that certain aspects of the Georgia Bar's investigations were admissible (Doc. 168-51-52), the district court excluded as unfairly prejudicial evidence that Detling voluntarily surrendered his license in response to the investigations, and that was the reason he was no longer practicing law. (*Id.*-60-61). After doing so, Detling's counsel specifically raised a concern about the language in the indictment—the same language Detling wished to strike—that stated: "Mr. Detling is currently not licensed to practice law in the State of Georgia." (*Id.*-62). The district court ruled:

> Let's change that. It's the license that's the problem. I don't
> want the jury to know that he is not licensed, but it's fine to
> know that he is not practicing law.

(*Id.*).

The district court did not issue a written order following the
October 13th hearing, but its minute order memorializing the hearing
expressly addressed the need for the government to redact the
indictment as requested in Detling's Motion to Strike:

> The Court excluded testimony that Mr. Detling voluntarily gave
> up his license unless the door is opened by defense counsel.
> The Court ordered the Government to revise the Indictment to
> remove language that the defendant is not licensed and to
> confer with defense counsel as to other possible changes.

(Doc. 139-2).

Detling's trial began eight days later, on October 21, 2021. Just
minutes before jury selection, Detling—although represented by
counsel—was permitted to make a *pro se* oral motion to dismiss the
indictment on speedy trial grounds. (Doc. 212-10-14). He argued that
the magistrate judge had made an insufficient ends-of-justice finding
to exclude certain time and that the district court did not resolve his
Motion to Strike at the pretrial conference, but if it did, it had done
so without a hearing. (*Id.*). Detling suggested that if the Motion to

Strike was resolved without a hearing, then the speedy trial clock would not be tolled. (*Id.*-13). The district court rejected his argument:

> Mr. Detling's argument was premised on the fact that [the Motion to Strike] was not discussed during the pretrial conference. That is incorrect. I looked at detail at this motion, and in fact I have basically ruled in your favor . . . . so not only was it discussed, it was something that I told the government that they needed to take another look at the indictment . . . [and] there [were] a few things that needed to be straightened out in terms of the counts, the specific information that was listed in this motion and to the extent there was anything else that needed to be narrowed before the Court could make a final decision about the appropriateness of the indictment, but this specific issue was addressed.

(*Id.*-15). Detling's counsel did not take issue with the district court's characterization of the pretrial conference. The court also issued a minute entry memorializing its exchange with Detling. (Doc. 143).

### 3. Detling's trial.

At trial, the jury heard from nearly two dozen witnesses, including the owners of the defrauded financing companies, twelve of Detling's victim-clients, several of his former colleagues, and the deputy general counsel of the State Bar of Georgia, who oversaw its multiple investigations into Detling. The government also introduced over 400 exhibits, including bank records, voluminous email correspondence between Detling and the financing companies, the fraudulent

8

litigation advance contracts/applications, and various documents and excepts from the Georgia Bar's investigations.

### a. The Detling Law Group

Detling was the founding partner and owner of the Detling Law Group, a small personal injury firm based in Marietta, Georgia. (Docs. 213-57, 174; 216-241; 217-176-177). He controlled every aspect of the firm, ranging from its finances to how to resolve cases, including whether and for how much to settle. (Docs. 213-175, 177-180, 224; 214-223, 225, 227, 232-233, 252-253; 215-32-33; 216-194-195, 242; 217-175; 218-20-21, 23-24).

In late 2013, Detling hired Aimee Ingram as a receptionist. (Doc. 214-221). Ingram, who testified at trial, later became the firm's paralegal and office manager. (*Id.*-227). She testified that Detling confessed to obtaining the litigation advances without the client's knowledge and was the one who ultimately disclosed Detling's fraudulent scheme to the Georgia Bar. (Doc. 215-80-89). The firm also employed several other attorneys, including Mackenzie Cole, Brooks Neely, and Ben Copeland, all of whom testified at trial. Cole started with Detling Law Group in April 2013 (Doc. 217-176), Neely joined sometime in 2013 as an intern initially before becoming an associate in 2014 (Doc. 213-172-176), and Copeland joined in March 2014. (Doc. 216-241). When Cole joined the firm, this was her first job out

9

of law school. (Doc. 217-176). Copeland was a friend of Detling's. (Doc. 216-240, 242). He was also one of Detling's victims—Detling applied for a fraudulent litigation advance using Copeland's personal information. (*Id.*-246-257).

In June 2014, Detling announced he was shutting down the firm and laying off everyone. (Docs. 213-177; 214-239). Shortly thereafter, Detling agreed to reopen the firm and it was eventually renamed Detling Cole with Cole assuming the role of "managing partner." (Docs. 213-186-189; 214-258-259). The title did not confer Cole with any greater authority, and Detling remained in charge. (Docs. 213-215-216, 224; 214-251-252; 217-260-261). It was understood by both the firm's employees and clients alike that Cole did not have any real authority. (Docs. 213-177-180, 189-190, 199, 224; 214-251-252; 216-242). This remained true even after Detling's younger daughter was diagnosed with brain cancer in July 2014. (Docs. 213-180, 183, 224; 214-244-253, 268-270 218-225). Although his daughter's illness took Detling away from the office somewhat, he was still available by phone or email and no major decisions could be made without his sign-off. (Docs. 214-251-253, 270; 217-181-182; 218-23-24) Because the firm suffered from cash flow issues (*e.g.*, Doc. 213-191), including struggling to cover payroll (*e.g.*, *id.*-226), Cole personally loaned it $45,000 that she inherited from her grandmother in October 2015.

(Doc. 217-256-263). In January 2016, Cole and Detling had a falling out and she left the firm. (Docs. 215-19-21; 217-264-265). Cole never recouped the money she lent the firm. (Doc. 217-266-267).

### b. The Financing Company Witnesses

Four witnesses from the defrauded financing companies testified. Dr. Howard Golden and Caitlin Wade Caballero testified on behalf of Capital Financing (Docs. 214-99-213; 217-90-172). Dr. Golden was Capital Financing CEO and Caballero was an account manager and later, after a series of promotions, its director of operations. (Docs. 214-99-107; 217-90) As for Mighty, its CEO, Josh Schwadron, and Hugh Brammer, its chief underwriter, testified at trial. (Docs. 215-187-270; 216-6-88, 141-203) Each of these witnesses testified—and this testimony was corroborated by voluminous email correspondence and business records—that they dealt exclusively with Detling on the fraudulent litigation advances and had they known that his clients neither authorized the advances nor received the funds, they would never would have approved them. (Docs. 214-143; 215-194-195, 213; 217-101, 120-121).

For Capital Financing, Detling was the exclusive point of contact—he was listed as the attorney on the applications for the fraudulent litigation advances, he executed the contracts (GX-43, GX-47, GX-54, GX-57, GX-60, GX-70, GX-76, GX-81), and he picked up and

endorsed each of the fraudulently obtained checks. (GX-101 through GX-109, GX-131; Doc.-214-133-134). Caballero and Dr. Golden testified that Capital Financing communicated exclusively with Detling about the status of repayment. (GX-14 through GX-18 (email correspondence between C. Wade and C. Detling); Doc. 217-117). And Detling himself stipulated to many of these facts in proceedings before the Georgia Bar. (GX-379, GX-386). The evidence also showed that Detling was able to conceal his fraud from Capital Financing, in part, by exploiting his friendship with Golden. (Doc. 217-103-104, 109, 111-113, 118).

As for Mighty, Schwadron's and Brammer's testimony mirrored that of Caballero and Dr. Golden. They both detailed communicating exclusively with Detling about the fraudulent litigation advances. (Docs. 215-213; 216-29, 87, 156-157). And though Schwadron and Brammer mainly communicated with Detling via email, they both spoke with him on the phone and met with him in person on a few occasions. (Docs. 215-210-213; 216-148-150; GX-231, GX-253). Both men testified that they relied on Detling's representations as to why his clients needed litigation advances and in deciding whether and how much funding to provide. (Doc. 216-156-157, 161-162).

Hundreds of emails between Detling and Schwadron, Brammer, or other Mighty employees corroborated this testimony. For example,

emails showed Detling repeatedly making false representations to Mighty ranging from the reasons his clients needed litigation advances, to the nature of their injuries, to even the fact that he had met with them. (*See, e.g.*, GX-254, GX-257, GX-264). Detling also signed each of the Mighty agreements[3] and provided the wiring instructions for where to send the fraudulently obtained funds.[4] To stave off detection, Detling provided semi-fictitious case updates to Schwadron (*e.g.*, GX-171, GX-204, GX-286), falsely tried to blame Cole for the fraud (GX-272), or generally stalled and delayed. (GX-271, GX-273 through GX-282). After Mighty learned of Detling's fraud, Detling tried for months to pay off the advances, even using one client's settlement proceeds without his knowledge or permission (Doc. 218-177-181), before ultimately reaching an agreement with Mighty to "release" his former clients from any liability. (GX-400).

_____

[3] The contracts corresponding to the charged counts were GX-161, GX-165, GX-172, GX-178, and GX-336. The government also presented evidence and testimony regarding other fraudulently obtained litigation advances from Mighty for uncharged victim-clients. *See* GX-146, GX-147, GX-148, GX-150, GX-161, GX-168, GX-338, GX-339.

[4] GX-138 (Affinity Bank wiring information); GX-145, GX-185 (Georgia Commerce wiring information); GX-186, GX-187 (SunTrust wiring information).

### c.  The Victim-Clients

The jury heard from twelve victim-clients, including five identified in the indictment. Each one offer unrebutted testimony that they never signed or authorized any of the fraudulent financing contracts/applications in question. (Doc. 219-37-38 (government's closing summarizing victim-witness testimony)). Nor, with one exception,[5] would they have authorized Detling to obtain a litigation advance if he asked. To the contrary, several victim-clients testified that they expressly told Detling that they did not want a litigation advance. (*See, e.g.*, Doc. 214-46-47; 216-221-222). And others testified that they never had any substantive discussions with Detling about their cases, let alone discussions about litigation advances. (Docs. 216-113; 218-125-126). Each of the victim-clients likewise testified that they never received any of the funds from the financing companies. FBI Special Agent Antoinette Ferrari confirmed this was the case by explaining to the jury that she had traced the fraudulently obtained litigation advances and found that none of them went to any of Detling's clients, but was rather used for the firm's expenses,

---

[5] One of the victim-clients, Holly Miller, had obtained a legitimate litigation advance. (Doc. 214-26-28). Detling subsequently obtained a fraudulent one in her name. (*Id.*-29-36).

including "salaries, professional fees, rent, and . . . office supplies."

(Doc. 218-189-190).

### d. The Bank Accounts

The government introduced bank records showing that Detling was the sole signatory for two of the accounts—the law firm's IOLTA accounts at Affinity Bank and Georgia Commerce Bank—that received a combined thirteen fraudulent litigation advances, and one of two signatories (along with Cole) on the SunTrust Bank x0526 account, into which most of the fraudulent litigation advances were wired or deposited.[6]

Detling's former colleagues, Ingram and Cole, testified without contradiction that they did not have access to or control over the Affinity or Georgia Commerce accounts. (Doc. 214-232-235, 261, 264; Doc. 217-187). And while they were either a signatory or had access to the SunTrust account, Detling was the one who controlled that account as well. (Docs. 215-13, 18-19; 217-187-188; 218-17-23).

The following evidence corroborated that Detling controlled the SunTrust x0526 account: (i) an affidavit Detling filed with the Georgia Bar in which he admitted to controlling the account and

---

[6] *See* GX-331, GX-332 (Affinity signature cards); GX-84, GX-85 (Georgia Commerce signature cards); GX-93 (SunTrust signature card).

15

stating that Cole did not (GX-350); (ii) months of correspondence between him and the Georgia Bar about the account being overdrawn (GX-341 through GX-345; GX-434 through GX-439); and (iii) multiple admissions he made when deposed by the Georgia Bar. (GX-386).

The government also introduced an exhibit summarizing the approximately 50 fraudulent litigation advances, totaling more than $400,000, that Detling had obtained between October 2014 and January 2016. (GX-445). Those funds were directed into the three bank accounts: the Affinity account received six fraudulent advances in October 2014, the Georgia Commerce account received seven fraudulent advances between October 2014 and January 2015, and the SunTrust account received thirty fraudulent wires and deposits between February 2015 and January 2016. (*Id.*).

### e.  Detling's defense

Detling's theory of defense varied over the course of the trial. At different points, Detling offered that: (i) he could not have possibly committed the fraud because he was "absent" from the firm (Doc. 219-75, 82); (ii) his former colleagues—Ingram and Cole—were to blame because they were motivated to see the firm succeed (*Id.*-79, 82, 84-85); (iii) someone hacked his email and was responsible (*Id.*-78-79); or (iv) he acted in good faith by supposedly relying on information

16

provided by colleagues or perhaps the clients' implicit authorization to obtain the litigation advances. (*Id.*-62, 63, 72-73, 85-86). In addition to vigorously cross examining the government's witnesses, Detling called two witnesses: he recalled Ingram and had his wife testify briefly about his daughter's illness. (Doc. 218-216-226).

At the close of evidence, Detling renewed his Rule 29 motion for judgment of acquittal. He raised four arguments: (i) the government failed to satisfy the interstate wire element of wire fraud; (ii) there was generally a prejudicial variance between the evidence presented at trial and as alleged in the indictment; (iii) with respect to one wire fraud count the source of the alleged financing source varied from the evidence at trial; and (iv) Detling had authority to apply for the litigation advances without the clients' express authorization based purportedly on "power of attorney" language in his engagement letters. (Doc. 218-236-238, 252). The district court orally denied his motion. (*Id.*-251-255; Doc. 157))

### 4. The jury instructions and verdicts.

The parties filed proposed jury instructions before the trial began. (Docs. 136, 137). As relevant here, neither party's proposal included a request to instruct the jury on deliberate ignorance, but Detling did request a good faith instruction. (Doc. 137-12).

17

On October 28, 2021, before the government concluded its case-in-chief, the district court held the first of several charge conferences. (Doc. 157). During the conference, the government objected to Detling's proposed good faith instruction. (Doc. 166-9). Detling argued that a good faith instruction was appropriate because a jury could find that he applied for the litigation advances only because Cole and Ingram allegedly told him that the clients wanted advances when in fact they did not. (*Id.*-11-13.) The court deferred ruling on the government's objection, noting that it first wished to hear the rest of the evidence, especially the cross examination of Cole. (*Id.*-14.)

The next day, October 29, 2021, after the parties had rested, the court held a second charge conference during which Detling's "theory of the defense" instruction was discussed. (*Id.*; Doc. 170-4.) The court declined to give Detling's requested "theory of defense" but afforded him an opportunity to brief the issue. (*Id.*) On Saturday, October 30, 2021, Detling filed a brief in support of his "theory of defense" instruction. (Doc. 150). He wanted the jury instructed that it "must acquit based on acts committed by another person." (*Id.*-4). The next day the government responded that Detling had offered no authority to support his proposed theory (Doc.-1-3) and requested—if the court provided Detling's proposed good faith instruction—that the jury be instructed on deliberate ignorance as well. (*Id.* at 6–8 (proposing the

district court provide the Eleventh Circuit's pattern deliberate ignorance instruction with a modified example).[7] The government further requested the court to instruct the jury on "aiding and

_____

[7] The government]'s proposed instruction read:

If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist.

"Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant submits applications for or receives funds from litigation advance companies and believes those applications or funds are for litigation advances for which the plaintiff-clients never asked for the funds but deliberately avoids learning that the plaintiff-clients never asked for the funds so he can deny knowledge of the fact that the plaintiff-clients never asked for the funds.

So, in this example, you may find that a defendant knew that the litigation advance applications or funds were never asked for by the plaintiff-clients if you determine beyond a reasonable doubt that the defendant (1) actually knew that the plaintiff-clients had never asked for the funds, or (2) had every reason to know but deliberately closed his eyes. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew that the plaintiff-clients had not asked for the applications or funds.

(Doc. 152-7).

abetting" in anticipation of Detling's closing argument. (*Id.*-8). The government was concerned, based on Detling's repeated claims that any involvement of another individual would require his acquittal, that Detling would argue to the jury—misleadingly and incorrectly—that he should be acquitted merely because someone else performed a relevant act, regardless of whether he was otherwise criminally culpable for the act under the law.

On the morning of November 1st, the court held a third charge conference. (Doc. 158). The court provided the parties a working draft of its proposed jury instructions, which included both deliberate ignorance and aiding and abetting instructions, and explained that it was providing Detling an opportunity to respond to the government's objections and additional proposed instructions. (Doc. 167-1-2, 7-8). Detling argued that the aiding and abetting instruction was improper because the government had not "identified someone in addition to the principal . . . some sort of other wrongdoer." (*Id.*-9). The government explained, in response, that Detling's "own arguments for why they think other folks were involved are the very reasons why aiding and abetting should be included as an instruction[.]" (*Id.*-13).

As for the deliberate ignorance instruction, the court explained its proposed instruction was "the language, but without the example."

(*Id.*-10). Detling's trial counsel objected to providing any deliberate ignorance instruction:

> Yes, Judge. I don't think that that is appropriate here because a deliberate ignorance instruction even in part would only be appropriate if there was actual evidence that Mr. Detling had in some way attempted not to know information in this case. And I don't think there's been any sort of evidence that the government's presented or that we've argued that he was trying to, you know, willfully try not to find out information that would have been important in the case.

(*Id.*-10-11). Detling further offered that any deliberate ignorance instruction was not appropriate because "it's a perfectly reasonable thing [for him] to rely on people, one of which described themselves as a managing partner of the firm or a bookkeeper or other people in the firm." (*Id.*-12). Although Detling objected to the court instructing the jury at all on deliberate ignorance, he never objected to the district court's phrasing of the instruction. (*Id.*-10-12, 18-19).

The district court rejected Detling's arguments. It refused to give his theory of defense because "it was an inaccurate statement of the law" (*Id.*-15) and concluded that the aiding and abetting instruction was appropriate because "the Eleventh Circuit case law is clear on this." (*Id.*-16). The court also agreed to instruct the jury on deliberate ignorance but omitted the pattern instruction's example because "it just started to get more complicated than it should be." (*Id.*-14-15).

When offered an opportunity to raise any other concerns, Detling asked the court to reconsider including a portion of the "theory of defense" language that the Court itself had drafted to "counterbalance . . . if the government is going to be allowed . . . [to] argue aiding and abetting." (*Id.*-17-18). The court rejected Detling's request—reiterating that the aiding and abetting instruction was appropriate given "the way the evidence came in"—and offered him another opportunity to raise any issues. (*Id.*-18-19). Detling had no further objections. (*Id.*-19). Nor did he argue that the district court's proposed instructions constructively amended the indictment. (*Id.*-17-19). The court ultimately gave the following deliberate ignorance instruction:

> If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

(Doc. 158-11). In doing so, the court omitted—without either party noticing or bringing it to the court's attention—the phrase "deliberate avoidance of positive knowledge—which is the equivalent of knowledge" from the pattern instruction (this phrase appears in both the pattern instruction and the government's proposed one).

22

The parties thereafter presented closing arguments, during which the government emphasized that the evidence showed Detling alone executed the fraud. (Doc. 219-58-59, 90-92). The jury convicted him on all counts that afternoon after about an hour of deliberations. (Docs. 154, 181-18).

### 5. Detling's motion for a new trial and sentencing.

In his post-trial motion for a new trial, Detling raised for the first time that the district court's deliberate ignorance instruction constructively amended the indictment. (Doc. 170-10, 15-16). The district court rejected Detling's arguments in a written order for among other reasons there was "copious evidence" of his actual knowledge. (Doc. 181-7-11). In February 2022, the court sentenced Detling to 70 months' imprisonment, which was at the low end of his advisory Guidelines range. (Doc. 183).

### C. Standard of Review

1. The denial of a defendant's Speedy Trial Act motion is reviewed de novo, though the district court's factual determination on excludable time is reviewed for clear error. *See, e.g., United States v. Hughes*, 840 F.3d 1368, 1378 (11th Cir. 2016).

2. This Court typically reviews "de novo the sufficiency of the evidence to support a conviction, viewing the evidence in the

light most favorable to the verdict and drawing all reasonable inferences and credibility choices in the verdict's favor." *United States v. Godwin*, 765 F.3d 1306, 1319 (11th Cir. 2014) (quotation marks omitted). But "[w]hen a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, [this Court] review[s] his argument for plain error." *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) (citations omitted).

3. An unpreserved constructive-amendment claim is reviewed for plain error. *See, e.g., United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015)

## SUMMARY OF THE ARGUMENT

The district court did not violate the Speedy Trial Act. Detling's motion to strike surplusage from the indictment tolled the speedy trial clock from the date he filed the motion until when the court resolved it at a pretrial trial hearing shortly before trial. Under this Court's precedents, the district court appropriately deferred resolving the Motion to Strike until shortly before trial because ruling on such motions typically requires a greater understanding of the evidence and whether the allegedly offending language should be struck or not. And, here, the record unmistakably demonstrates that the district court first needed to resolve the parties' motions *in limine*—in particular those addressing the admissibility of evidence relating to the Georgia Bar's investigations into Detling—before ruling on the Motion to Strike.

The evidence was not only sufficient but overwhelmingly supported the jury's verdicts that Detling knowingly defrauded the financing entities by using his clients' personal identifying information without their permission. The evidence showed that Detling prepared—without his clients' knowledge or authorization—applications for approximately 50 fraudulent litigation advances, that Detling was the exclusive point of contact for the financing companies about the litigation advances, that Detling provided the financing

25

companies with wiring instructions for the bank accounts into which the fraudulent advances were deposited and that Detling controlled, and that Detling actively took steps to conceal the fraud from the financing companies. Detling himself admitted in the Georgia Bar's investigation and in a settlement agreement with Mighty that his clients neither authorized the advances nor received any of the funds.

Detling's constructive amendment claim fails on plain error review. He did not raise a constructive amendment claim during trial—only first raising this issue in his post-trial motion for a new trial. Nor did Detling's generalized objection to the deliberate ignorance instruction preserve his constructive amendment claim. Detling objected to the district court providing any deliberate instruction. He never objected to the precise wording of the actual instruction. So his constructive amendment claim is reviewed for plain error, and fails because Detling cannot satisfy his burden of demonstrating that any purported error affected his substantial rights or seriously affected the fairness or integrity of his trial because there was overwhelming evidence of his actual knowledge and participation in the fraud.

ARGUMENT AND CITATIONS OF AUTHORITY

1. **The district court correctly denied Detling's eleventh-hour pro se motion to dismiss on speedy trial grounds because his Motion to Strike, which was addressed at a pretrial hearing, tolled the speedy trial clock.**

The Speedy Trial Act requires the trial of a defendant to commence within seventy days "from the filing date and making public of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "When the clock is triggered by a defendant's first appearance, the clock begins after the defendant's appearance." *United States v. Hughes*, 840 F.3d 1368, 1377 (11th Cir. 2016) (citing *United States v. Williams*, 314 F.3d 552, 557 (11th Cir. 2002)). If a trial does not begin within seventy days, an indictment shall be dismissed with or without prejudice on motion of the defendant. 18 U.S.C. § 3162(a)(2).

In calculating this seventy-day period, however, certain events may "toll" the speed trial clock. 18 U.S.C. § 3161(h). When the speedy trial clock is tolled, those days are deemed "excludable" or "not countable" toward the seventy-day period. *See, e.g., United States v. Ellis*, 789 F. App'x 163, 166 (11th Cir. 2019). The Speedy Trial Act excludes "any period of delay resulting from any pretrial motion, from

27

the filing of the motion through the conclusion of the hearing on, or prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Where a motion necessitates a hearing, "'[§ 3161(h)(1)(D)] excludes *all* time between the filing of the motion and the conclusion of the hearing at which it is addressed.'" *United States v. Harris*, 376 F.3d 1282, 1289 (11th Cir. 2004) (quoting *United States v. Dunn*, 345 F.3d 1285, 1292 (11th Cir. 2003)) (emphasis in original).[8] It does not matter "whether or not a delay in holding [the] hearing [was] 'reasonably necessary.'" *Henderson v. United States*, 476 U.S. 321, 330 (1986). Accordingly, "[t]he entire time from the filing of the motion to the conclusion of the hearing is excludable, *even when the hearing is deferred until trial*." *United States v. Phillips*, 936 F.2d 1252, 1254 (11th Cir. 1991) (citations omitted) (emphasis added).

Detling filed his Motion to Strike on October 30, 2018. (Doc. 29). At the time he filed his motion, just 11 days had elapsed under the Speedy Trial Act.[9] On April 30, 2019, the magistrate issued a written

---

[8] 18 U.S.C. § 3161(h)(1)(D) was previously codified at 18 U.S.C. § 3161(h)(1)(F). *Harris* and *Dunn* both reference the prior subsection.

[9] This is based on the number of days that elapsed between Detling's initial appearance on August 10, 2018 (Doc. 10) and when he filed his first unopposed motion to continue the pretrial conference and for an extension of time to file pretrial motions on August 22, 2018. (Doc. 18).

order addressing several of Detling's pretrial motions and made several minute entries noting which of his motions had been deferred to the district court, including Detling's Motion to Strike.[10] On May 29, 2019, the district court likewise entered an order that, in relevant part, deferred ruling on Detling's Motion to Strike until the pretrial conference. (Doc. 52). Accordingly, the Motion to Strike remained pending, and the Speedy Trial Act was tolled, throughout this entire period.

The magistrate court and district court's deferring ruling on the Motion to Strike was proper. "[I]t is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language[.]" *United States v. Awan*, 966 F.2d 1415, 1426 (11th Cir. 1992) (citing *United States v. Fahey*, 769 F.2d 829, 842 (1st Cir. 1985) (trial court did not abuse its discretion by waiting until hearing evidence in deciding not to strike certain alleged surplusage from the indictment)).[11] The need for a hearing—at or near the time of trial—on

---

[10] The April 30, 2019 entry relating to the motion strike read "ORDER deferring ruling on <u>29</u> Motion to Strike Surplusage as to Chalmer Detling III (1). Signed by Magistrate Judge Linda T. Walker on April 30, 2019. (LTW) (Entered: 04/30/2019)"

[11] *See also, e.g., United States v. Chrisley*, No. 1:19-cr-297-ELR, 2022 U.S. Dist. LEXIS 14380, at **14-15 (N.D. Ga. Jan. 26, 2022) ("The Magistrate Judge correctly observed that the Court possesses the right

a motion to strike is often necessary because the question of whether to strike certain language from an indictment is informed by the government's theory of prosecution and evidence at trial. That, in turn, may depend on the court resolving Rule 404(b) motions or other motions *in limine* that would typically not occur until shortly before trial or even during the trial itself. This was all true here.

The parties engaged in significant pretrial litigation regarding the scope of the government's evidence, which included the filing of more than a dozen motions *in limine* and responses[12] and required the district court to convene two lengthy pretrial hearings on October 13 and 19, 2021.[13] It was not until the district court resolved several of the issues raised in the motions *in limine* that the court ruled on Detling's Motion to Strike.

---

to reserve judgment on a motion to strike surplusage until a hearing before trial.") (citing *Awan*, 966 F.2d at 1426)); *United States v. Webman*, No. 1:13-cr-25-SCJ, 2014 U.S. Dist. LEXIS 27504, at **12-13 (N.D. Ga. Jan. 6, 2014) ("And, in order to determine whether the allegations are relevant to the charges and the evidence introduced at trial, '[t]he Court may reserve ruling on a motion to strike surplusage until hearing the evidence and determining its relevance at trial.'") (quoting *United States v. Al-Arian*, 308 F. Supp. 2d 1322, 1333 (M.D. Fla. 2004)).

[12] *See* Docs. 105, 106, 107, 109, 110, 113, 114, 117, 118, 119, 122, 123, 124, 125.

[13] *See* Docs. 139, 140, 143, 168, 212.

In his eleventh-hour *pro se* oral motion to dismiss, made the morning of trial, Detling claimed—without having attended either pretrial hearing or obtained the transcripts—that the district court had not considered his Motion to Strike based on the minute orders. (Doc. 212-12-13). And because Detling believed the motion "could have been and perhaps was decided without a hearing" he argued that this resulted in a "presumptively prejudicial amount of delay which would warrant a dismissal with prejudice." (*Id.*-13-14). In response, the district court explained that the Motion to Strike was considered at the pretrial conference:

> [T]o the extent that you were concerned this issue [(the Motion to Strike)] was not taken up at the pretrial conference, that is inaccurate. We did talk about the indictment, and I did order the government to redact the information about you not being a licensed attorney or being disbarred. There was some language in there as it related to that . . . .

(Doc. 212-14). After a short recess, the court confirmed that it ruled on the Motion to Strike at the pretrial conference:

31

During the break I had a chance to look back over the docket. I re-read the motion to strike surplusage in the indictment which was Document 29. Mr. Detling's argument was premised on the fact that this motion was not discussed during the pretrial conference. I looked in detail at this motion, and in fact I have basically ruled in your favor on this motion. . . . So the motion for dismissal of the indictment for speedy trial, the arguments that were made today, they're not well-founded based upon the fact that this was talked about at the hearing.

(*Id.* 15).

Detling no longer contends—as he did below—that a hearing was unnecessary on his motion to strike. Nor does he directly challenge the decision of the magistrate judge and district court to defer the hearing until shortly before trial. (Def. Br. at 23). Rather, Detling argues, based on a key word search of the transcripts, that the district court's review of the record was wrong and in fact the court never addressed his motion to strike. (Def. Br. at 27-29). He maintains that absent such a hearing the speedy trial clock was never properly tolled. But the record from the pretrial conferences demonstrates that Detling is wrong.

As an initial matter, Detling, citing no authority from this Court, asserts that "only the Magistrate Judge could have held a hearing on the Motion to Strike." (Def. Br. at 23). This contradicts with his concession below that the magistrate judge had "the right to defer to [the district court]" the Motion to Strike. (Doc. 212-12). And without

32

acknowledging his prior concession, Detling suggests that the magistrate judge was somehow barred from deferring ruling under the Northern District of Georgia's local rules and the Federal Magistrate Act. (Def. Br. 22-23). But he cites no cases for the proposition that a magistrate judge may not defer a pretrial motion to the district court. (*Id.*). And with good reason, as the magistrate judge's decision to defer the Motion to Strike to the district court accords with this Court's binding precedent. As this Court held in *Awan*, "it is proper to reserve ruling on a motion to strike surplusage until the trial court has heard evidence that will establish the relevance of the allegedly surplus language[.]" 966 F.2d at 1426 (citation omitted).

This is what happened here. The parties filed multiple, overlapping motions and responses relating to the admissibility of the Georgia Bar's investigations into Detling, including his voluntary suspension of his law license, and whether the government would be able to discuss the investigations at all, or only select aspects of them, and if so, whether such evidence would be admitted as substantive evidence or 404(b) evidence. (*See, e.g.*, Docs. 105, 110-1-4, 122, 124-1-3, 125).

At the first pretrial conference on October 13, 2021, which lasted several hours, the district court recognized the challenge posed by the parties' motions, observing that "it was a little bit stuck as to how to organize [the hearing] because there are similar issues that come up in

different motions." (Doc. 168-44). The court suggested that it wanted

to first consider what of "Detling's testimony or documents or other

types of admissions would be admissible . . . and . . . go from there."

(*Id.*) In response, Detling's counsel suggested that as "preliminary

matter, we still have this motion to strike . . . about whether or not

the jury should know that . . . Detling . . . voluntarily gave up his

license, and, two . . . should [the jury] know . . . there are bar

proceedings at all." (Doc. 168-45). The district court replied that it

wished to first address whether the jury should hear about the Georgia

Bar's proceedings, or more accurately, its multiple investigations of

Detling. (*Id.*) This made sense because the determination of what to

admit from the Georgia Bar's investigations, which included

considering Detling's decision to voluntarily surrender his bar license,

would be relevant to deciding the Motion to Strike.

Over nearly eighteen pages of transcript, the parties argued

extensively about whether any aspect of the Georgia Bar's

investigations was admissible as either intrinsic or 404(b) evidence (*id.-*

45-52) and whether evidence that Detling voluntarily surrendered his

license and was no longer licensed to practice should not be admitted

because it was unduly prejudicial. (*Id.*-52-62). Although the district

court agreed that some aspects of the Bar's investigations were

admissible (*Id.*-51-52), it excluded as unfairly prejudicial evidence that

Detling voluntarily surrendered his license in response to the investigations, and that was the reason he was no longer practicing law. (*Id.*-60-61). After the court excluded evidence on the status and circumstances of Detling no longer being licensed, his counsel specifically raised a concern about the language in the indictment—the same language Detling moved to strike—that stated: "Mr. Detling is currently not licensed to practice law in the State of Georgia." (*Id.*-62). The district court ruled:

> Let's change that. It's the license that's the problem. I don't want the jury to know that he is not licensed, but it's fine to know that he is not practicing law.

(*Id.*).

Although the district court did not specifically reference Detling's Motion to Strike, its ruling could not be clearer: the government was to strike indictment language relating to the status of Detling's license. (*Id.*). This ruling was in fact reflected in the minute order for the October 13 hearing:

> The Court excluded testimony that Mr. Detling voluntarily gave up his license unless the door is opened by defense counsel. The Court ordered the Government to revise the Indictment to remove language that the defendant is not licensed and to confer with defense counsel as to other possible changes.

(Doc. 139-2).

At the second pretrial conference, there was a further discussion about redactions, and the court reminded the government that "obviously the stuff that the court has ordered redacted, the jury—nobody sees anything but the redacted copy." (Doc. 169-96). The district court was thus correct when it informed Detling on the morning of trial that he was "inaccurate" that the motion to strike "was not taken up at the pretrial conference." (Doc. 212-14).

Because Detling's motion to strike required a hearing to be resolved, and because the district court properly held a hearing on the motion, "[t]he entire time from the filing of the motion to the conclusion of the hearing [was] excludable" under the Speedy Trial Act. *Phillips*, 936 F.2d at 1254. Accordingly, there was no Speedy Trial violation because only 11 days had elapsed as of October 30, 2018—the date that Detling filed his Motion to Strike—and the entire time from that date until at least October 13, 2021 was otherwise properly excluded under the Act. *See, e.g.*, *Harris*, 376 F.3d at 1289 (no speedy trial violation where district court did not resolve motions to suppress until a hearing 22 months later).[14]

---

[14] Detling raises a separate argument that the period from February 10 to April 6, 2019, should not be excluded under the Speedy Trial Act because the magistrate judge's March 21, 2019 minute order did not make sufficient ends-of-justice findings. (Def. Br. at 30). But this is

## 2. Overwhelming evidence showed that Detling knowingly defrauded the financing entities by obtaining litigation advances in his clients' names without their knowledge or permission.

This Court typically reviews "de novo the sufficiency of the evidence to support a conviction, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences and credibility choices in the verdict's favor." *United States v. Godwin*, 765 F.3d 1306, 1319 (11th Cir. 2014) (quotation marks omitted). But "[w]hen a defendant raises specific challenges to the sufficiency of the evidence in the district court, but not the specific challenge he tries to raise on appeal, [this Court] review[s] his argument for plain error." *United States v. Baston*, 818 F.3d 651, 664 (11th Cir. 2016) (citations omitted).

A jury's verdict will not be "overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013) (citation omitted). The "evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence

---

of no moment, because, as explained above, the entire time between the filing of his motion to strike and the district court's consideration at the pretrial conferences was excludable under § 3161(h)(1)(D).

presented at trial." *United States v. Hernandez*, 896 F.2d 513, 517 (11th Cir. 1990).

To convict Detling of wire fraud, the government had to prove beyond a reasonable doubt that the defendant intentionally participated in a scheme to defraud and used the interstate wires in furtherance of the scheme. *See, e.g., United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). At trial, the government presented overwhelming evidence that Detling knowingly and intentionally participated in a scheme to defraud the financing companies.

First, the jury heard testimony from both Capital Financing and Mighty that they dealt with Detling exclusively on the fraudulent litigation advances. (Docs. 214-143; 215-213; 216-29, 87, 156-157). Their testimony was corroborated by voluminous email exchanges or other business records documenting that they dealt with Detling—not Cole or Ingram or someone else. (*E.g.,* GX-14 through GX-18; GX-256). In fact, the financing company witnesses testified that they never dealt with Cole on any of the litigation advances. (Docs. 215-213; 216-194, 201-202). And Cole testified that she had never sought a litigation advance on behalf of any clients. (Doc. 217-213).

Second, the evidence demonstrated that Detling was the one who personally executed the litigation advance applications or contracts and submitted them to the financing companies. The jury repeatedly

38

saw that it was Detling's signature on the applications (or contracts) and not that of Cole or Ingram or his clients.[15] The victim-clients uniformly testified that they never authorized Detling to apply for any of the fraudulently obtained litigation advances. (Doc. 219-37-38 (government's closing summarizing witness testimony)). And in several instances the victim-clients expressly told Detling that they did not want one. (*See, e.g.*, Doc. 214-46-47; 216-221-222).

Third, the jury heard multiple witnesses testify that Detling had complete control over everything at the Detling Law Group, and later Detling Cole, despite his daughter's illness. Each of the former Detling Law Group employees—Cole, Ingram, Neely, and Copeland—explained that Detling was in charge and no major decision was made without his sign-off. (*See supra* pp. 9-10).

Fourth, ample evidence showed that Detling controlled the Affinity, Georgia Commerce, and SunTrust bank accounts that received the fraudulent litigation advances based on the bank records, Cole's and Ingram's testimony, the email correspondence between Detling and both the financing companies and the Georgia Bar, and

_____

[15] For Capital Financing, the applications/contracts were the following exhibits: GX-43, GX-47, GX-54, GX-57, GX-60, GX-70, GX-76, and GX-81, and for Mighty: GX-146, GX-147, GX-148, GX-150, GX-161, GX-165, GX-168, GX-172, GX-178, GX-336, GX-338, and GX-339.

Detling's own admissions during the Georgia Bar proceedings. (*See supra* pp. 15-16).

Detling makes two arguments as to sufficiency. First, he claims that absent direct evidence he transferred the fraudulent litigation advances from the firm's IOLTA account to its operating account, there was insufficient evidence that Detling knowingly defrauded the financing entities. (Def. Br. at 36). He goes so far as to suggest that this was an "essential element of the scheme alleged by the government." (*Id.*) Because Detling did not raise this argument below, it should be reviewed for plain error.[16]

Under plain-error review, the burden is on Detling to establish: (1) error, (2) that is plain, and (3) that affects his substantial rights. *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005). If all

---

[16] Detling did not raise this argument in either his Rule 29 motion or closing argument. As noted above, Detling made several narrow arguments in his Rule 29 motion, which focused on whether the government has satisfied the interstate nexus, whether there had been a prejudicial variance at trial, and whether Detling had authority to apply for the litigation advances without his clients' express approval because he purportedly had the "power of attorney" to do so. (*See supra* p. 17 (citing Doc. 218-236-238, 252)). During his closing argument, Detling focused on challenging Cole's and Ingram's credibility: that they supposedly had access to the firm's bank accounts, or, in the alternative, he relied in good faith on information they provided him about the litigation advances. (Doc. 219-60-88).

40

three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* "An error is not plain unless the explicit language of a statute or rule specifically resolves the issue or there is precedent from the Supreme Court or Eleventh Circuit directly resolving it." *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

Detling fails to identify any error—much less plain error—and his argument ignores the overwhelming evidence detailed above that he knowingly and intentionally defrauded the financing entities. But regardless his sufficiency challenge fails under any standard of review.

The government alleged that Detling defrauded the financing companies by falsely representing that his clients required litigation advances. For the charged wire fraud counts, the offense was complete after Mighty wired the fraudulent litigation advances to the firm's IOLTA accounts, which Detling controlled. (Doc 35-7 (charged wires were interstate transfers from one of the Mighty entities to Detling's SunTrust account)). Detling is wrong that the government needed to show how the money was later transferred or that it had to specifically prove that Detling himself personally moved the funds from his IOLTA account to the firm's operating account. And tellingly, Detling

cites no cases in support of this proposition. *See Lejarde-Rada*, 319 F.3d at 1291.

To be sure, however, the government presented evidence tracing how the fraudulent litigation advances were used, including the fact that none of Detling's clients ever received any portion of the funds. (Doc. 218-189-190). The government also offered evidence of Detling's motive for committing the fraud, namely his firm's poor financial condition. (*Id.*; Docs. 213-191-193; 214-236-238).

Second, despite the damning evidence detailed above, Detling challenges the sufficiency of the evidence by offering—as he did to the jury—a hodgepodge of reasons why Cole and Ingram were supposedly behind the fraud scheme. (Def. Br. at 36-38). But these are essentially the same points Detling made in closing argument: that Ingram and Cole had access to the bank accounts; that they had been supposedly entrusted to operate the law firm, and that they were not credible. (*Compare* Def. Br. at 36-38 *with* Doc. 219-78-82, 84-87). Repeating the same arguments that the jury rejected does not provide a basis to overturn the jury's verdicts. *See United States v. Fleury*, 20 F.4th 1353, 1367 (11th Cir. 2021) ("We decline to invade the province of the jury by revaluating the experts' credibility and reweighing the evidence on appeal.").

If Detling is asking this Court to reverse his convictions based on reweighing Cole's and Ingram's credibility anew, that is not proper because this Court must "assume that the jury made all credibility choices in support of the verdict." *United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009). Cole's and Ingram's unrebutted testimony, which the bank records corroborated, was that they did not have access or control over two of the three bank accounts—Affinity and Georgia Commerce—that received more than a dozen fraudulent litigation advances. They also testified consistently that Detling had access and control over the SunTrust account and had ultimate control over the firm's finances. Detling had a full and fair opportunity to highlight for the jury the alleged shortcomings of their testimony, both through cross-examination and in closing argument. That the jury convicted Detling on all counts in a little over an hour after an eight-day trial shows that the jury rejected his attacks on their credibility. *See United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007) ("our sufficiency review requires only that a guilty verdict be reasonable, not inevitable, based on the evidence presented at trial").

At bottom, Detling's argument amounts to a complaint that the jury did not draw the same conclusion—no matter how implausible—from the evidence that he would have preferred, namely that Cole and Ingram were responsible for the fraud. But "[i]n rebutting the

43

government's evidence 'it is not enough for a defendant to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted but whether it reasonably could have found guilt beyond a reasonable doubt.'" *United States v. Williams*, 527 F.3d 1235, 1244 (11th Cir. 2008) (quoting *United States v. Thompson*, 473 F.3d 1137, 1142 (11th Cir. 2006) (alteration omitted)).

For the aggravated identity theft counts, Detling offers nothing beyond a throwaway sentence that they must fail if the wire fraud counts do. (Def. Br. at 38). Because Detling "fail[s] to elaborate or provide any citation of authority in support" of his argument, he has abandoned any challenge to his convictions on these counts. *Flangan's Enters., Inc. v. Fulton Cnty.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (citation omitted); *see also* Fed. R. App. P. 28(a)(8)(A). To raise a claim or issue on appeal, a party "must plainly and prominently so indicate." *United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003). By "fail[ing] to abide by this simple requirement, [Detling] has waived his right to have the court consider" his challenge to the aggravated identity theft convictions *United States v. Willis*, 649 F.3d 1248, 1254 (11th Cir. 2011) (citation omitted).

Even if his challenge were not waived, there was sufficient evidence to support the aggravated identity theft convictions. To convict

Detling of aggravated identity theft, the government had to prove that he (1) knowingly transferred, possessed, or used; (2) without lawful authority; (3) a means of identification of another person or a false identification document (4) during and in relation to the wire fraud offenses. *See, e.g., United States v. Bonilla*, 579 F.3d 1233, 1242 (11th Cir. 2009). The government's evidence established that Detling used the identities of his victim-clients without their knowledge or authorization to obtain the fraudulent litigation advances that were subsequently wired into his law firm's IOLTA accounts that he controlled. (*See supra* pp. 11-16.)

3.  **Detling's constructive amendment claim based on the deliberate ignorance instruction fails under plain error review because Detling cannot demonstrate that any error affected his substantial rights considering the overwhelming evidence of his actual knowledge.**

Detling does not challenge on appeal the district court's decision to instruct the jury on deliberate ignorance. Rather, he raises an issue he only first raised in his post-trial motion for a new trial—that the district court constructively amended the indictment by providing an incomplete deliberate ignorance instruction. (Compare Br. at 39-43 with Doc. 170-8-10; *see also* Doc. 194-7-13).[17] Detling claims that by

_____

[17] "A constructive 'amendment occurs when the essential elements of the offense are altered to broaden the possible bases for conviction beyond what is contained in the indictment.'" *United States v. Edwards*,

omitting the portion of the pattern instruction referencing the defendant's "deliberate avoidance of positive knowledge" the district court purportedly "broaden[ed] the possible bases for conviction beyond what [was] contained in the indictment" by improperly instructing the jury as to knowledge. (Br. at 42-43). Because Detling did not raise this issue below, his claim is reviewed for plain error. *See, e.g.*, *United States v. Holt*, 777 F.3d 1234, 1261 (11th Cir. 2015) ("[W]e review an unpreserved constructive-amendment claim only for plain error.") (citation omitted); *United States v. Elbeblawy*, 899 F.3d 925, 938 (11th Cir. 2018) (raising a constructive amendment claim in post-trial briefing is insufficient to preserve the issue).

As stated above, to prevail on plain error review, Detling must establish: (1) error, (2) that is plain, and (3) that affects his substantial rights. *Rodriguez*, 398 F.3d at 1298. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Detling never objected during the charge conference—or at any point before the jury began its deliberations—that the deliberate ignorance instruction resulted in a constructive amendment. While

--------------------------------------------------

526 F.3d 747, 760 (11th Cir. 2008) (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)) (alterations omitted).

Detling suggests that his objection to the deliberate ignorance instruction was sufficient to preserve his constructive amendment claim, (Def Br. at 47), he is incorrect.

Detling's argument begins with the proposition that counsel's statement: "It's essentially a portion of the pattern deliberate ignorance charge" placed the district court on notice that he objected to the *actual language* of the instruction. (*Id.* (citing Doc. 167-10-11)). But this ignores that his objection was whether the district court should provide the deliberate ignorance instruction at all, rather than the wording of the district court's proposed instruction:

> Court: Yes, it's the language [of the deliberate ignorance instruction], but without the example.

> Counsel: Yes, Judge. I don't think that that is appropriate here because a deliberate ignorance instruction *even in part* would only be appropriate if there was actual evidence that Mr. Detling had in some way attempted not to know information in this case. And I don't think there's been any sort of evidence that the government's presented or that we've argued that he was trying to, you know, willfully try not to find out information that would have been important in the case.

(Doc. 167-10-11 (emphasis added)).

As the district court correctly understood, Detling objected to the jury receiving *any* deliberate ignorance instruction, rather than the proposed language of the instruction. (*See* Doc. 181-8-9 n.4 ("[A]t trial,

47

the Court specifically asked the parties whether they opposed the modification; the Government explained that it agreed, and [Detling] did not object to the modification.")). Indeed, after the above exchange, the court and defense counsel continued to discuss whether the deliberate ignorance instruction was even appropriate. (Doc. 167-11-12). And when the district court afforded Detling additional opportunities to object or comment on the jury instructions, he focused on its refusal to provide a "theory of defense" instruction rather than raise any concerns with the proposed wording of the deliberate ignorance instruction. (*Id.*-10-19).

Federal Rule of Criminal Procedure 30(d) requires a party to "inform the court of the specific objection and ground for objection before the jury retires to deliberate." *United States v. Iriele*, 977 F.3d 1155, 1177 (11th Cir. 2020) (noting that plain error applies to any unpreserved objections to jury instructions). It is not enough, as is the case here, to preserve an issue by generally objecting to a particular instruction. *See United States v. Schlei*, 122 F.3d 944, 974 (11th Cir. 1997) ("Although Schlei objected to the deliberate ignorance instruction at trial, he did not raise this specific contention before the district court. 'In order to preserve an objection to jury instructions for appellate review, a party must object before the jury retires, stating distinctly the specific grounds for the objection.'") (quoting *United*

48

*States v. Starke*, 62 F.3d 1374, 1380-81 (11th Cir.1995)); *see also United States v. Puche*, 350 F.3d 1137, 1148 n. 5 (11th Cir. 2003) (where defendants objected to the deliberate ignorance instruction on different grounds on appeal, plain error applied); *United States v. Sirang*, 70 F.3d 588, 594 (11th Cir. 1994) (holding the objection must be specific enough to give a court an opportunity to correct errors before the case goes to the jury). Detling's generalized objection to the deliberate ignorance instruction did not preserve an objection to the specific wording of the instruction or his constructive amendment claim.

The government acknowledges that the district court's modified deliberate ignorance instruction omitted the pattern instruction's "deliberate avoidance of positive knowledge" language. (*Compare* Doc. 153-7 *with* Eleventh Cir. Pattern Jury Instructions (Criminal Cases), Special Instruction No. 8). Assuming this was error, Detling cannot demonstrate that such error was plain, affected his substantial rights, or seriously affected the fairness or integrity of his trial.

First, Detling has cited no authority that the instruction here constructively amended the indictment such that reversal is required. And absent explicit language of statute or rule or precedent from the Supreme Court or this Court, an error cannot be plain. *United States v. Innocent*, 977 F.3d 1077, 1081 (11th Cir. 2020). That Detling can

49

cite no authority is unsurprising because this Court routinely affirms
convictions where there was only evidence of actual knowledge and no
deliberate ignorance instruction should have been given. *See, e.g.,*
*United States v. Kennard*, 472 F.3d 851, 858 (11th Cir. 2006) (whether
there is evidence of deliberate ignorance "does not matter" when "the
jury could have convicted on an alternative, sufficiently supported
theory of actual knowledge") (citation omitted); *United States v. Rivera*,
944 F.2d 1563, 1572 (11th Cir. 1991) ("Although the district court
erred in giving a deliberate ignorance instruction, we conclude that
the error was harmless beyond a reasonable doubt. Under the facts of
this case, the jury could only find either that the defendants had
actual or no knowledge of the cocaine in their suitcases; there is no
evidence suggesting a middle ground of conscious avoidance.").

Nor has Detling identified any controlling authority where an
improperly worded deliberate ignorance instruction results in a
constructive amendment such that the jury could have convicted
based on some lesser *mens rea*. *Cf. id.* at 1570 ("To act knowingly,
therefore, is not necessarily to act only with positive knowledge, but
also to act with an awareness of the high probability of the existence
of the fact in question.") (citation, internal quotation marks omitted).
The jury instructions here emphasized that the government could only
satisfy its burden by showing that Detling acted knowingly rather than

negligently or carelessly. (Doc. 153-11 ("But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that [Detling] knew the fact.")). And it is well-settled that the jury is presumed to follow the instructions. *United States v. Ramirez*, 426 F.3d 1344, 1352 (11th Cir. 2005) (citation omitted).

Second, Detling cannot demonstrate that any error with the instruction affected his substantial rights given the overwhelming evidence of his actual knowledge and that the jury was properly instructed on the elements of wire fraud and aggravated identity theft. "Where errors could have cut either way and uncertainty exists, the burden is the decisive factor in the [substantial rights] prong of the plain error test, and the burden is on the defendant." *Rodriguez*, 398 F.3d at 1300. "[I]f the effect of the error is uncertain so that we do not know which, if either, side it helped the defendant loses." *Id.*

The government showed that Detling knew his victim-clients neither applied for nor authorized him to obtain litigation advances on their behalf. (*See supra* p. 14.) It also proved that Detling maintained control over the law firm's finances, that he alone was responsible for applying for the fraudulent litigation advances, that he was the financing companies' exclusive point of contact for the fraudulent advances, and that he controlled the bank accounts into which the funds were deposited. (*See supra* pp. 11-16.) The

51

government in fact stressed in its closing arguments evidence of Detling's actual knowledge and participation in the fraud. (Doc. 219-58-59, 90-92). And in denying Detling's motion for a new trial, the district court remarked there was "copious evidence of [Detling's] actual knowledge [to] support[] the guilty verdict[s]." (Doc. 181-12). Given the overwhelming evidence of Detling's actual knowledge, the effect of any error in the deliberate ignorance instruction was harmless, and Detling cannot carry his burden of showing an effect on his substantial rights. *Rodriguez*, 398 F.3d at 1299 ("Th[e] burden of showing prejudice to meet the [substantial rights]-prong requirement is anything but easy.").

And though the modified deliberate ignorance instruction did not fully track the pattern instruction, when considered in the context of the remaining jury instructions, the jury was properly instructed as to the elements it had to find with respect to wire fraud and aggravated identity theft, including the need to find that Detling acted knowingly. (Doc. 153-8-9, 11); *see, e.g.*, *United States v. Edwards*, 526 F.3d 747, 761 (11th Cir. 2008) ("As the jury instructions did not alter the *mens rea* element of the wire fraud offense, a constructive amendment did not occur."). Importantly, as noted above, the jury was properly instructed on actual knowledge, the fact that the government must prove every fact beyond a reasonable doubt, and

52

that they could not find Detling guilty merely because of "negligence, carelessness, or foolishness." (Doc. 153-6, 8, 11). And juries are presumed to follow the instructions. *See, e.g., Ramirez*, 426 F.3d at 1352; *cf. also United States v. Uces*, 745 F. App'x 115, 117-18 (11th Cir. 2018) (unnecessarily instructing the jury on "knowingly" was not plainly erroneous and did not constructively amend the indictment where jury was "constantly reminded" that the defendant could only be convicted if he "acted with intent").[18]

---

[18] Detling argues that "[e]ven if the . . . jurors read and understood each instruction separately, the deliberate ignorance instruction that was given still constitutes reversible error." (Def. Br. at 42). He claims this is because "'a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those is insufficient, because the verdict may have rested exclusively on the insufficient ground.'" (*Id.* (citing *United States v. Adkinson*, 135 F.3d 1363, 1375 (11th Cir. 1998) (quoting *United States v. Elkins*, 885 F.2d 775, 782 (11th Cir. 1989)))). Detling is incorrect. The "general verdict" language he quotes originated from the Supreme Court's decision in *Stromberg v. California*, 283 U.S. 359 (1931). *See, e.g., Martin v. United States*, 852 F. App'x 485, 489 (11th Cir. 2021). In *Granda v. United States*, 990 F.3d 1272 (11th Cir. 2021), this Court held that any so-called *Stromberg* error is subject to harmless error review. *Id.* at 1294 (citing *Hedgpeth v. Pulido*, 555 U.S. 57, 58, 62 (2008)); *see also Martin*, 852 F. App'x at 489. Accordingly, even if Detling was correct that an erroneous deliberate ignorance instruction constitutes "an insufficient ground" on which the jury could have based its] verdict, that—standing alone—does not constitute reversible error.

In *United States v. Starke*, 62 F.3d 1374 (11th Cir. 1995), this Court affirmed a defendant's conviction under circumstances similar to the ones here. In *Starke*, the defendant argued that the court had constructively amended the indictment by "modifying the element of the offense which required the jury to find that [the defendant] believed the funds he laundered were from" drug distribution. *Id.* at 1380. The district court provided a deliberate ignorance instruction that referred to the defendant receiving proceeds from "an unlawful activity" rather than a "specified unlawful activity." *Id.* Accordingly, the defendant argued, "this allowed the jury to convict him on grounds broader than those specified in the indictment," namely they could convict him of laundering proceeds from any unlawful activity rather than from drug distribution. *Id.* at 1380-81. While this Court acknowledged that the district court's instruction could have been "clearer," it found no plain error because the "the Government argued that [the defendant] knew the money came from drug proceeds" and the jury was otherwise properly instructed on the meaning of "specified unlawful activity." *Id.* at 1381.

Thus, given that the jury was properly instructed as to the elements of wire fraud and aggravated identity theft, the overwhelming evidence of Detling's actual knowledge, and the government's emphasis in closing that Detling acted alone to execute the fraud

(Doc. 219-58-59, 90-92), "[t]aking the record as a whole, [Detling] has failed to meet his high burden under plain error review to show a 'reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *United States v. Veal*, 839 F. App'x 341, 345-46 (11th Cir. 2020) (quoting *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016)); *cf. United States v. Margarita Garcia*, 906 F.3d 1255, 1278 (11th Cir. 2018) (finding no prejudice where the district court added the word "attempt" to the jury instructions, despite its absence from the indictment, because "the government never argued an attempt theory to the jury[] and the entire evidential foundation of the government's case was devoid of any reference to an attempt"); *United States v. Clarke*, 649 F. App'x 837, 846-47 (11th Cir. 2016) (defendants failed to show plain error even where they were charged with "possessing [a] firearm in furtherance of a crime of violence," but the jury wrongly instructed that they possessed the firearm "in furtherance" of a drug trafficking crime in part because "no drug trafficking crime was ever mentioned").

This Court's precedent establishes that giving an unwarranted deliberate ignorance instruction is "harmless error where the jury was also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge." *United States v. Steed*, 548 F.3d 961, 977 (11th Cir. 2008) (citing *Kennard*, 472 F.3d at 858); *see also,*

*e.g.*, *United States v. Pineda*, 843 F. App'x 174, 181 (11th Cir. 2021) (erroneous deliberate ignorance instruction harmless where "there was sufficient proof that [the defendant] had actual knowledge of the fraud"); *United States v. Fernandez*, 553 F. App'x 927, 937 (11th Cir. 2014). Likewise, here, ample evidence supports conviction on the basis of actual knowledge. Detling cannot meet his burden to show a reasonable probability that, but for the alleged error in the wording of the deliberate ignorance instruction, that the outcome of his trial would have been different.

Detling's reliance on *United States v. Madden*, 733 F.3d 1314 (11th Cir. 2013), is therefore misplaced. (Def. Br. at 47-48). In *Madden*, this Court vacated the defendant's § 924(c) conviction because the jury was instructed it could convict him if he "knowingly carried a firearm during and in relation to a drug trafficking offense," rather than instructing that conviction depended on whether he "knowingly used and carried a firearm *during and in relation a crime of violence*," as charged in the indictment. 733 F.3d at 1318 (emphasis in original). This amounted to reversible plain error because "Madden may well have been convicted on a charge not in the indictment." *Id.* at 1323. No such error is present here. The district court's deliberate ignorance instruction did not permit the jury the convict Detling of a crime not in the indictment. Indeed, it is uncontested that the jury was properly

instructed on the elements of wire fraud and aggravated identity theft. *Cf. United States v. Castronuovo*, 649 F. App'x 904, 921-22 (11th Cir. 2016) (although money laundering instruction constructively amended the indictment by failing to "specify the controlled substance or restate how the distribution was felonious," the amendment "did not affect Defendants' substantial rights because the indictment's substance remained intact.")

Detling also places a great deal of emphasis on the Supreme Court's decision in *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 745 (2011), to support his argument that any constructive amendment here amounts to plain error. (Def. Br. at 39-40.) On the contrary, *Global-Tech* undermines his arguments.

In *Global-Tech*, the Supreme Court considered whether the Federal Circuit's willful blindness (or deliberate ignorance) instruction was proper. 563 U.S. at 769. The Court held that it was flawed because it "permi[tted] a finding of knowledge when there is merely a 'known risk' that the induced acts are infringing [and] . . . in demanding only 'deliberate indifference' to that risk, the . . . test [did] not require active efforts by [a defendant] to avoid knowing about the infringing nature of the activities." *Id*. at 770. The instructions at issue in *Global-Tech* thus suffered, at least in part, from the same infirmity that Detling alleges was present here—that the jury was not sufficiently

57

instructed that the defendant needed to take "active steps" to avoid learning about a relevant fact. But importantly, the Global-Tech court *did not remand for a new trial*, but rather it concluded:

> In spite of these flaws, we believe that the evidence when viewed in the light most favorable to the verdict for SEB is sufficient under the correct standard. The jury could have easily found that before April 1998 [the defendant] willfully blinded itself to the infringing nature of the sales it encouraged Sunbeam to make.
>
> * * *
>
> Taken together, this evidence was more than sufficient for a jury to find that [the defendant] subjectively believed there was a high probability that SEB's fryer was patented, that [the defendant] took deliberate steps to avoid knowing that fact, and that it therefore willfully blinded itself to the infringing nature of Sunbeam's sales.

563 U.S. at 770-71 (footnote omitted).

In other words, despite the erroneous jury instructions, the Supreme Court considered whether the evidence was sufficient to establish willful blindness as a matter of law. Importantly, "the record contained no direct evidence that [the defendant] knew" of the relevant fact. *Id.* at 759. And thus, the plaintiff never argued that the defendant had actual knowledge of the unlawful activity.

58

If the Supreme Court did not remand *Global-Tech* for a new trial where there was both an incorrect deliberate ignorance instruction and no evidence of actual knowledge, any error here could not have seriously affected the fairness or integrity of Detling's trial (let alone have been plain). This is especially so given that this Court—as noted above—has repeatedly held that even where the deliberate ignorance instruction was improperly given, *i.e.*, where no evidence supports it being given to the jury, such an error is harmless where there is sufficient evidence to support actual knowledge. *See, e.g., Steed*, 548 F.3d at 977; *Kennard*, 472 F.3d at 858.

Finally, any error here did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. On the contrary, reversing and remanding for a new trial would undermine the public's confidence where there was an eight-day trial and the jury heard testimony from nearly two-dozen witnesses and received hundreds of exhibits into evidence that not only corroborated the testimony but conclusively proved Detling knowingly defrauded the financing companies by using his clients' identities without their knowledge or permission. As this Court explained in *Rodriguez*:

The Supreme Court has instructed us that plain error review should be exercised "sparingly," *Jones v. United States*, 527 U.S. 373, 389 (1999), and only "in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Olano*, 507 U.S. 725, 731 (1993).

398 F.3d at 1298. Given the evidence and nature of proceedings below, Detling's does not carry his burden of establishing plain error.

## CONCLUSION

The Court should affirm Detling's convictions.

Respectfully submitted,

RYAN K. BUCHANAN
  *United States Attorney*

*/s/Alex R. Sistla*
ALEX R. SISTLA
  *Assistant United States Attorney*

*/s/Samir Kaushal*
SAMIR KAUSHAL
  *Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 word processing software in 14-point Goudy Old Style.

This brief complies with the 13,000 word type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, according to the word processing software, it contains 12,889 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Today, this brief was uploaded to the Court's website and a copy was sent by first class mail, postage prepaid, to:

> DAVID A. COX, ESQ.
> 2870 Peachtree Road, #183
> Atlanta, GA 30305

December 12, 2022

> /s/Alex R. Sistla
> ─────────────────
> ALEX R. SISTLA
> *Assistant United States Attorney*

61